THOMAS E. MONTGOMERY, County Counsel (State Bar No. 109654)
County of San Diego
By MELISSA M. HOLMES, Senior Deputy (State Bar No. 220961)
    JENNIFER M. MARTIN, Deputy (State Bar No. 322048)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 4901; Fax: (619) 531-6005
E-mail: melissa.holmes@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Sheriff William Gore, Alfred Joshua, M.D., and Barbara Lee

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>                Plaintiffs,<br><br>        v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE in his individual capacity, ALFRED JOSHUA, in his individual capacity, BARBARA LEE, in her individual capacity, and DOES 1-100,<br>                Defendants. | No. 19-cv-00378-GPC-AGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS COUNTY OF SAN DIEGO, SHERIFF WILLIAM GORE, ALFRED JOSHUA, M.D., AND BARBARA LEE'S MOTION TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT**<br>[Fed.R.Civ.P., 12(b)(6) & 12(f)]<br><br>Date: August 23, 2019<br>Time: 1:30 p.m.<br>Courtroom: 2D<br>Judge: Hon. Gonzalo P. Curiel<br>Trial Date:  None<br><br>NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(D)(1) |

///

///

///

///

///

///

# TOPICAL INDEX

Page

TABLE OF AUTHORITIES .................................................................-iii-

I.    INTRODUCTION .................................................................1

II.   ALLEGATIONS IN THE COMPLAINT ..................................2

III.  TO SURVIVE A MOTION TO DISMISS, A COMPLAINT MUST
      HAVE MORE THAN NAKED ASSERTIONS, LEGAL
      CONCLUSIONS, AND A FORMAL RECITATION OF THE
      ELEMENTS .......................................................................4

IV.   ARGUMENT........................................................................5

      A. Plaintiff's Claims Against The Individual Defendants Should Be
         Dismissed As They Fail To Allege Facts Necessary To Support
         Liability ......................................................................5

         1.  The first claim for deliberate indifference to medical needs
             does not allege personal involvement necessary for either
             direct or supervisory liability .....................................6

         2.  The second claims for failure to train does not allege personal
             involvement necessary for supervisory liability, a policy that is
             a repudiation of constitutional rights, or casual connection
             between the failure to train and the violation...................8

         3.  The third and fourth claims for failure to supervise and
             investigated do not allege personal involvement necessary for
             supervisor liability.....................................................9

      B. The First Through Fifth Claims Against The County Do Not
         Allege Sufficient Facts To Support Liability .....................11

         1.  Plaintiff's first claim for deliberate indifference to medical
             needs claim cannot be alleged against the County and is
             duplicative of Plaintiff's other municipal liability claims .............11

         2.  The second, third, and fourth claims should be dismissed
             because they lack factual allegations setting forth causation or
             a pattern of similar constitutional violations...................11

         3.  The complaint lacks facts supporting causation ............13

         4.  No pattern of prior similar constitutional violations.....................15

         5.  The fifth claim (*Monell*) also fails to allege sufficient facts to
             support municipal civil right liability.............................17

      C. The Sixth Claim For Negligence Should Be Dismissed As It Fails
         To Allege Any Actions By The Individual Defendants Sufficient
         To Impose Liability And The County Is Immune From State Law
         Claims Based On Injuries To Prisoners Under Government Code
         Section 845.2 And 844.6...................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D. The Seventh And Eighth Claims Plead Against The County Under The ADA And Rehabilitation Act Fail To Plead Facts Supporting Liability ............................................................................20

E. The Requests For Declaratory And Injunctive Relief Are Moot and Should Be Dismissed............................................................22

F. The Allegations Regarding In-Custody Deaths And Unrelated Incidents And Punitive Damages Should Be Stricken As Immaterial, Scandalous, And Impertinent ...........................................22

V.  CONCLUSION  .......................................................................................25

No. 19-cv-00378-GPC-AGS

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alvarez v. Hill*, 667 F.3d 1061 (9th Cir. 2012) .................................................... 22

*Arreola v. Cal. Dep't of Corr. & Rehab.* , 2017 WL 1196802
(N.D. Cal. Mar. 31, 2017) ...................................................................................... 20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ................................................... 10, 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................ 4

*Badiggo v. County of Ventura*, 207 Cal. App. 3d 357 (1989) ......................... 19

*Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ............................ 11, 12, 13, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................. 4

*Brown v. Brown*, No.: 1:14-cv-01184-LJO-BAM (PC), 2015 WL 2374284 (E.D. Cal.
May 18, 2015) .......................................................................................................... 20

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004) ...................... 5

*City of Canton v. Harris*, 489 U.S. 378 (1989) ................................... 12, 13, 15

*Connick v. Thompson*, 131 S. Ct. 1350 (2011) ............................................... 12

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................. 15, 16

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005) .................................................. 24

*Estate of Abdollahi v. County of Sacramento*, 405 F. Supp. 2d 1194 (E.D. Cal. 2005).... 19

*Estelle v. Gamble*, 429 U.S. 97 (1976) ............................................................... 6

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993) ............................... 22

*Figueira v. County of Sutter*, No. 2:15-cv-00500-KJM-AC, 2015 WL 6449151
(E.D. Cal. Oct. 22, 2015) ........................................................................................ 20

*Gompper v. VISX, Inc.*, 298 F.3d 893 (9th Cir. 2002) ....................................... 4

*Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018) ........................... 7

*Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989) ................................................. 6

*Harper v. City of L.A.*, 533 F.3d 1010 (9th Cir. 2008) ................................... 13

*Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ............................................. 8

*ICR Graduate Sch. v. Honig*, 758 F. Supp. 1350 (S.D. Cal. 1991) ............... 22

*Ileto v. Glock Inc.*, 349 F.3d 1191 (9th Cir. 2003) ........................................... 4

*In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955 (C.D. Cal. 2000) ................ 22

*Ivey v. Bd. of Regents*, 673 F.2d 266 (9th Cir. 1982) ........................................... 4

*Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) ................................................ 9

*L.A. v. Lyons*, 461 U.S. 95 (1983) ................................................................ 22

*Ladd v. County of San Mateo*, 12 Cal. 4th 913 (1996) ...................................... 18

*Long v. City & County of Honolulu*, 511 F.3d 901 (9th Cir. 2007) ................... 12, 13

*Merritt v. Cty. of L.A.*, 875 F.2d 765 (9th Cir. 1989) ....................................... 12

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ................................... 11, 17

*Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) ............................................ 16

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .............................................. 4

*Newport v. Fact Concerts*, 453 U.S. 247 (1981) .............................................. 24

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992) ............................................. 13

*Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993) ........................................... 6

*Polk County v. Dodson*, 454 U.S. 312 (1981) .................................................. 17

*Quintana v. Baca*, 233 F.R.D. 562 (C.D. Cal. 2005) ........................................ 22

*Ramos-Echevarria v. Pichis, Inc.*, 698 F. Supp. 2d 262 (D.P.R. 2010) .................. 21

*Rhodes v. Stewart*, 488 U.S. 1 (1988) ........................................................... 22

*Savitt v. Jordon*, 142 Cal. App. 3d 820 (1983) ............................................... 20

*SEC v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995) .......................................... 23

*Silverbrand v. Woodford*, No. CV 06-3253-R(CW), 2010 WL 3635780 (C.D. Cal. Aug. 18, 2010) ..................................................................................... 19

*Simmons v. Navajo County*, 609 F.3d 1011 (9th Cir. 2010) ............................... 20

*Taylor v. Buff*, 172 Cal. App. 3d 384 (1985) ................................................. 19

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) .............................................. 6, 7

*Teter v. City of Newport Beach*, 30 Cal. 4th 446 (2003) ................................... 19

*Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987) ............................................. 6

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ........................................... 12, 17

*Van Ort v. Stanewich*, 92 F.3d 831 (9th Cir. 1996) ................................. 12, 13, 17

*Webb v. Sloan*, 330 F.3d 1158 (9th Cir. 2003) ................................................ 11

*White v. Sears, Roebuck & Co.*, No. 07-CV-4286 (NGG) (MDG), 2009 WL 1140434 (E.D.N.Y. Apr. 27, 2009) ........................................................................ 21

*Wilkey v. City of Orange*, 295 F. Supp. 3d 1086 (C.D. Cal. 2017) ................................. 20

*Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041 (9th Cir. 1999) ............................ 20

## **RULES/STATUTES**

### California Government CODE

Section 815.................................................................................................... 19
Section 844.6 ......................................................................................... 2, 18, 19
Section 844.6(a)(2) ........................................................................................ 19
Section 845.2 ......................................................................................... 2, 18, 19

### Federal Rules of Civil Procedure

Rule 8(a)(2) ....................................................................................................5
Rule 12(b)(6) ...............................................................................................4, 5
Rule 12(f) .............................................................................................2, 22, 24

### Title 42 United States CODE

Section 1983 ........................................................................................ *passim*

### 28 CODE of Federal Regulations

Section 35.105(a)-(c) ................................................................................... 18

Section 35.105(d) ........................................................................................ 18

Section 35.150(a) ........................................................................................ 21

Section 35.150(d)(1) .................................................................................... 18

### 34 CODE of Federal Regulations

Section 104.22(e) ........................................................................................ 19

# I.

## __INTRODUCTION__

Defendants respectfully request the Court to grant their motion to dismiss Plaintiff Frankie Greer ("Plaintiff") suit against the County of San Diego ("County"), Sheriff William Gore, Barbara Lee, and Alfred Joshua, M.D. (collectively, "Defendants").  [ECF No. 1 (Complaint).]  Plaintiff, who is a former inmate in the San Diego Central Detention Facility ("SDCJ"), is suing for injuries resulting from an alleged fall off a top bunk in a jail cell at the SDJC.

Plaintiff alleges eight claims against multiple defendants including: (1) deliberate indifference to medical needs under 42 U.S.C. section 1983; (2) failure to train under § 1983; (3) failure to supervise under § 1983; (4) failure to investigate under §1983; (5) *Monell* under § 1983; (6) negligence; (7) disability discrimination in violation of  the Americans with Disabilities Act; and (8) the Rehabilitation Act ("ADA"). The wide-sweeping and conclusory nature of the allegations results in a number of improper and unsupported claims for relief against Defendants.

The Complaint fails to adequately allege supervisory liability against Sheriff William Gore ("Sheriff Gore"), Dr. Alfred Joshua ("Dr. Joshua"), or Medical Administrator Barbara Lee ("Lee").  The claims against Sheriff Gore, Dr. Joshua, and Lee should be dismissed because insufficient facts are alleged to satisfy the objective deliberate indifference standard by any of the Defendants or causation between their alleged actions and Plaintiff's harm.  The negligence claim is also warrants dismissal because there are insufficient allegations of duty and causation as these defendants.

The allegations against the County also fail to state a claim.  A claim for deliberate indifference to medical care is not cognizable against the County.  Plaintiff's claims for "failure to properly train," "failure to properly investigate," "failure to properly supervise and discipline," and *Monell* liability are not cognizable because the Complaint fails to allege facts to support causation and fails to sufficiently allege prior similar prior constitutional violations.   The wrongful death and negligence claims also fail as a matter

of law because the County is immune from state law claims based on injuries to inmates under Government Code sections 844.6 and 845.2.  Similarly, the Plaintiff's ADA and Rehabilitation Act claims fail because the Complaint lacks factual allegations disability or discriminatory animus.

The Complaint also contains numerous allegations that are improper and should be stricken under Rule 12(f) as they are immaterial.  These include, allegations regarding other lawsuits, deaths, news articles, investigative bodies, and prior litigation decisions. Similarly, the punitive damages sought against the individual defendants are not supported by the allegations.

Lastly, the requests for injunctive and declaratory relief are moot and should be dismissed.

## II.

## ALLEGATIONS IN THE COMPLAINT

On January 31, 2018, Plaintiff Frankie Greer was arrested because of an incident with a neighbor.  [ECF No. 1, Compl., at ¶ 22.]  He was taken to the San Diego Central Jail ("SDJC").  *Id*. at ¶ 23.  During the booking process, Plaintiff allegedly informed intake nurses that he suffered from seizures and had been prescribed Keppra for his seizure disorder.  *Id*. at ¶¶ 26-27.  Greer claims that the nurse who performed his intake documented his need for a lower bunk in his medical records but did not input his need for a lower bunk into the Jail's Information Management System (JIMS).  *Id*. at ¶¶ 28-29. Staff failed to give him his prescribed medication in between when he was booked on January 31, 2018, and when he suffered a seizure the next day, February 1, 2018.  *Id*. at ¶¶ 24, 27, 48.

Plaintiff was assigned a top bunk when he was assigned to a cell.  [ECF No. 1 at ¶ 32.]  Plaintiff alleges that he complained to unknown "Deputies" about the bunk assignment and told them he suffered from seizures and had fallen off of a top bunk before.  *Id*. at ¶ 33-34.  However, his bunk assignment was not changed.  *Id.*

///

On February 1, 2018, Plaintiff suffered from a seizure.  ECF No. 1 at ¶¶ 19, 35.] Plaintiff fell from the top bunk in his jail cell to the concrete floor and was seriously injured *Id*. at ¶¶ 36, 45.

After the incident, Plaintiff alleges that the medical response to his cell was delayed because the intercom to the cell was silenced and his cellmates could not contact the deputies.  [ECF No. 1 at ¶ 36-44.]  The silent intercom was against policy.  *Id*. at ¶¶ 42-44 .  Plaintiff alleges that the jail staff also failed to notify his family after his injury. *Id*. at ¶ 49.  He alleges that a nurse at the UCSD hospital had to use social media to alert his family because the intake nurse did not properly document his next of kin when he was booked into the SDCJ.  *Id*. at ¶ 49-50.

The individual defendants are purportedly sued in their individual capacity for their personal actions under a theory of supervisory liability.  [ECF No. 1 at ¶ 12.]  Plaintiff argues, without providing specific facts that "there has been systematic failure" to adhere to policies regarding: housing, security, and inmate healthcare, as well as a failure to investigate incidents, inadequate investigations, failures to discipline staff, and cover-ups. *Id*. at ¶¶ 59-60, 65.  Plaintiff alleges that Sheriff Gore, Lee, and Dr. Joshua, set unnamed "policies and procedures" that ensured Plaintiff received no medical care.  *Id*. at ¶¶ 157. William Gore is the elected Sherriff.  *Id*. at ¶¶ 9, 58.   Dr. Joshua was the Medical Director for the Sherriff's Department.  *Id*. at ¶¶ 10, 57.  Barbara Lee was a Medical Administrator for the Sherriff's Department.  *Id*. at ¶¶ 10, 57.

A series of dissimilar events is recited as the basis for these conclusions including: a survey about falls in jails [ECF No. 1 at ¶ 56], statistics on deaths in County jails [¶¶ 61-62], anecdotes about suicides in jails [¶¶ 79-81, 89-90], litigation conduct in an unrelated suicide case [¶¶ 82, 95], complaints by unnamed individuals about jail conditions [¶64], statistics and anecdotes about deaths from drug overdoses and withdrawals [¶¶ 69, 75, 76-78], anecdotes about deaths from use of force incidents [¶ 68], two deaths caused by failure to pass down information at shift change [¶¶ 78, 84- 88], and unimplemented recommendations about shift change procedures and reporting to an

1   advisory board that is understaffed [¶¶ 70-73, 97-104].  The Complaint also claims that

2   there was one other fall off a top bunk in the jail in 2017 resulting in injury [*id.* at ¶ 92]

3   and a group criticized the jails' "clinical referral and evaluation process" in 2016 [¶ 105-

4   107].

### III.
### TO SURVIVE A MOTION TO DISMISS, A COMPLAINT MUST HAVE MORE THAN NAKED ASSERTIONS, LEGAL CONCLUSIONS, AND A FORMAL RECITATION OF THE ELEMENTS

8        Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides that a complaint may

9   be dismissed for failure to state a claim upon which relief can be granted. A Rule

10  12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint.  *Ileto v.*

11  *Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  A complaint may be dismissed as

12  a matter of law if it lacks a cognizable legal theory, or if it lacks sufficient facts under a

13  cognizable theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

14       In reviewing the motion, the court must assume the truth of all factual allegations

15  in the complaint and must construe them in the light most favorable to the non-moving

16  party.  *Gompper v. Visx, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002).  However, a complaint's

17  allegations must show that the plaintiff is entitled to more than merely speculative relief.

18  In fact, "some threshold of plausibility must be crossed at the outset" before a case can go

19  forward.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  To meet this "facial

20  plausibility" standard, a complaint must contain "factual content that allows the court to

21  draw the reasonable inference that the defendant is liable for the misconduct alleged."

22  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "asks for more than a sheer

23  possibility that a defendant has acted unlawfully" and requires facts that are more than

24  "merely consistent with" a defendant's liability.  *Id.*

25       In addition, vague and conclusory allegations concerning government involvement

26  in civil rights violations are not sufficient to withstand a motion to dismiss.  *Ivey v. Bd. of*

27  *Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "Nor is the court required

28  to accept as true allegations that are merely conclusory, unwarranted, deductions of fact,

1   or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 969, 988 (9th

2   Cir. 2001).  Finally, the court is not bound to accept as true legal conclusions couched as

3   factual allegations, if those conclusions cannot be reasonably drawn from the alleged

4   facts.  *Cholla Ready-Mix Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).

5        The complaint will not survive a rule 12(b)(6) motion "if it tenders naked

6   assertions devoid of further factual enhancement" or if it contains a merely "formulaic

7   recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Federal Rule

8   of Civil Procedure 8(a)(2) requires pleadings to contain a "short and plain statement of

9   the claim showing that the pleader is entitled to relief."  Although Rule 8 does not require

10  detailed factual allegations, plaintiff must allege "more than an unadorned, the-defendant-

11  unlawfully-harmed-me accusation."  *Iqbal* at 1949.

12                                   **IV.**

13                               **ARGUMENT**

14  **A. Plaintiff's Claims Against The Individual Defendants Should Be Dismissed As**

15  **They Fail To Allege Facts Necessary To Support Liability.**

16       Sheriff Gore, Lee, and Dr. Joshua are sued in their individual capacity for their

17  personal actions under a theory of supervisory liability.  [ECF No. 1 at ¶ 12.]  The claims

18  against the individual defendants should be dismissed because they were not personally

19  involved in any of Plaintiff's claims, there are no facts to support supervisory liability,

20  and the claims against these defendants in their official capacity are duplicative of claims

21  against the County.[1]  Further, there is no basis for a claim against individual supervisors

22  for failure to investigate.

23       Regardless of what rank a local government employee holds in the government

24  hierarchy, "[l]iability under section §1983 arises only upon a showing of personal

25

26  [1] Plaintiff only alleges claims against Sheriff Gore, Lee and Dr. Joshua in their individual
    capacity. [ECF No. 1 ¶ at 12.]  However, he also alleges that these individuals were the
27  policy makers for the County.  [*Id.* at ¶ 9, 10, 57, 58.] If these allegations are construed as
    Plaintiff also bringing claims against these defendant in their official capacity as policy
28  makers for the County, all such claims should be dismissed because Plaintiff has made
    duplicative allegations against the County. [*Id.* ¶¶ 234-258].

1   participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *See*
2   *also Palmer v. Sanderson*, 9 F.3d 1433, 1438 (9th Cir. 1993) (explaining that a "state
3   statute imposing vicarious liability on a sheriff for the conduct of his or her deputies is
4   'inconsistent with the . . . laws of the United States…'"). Knowledge of an overall
5   problem is not sufficient to show personal participation. *See Taylor* at 1046.

6        For supervisory officials, supervisory liability can exist "without overt personal
7   participation in the offensive act" when "supervisory officials implement a policy so
8   deficient that the policy itself is a repudiation of constitutional rights and is the moving
9   force of the constitutional violation," *Hansen v. Black,* 885 F.2d 642, 646 (9th Cir.
10  1989)(citing *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir, 1987)). To impose such
11  supervisory liability without establishing personal participation, the plaintiff must show
12  that the supervisory official knew the policy was so deficient to be unconstitutional and
13  failed to correct it, which caused the plaintiff's injury.  *Thompkins v. Belt*, 828 F.2d 298,
14  304 (5th Cir. 1987). And "existence of a constitutionally deficient policy cannot be
15  inferred from a single wrongful act." *Id.* Here, Plaintiff does not identify a policy so
16  obviously deficient that it would put the individual defendants on notice of need for
17  correction.

18       The motion to dismiss should be granted because the Complaint does not involve
19  personal participation by these defendants nor does it involve a sufficient causal
20  connection between their actions or knowledge of unconstitutional policies and Plaintiff's
21  injuries.

22       1.  The first claim for deliberate indifference to medical needs does not allege
23           personal involvement necessary for either direct or supervisory liability.

24       There are no facts supporting liability against any of the individual defendants for
25  their direct provision or denial of medical care to Plaintiff.  Deliberate indifference to an
26  inmate's serious medical needs may be manifested in two ways: the intentional denial,
27  delay, or interference with a plaintiff's medical care, or by the manner in which the
28  medical care was provided. *See Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976).

1   Deliberate indifferent to medical care claims by pretrial detainees against an individual

2   for medical care must show: (i) the defendant made an intentional decision about

3   plaintiff's condition of confinement; (ii) the conditions put the plaintiff at substantial risk

4   of suffering serious harm; (iii) the defendant did not take reasonable available measures

5   to abate that risk, though a reasonable official would have. *Gordon v. County of Orange,*

6   888 F.3d 1118, 1125 (9th Cir. 2018).  Here, there are no allegations that Dr. Joshua, Lee,

7   or Sheriff Gore either directly or indirectly, participated in Plaintiff's intake, housing

8   assignment, or medical response while he was in custody at SDCJ.  Rather, it is unnamed

9   intake "medical staff," a "housing deputy" and an individual manning the intercom who

10  were involved with Plaintiff.  [ ECF No. 1 at ¶¶ 118-127.]   In other words, there is no

11  evidence that intentional treatment decisions by Dr. Joshua, Lee, or Sheriff Gore put

12  Plaintiff at substantial risk of suffering serious harm.

13       Similarly, there are no facts alleged that support the individual defendants

14  "participated in or directed the violations" or that they knew a "policy was so deficient to

15  be unconstitutional and failed to correct it" as required for a claim of supervisory

16  liability.  *Taylor*, 880 F.2d at 1045.  There is no allegation that they knew of or directed

17  *any* actions by jail staff involving Plaintiff.  Rather, the allegations about these

18  defendants hinge on their involvement with policies.

19       Plaintiff alleges the individual defendants failed to "properly set forth policies and

20  procedures for proper care of inmates" and that they knew that unnamed policies

21  regarding "oversight" were "grossly inadequate" for unspecified reasons.  [ECF No. 1 at

22  ¶¶ 150-152.]  Plaintiff goes on to argue the individual defendants knew of injuries to

23  inmates "due to lack of communication," issues involving sharing information during

24  shift change, and instances of staff failing to access information in JIMS.  [ECF No. 1 at

25  ¶¶ 151-153.]  Such allegations are conclusions.  The alleged deficient policies and

26  procedures are never identified.  Further Plaintiff's reasoning is flawed: knowledge of

27  dissimilar injuries in the jail resulting from an alleged lack of communication is not the

28  same as knowledge that a policy in place was unconstitutional or a policy was the cause

of the injury or a constitutional violation (medication administration, top bunk placement, and issues with an intercom).  Further, the prior instances claimed to be the basis for the individual defendant's "knowledge" of a deficient policy (suicides, drug overdoses) are so dissimilar that they cannot be the basis for knowledge about an unconstitutional policy in this case.

Finally, Plaintiff does not allege a connection between any policy, including an "oversight" policy and a failure to administer the seizure medication to Plaintiff. Similarly, there is no policy described that drove the placement of Plaintiff in the top bunk, made staff  fail to record Plaintiff's information, or required a delayed response to his cell.  Quite the opposite, Plaintiff admits that these events were "failures" by staff to comply with "requirements."  [ECF No. 1 at ¶¶ 24, 27-29, 42-44.]

> 2. <u>The second claims for failure to train does not allege personal involvement necessary for supervisory liability, a policy that is a repudiation of constitutional rights, or causal connection between the failure to train and the violation.</u>

Plaintiff merely states that there was a failure to supervise but does not "allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012). Plaintiff alleges—without factual support—that Defendants failed to "maintain adequate and proper training ... as to the Constitutional rights of inmates" [ECF No. 1 at 163], and knew of a pattern and history of failure to communicate medical history for inmates and that inmates suffering from seizures should not be placed on top bunks [ ¶ 164-168], and that deputies had not been conducting proper cell check, and that defendants "failed to promulgate corrective policies and regulations" [ ¶ 176].  Plaintiff avers that Sheriff Gore failed to train on proper cell checks and that Sheriff Gore, Lee, and Dr. Joshua "failed to train doctors and nurses on the necessary care of inmates suffering from serious medical conditions" including documenting information and "failed to implement policies and procedures with respect to proper training" on the

1    topics of placing inmates on the top bunk, medical documentation, and communicating

2    medical information.  [*Id.* at ¶¶ 177-180, 183.]

3    However, these allegations fail to state in what way Defendants failed to train,

4    what specific role, if any, Dr. Joshua, Lee, and Sheriff Gore played with respect to the

5    training, and how the inadequate training tied into the specific conduct of jail medical

6    staff on the date of the incident.  There are no facts plead in the complaint that the nurse

7    who interviewed Plaintiff did not know how to record his information in JIMS, was

8    improperly trained on administering medication, or that deputies failed to move Plaintiff

9    to a lower bunk and silenced the intercom because of training.  Nor is there a clear and

10   concise description of the specific actions each individual defendant is alleged to have

11   committed that was the moving force behind the purported violation.  Absent such

12   allegations, the Court cannot infer that Defendants set in motion a "series of acts by

13   others which [Defendants knew] or reasonably should [have known]" would cause injury

14   to Plaintiff from alleged failure to provide medical care.  *Johnson v. Duffy,* 588 F.2d 740,

15   743-744 (9th Cir. 1978).

16       3.  <u>The third and fourth claims for failure to supervise and investigate do not allege

17           personal involvement necessary for supervisory liability.</u>

18   The third and fourth claims allege that the individual defendants failed to provide

19   adequate supervision to medical staff [ECF No. 1 at ¶ 190], ratified employee misconduct

20   [ ¶ 191], and failed to investigate misconduct or take remedial steps against subordinates,

21   resulting in a toxic culture [¶¶ 194, 224, 227-233].  Though sensational, these conclusory

22   allegations, again, fail to state *facts* supporting the connection between the individual

23   defendants, these purported failures, and the injury to Plaintiff.  What Lee, Sheriff Gore,

24   or Dr. Joshua actually did to fail to supervise, ratify, or investigate is omitted.

25   Conclusions supplant facts in these claims.

26   This is unsurprising, since close inspection of the examples in the Complaint that

27   comprise the basis for these "failures" show that they are dissimilar from the incident, do

28   not involve actions by the individual defendants, and do not involve constitutional

violations.  The improper actions alleged in these claims do not show that these failures have led to even a single constitutional violation, let alone one like that alleged in this action. The majority of the alleged customs and practices relate to various other unrelated and dissimilar incidents such as suicides and drug overdoses. Many of the examples do not involve constitutional violations, such as the failure to tell a family about the details of an inmate death, or the decision to fund an advisory board.  [ECF No. 1 at ¶ 206.] Many of the allegations do not involve the individual defendants at all, such as the policy decisions regarding the CLERB or the actions of counsel in litigation.  *Id*. at ¶ 210-215.

There is also no factual support showing how the actions of the individual defendants were the "moving force" behind the constitutional violation presently at issue in the complaint.  For example, it is unclear how an alleged custom and practice or "hiding evidence" and "lying under oath" was the moving force behind Plaintiff not receiving a bottom bunk or his seizure medication.  The allegations in the Complaint involve only the alleged failure to administer medication and failure to discipline that caused this failure is identified.  However, Plaintiff alleges the bunk placement caused him harm, yet none of the claimed other unconstitutional incidents of failure to discipline or supervise involved improper placement in top bunks.  Similarly, there are no other instances described regarding the silent intercom that would support the conclusion that the individual knew that the intercom was silenced, or acquiesced in the silencing through failing to discipline staff.  [ECF No. 1 at ¶¶175-176.]

Such bare-bones, conclusory allegations without any specific factual foundation cannot support Plaintiff's claims against the individual defendants.  Complaints must contain factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 129 S.Ct.  at 1949.  Here, there is no factual content at all except conclusory and generalized allegations.  The Court should not accept these allegations at true, and should require Plaintiffs to supply specific factual allegations to support their claims.

///

**B. The First Through Fifth Claims Against The County Do Not Allege Sufficient Facts To Support Liability.**

    1. <u>Plaintiff's first claim for deliberate indifference to medical needs claim cannot be alleged against the County and is duplicative of Plaintiff's other municipal liability claims.</u>

*Monell* established that municipalities can be liable for infringement of constitutional rights only under certain circumstances. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-695 (1978). A municipality may not, however, be sued under a *respondeat superior* theory. *Id.* at 693–95. A plaintiff must show "deliberate action attributable to the municipality [that] directly caused a deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brow*n, 520 U.S. 397, 415 (1997). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability." *Id.*

Plaintiff's first claim for deliberate indifference is pled against the County but is duplicative of his municipal liability his fifth claim for relief (*Monell*). Plaintiff alleges *negligent* actions by County employees that caused this injury. [ECF No. 1 at ¶113-143.] Plaintiff does not identify specific policies and procedures to support the claim. *Id.* at ¶¶ 149-160. Rather, the claim states that *individuals'* failures to comply with County policies caused the incident. *Id.* at ¶¶ 122-124, 131, 136-138. Plaintiff's deliberate indifference to medical care claim is therefore, not cognizable directly against the County under *Monell*.

    2. <u>The second, third, and fourth claims should be dismissed because they lack factual allegations setting forth causation or a pattern of similar constitutional violations.</u>

Under §1983, a municipality cannot be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Board of County Commissioners v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978); *Webb v. Sloan,* 330 F.3d 1158, 1163-64 (9th Cir. 2003). A municipality can be sued directly under section §1983 only where the alleged unconstitutional conduct is the result of an official policy (*Monell model*) or as a result of

- 11 -

a pervasive practice (*Canton model*); and the policy or practice was the "moving force"
behind the violation. *See Canton v. Harris*, 489 U.S. 378, 389-91 (1989); *Brown,* 520
U.S. at 404; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In cases involving a
pervasive practice, a plaintiff must prove a pattern of similar constitutional violation i.e.,
multiple instances of harm) from which it can be plausibly shown that the challenged
practice or custom was the moving force of the constitutional violation, and municipal
decision makers were on notice. *See Brown,* 520 U.S. at 407-08. Therefore, a showing of
deliberate indifference to the pervasive pattern and practice is ordinarily necessary to
trigger municipal liability. *Id.*

The mere allegation of "failure to train" does not state a constitutional claim
against a municipality.  *City of Canton v. Harris,* 489 U.S. 378, 390-391 (1989).  Indeed,
the Supreme Court has expressly noted that "[a] municipality's culpability for a
deprivation of rights is at its most tenuous where a claim turns on a failure to train."
*Connick v. Thompson*, 131 S.Ct. 1350, 1359-60 (2011).  A plaintiff alleging failure to
train must show: (1) the training program must be inadequate "'in relation to the tasks the
particular officers must perform'"; (2) the city officials must have been deliberately
indifferent "'to the rights of persons with whom the [local officials] come into contact'";
and (3) the inadequacy of the training "must be shown to have 'actually caused' the
constitutional deprivation at issue." *Merritt v. City of Los Angeles*, 875 F.2d 765, 770 (9th
Cir. 1989) (internal citations omitted). As the Supreme Court and Ninth Circuit have
highlighted, "[o]nly where a municipality's failure to train its employees in a relevant
respect evidences a 'deliberated indifference' to the rights of its inhabitants can such a
shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable
under § 1983." *City of Canton*, 489 U.S. at 389; *Long v. County of Honolulu*, 511 F.3d
901, 907 (9th Cir.2007).

In *Canton*, the Supreme Court applied these requirements in the context of failure
to train, however, this same analysis has "since been applied to negligent supervision and
hiring claims, too." *See Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996)

1   (*citing Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir.1989) (negligent

2   supervision); *see Johnson v. City of Vallejo*, 99 F. Supp. 3d 1212, 1218 (E.D. Cal. 2015)

3   *citing Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1234 Fn. 8(9th Cir. 2011) (failure to

4   investigate); *see also Long v. City & Cty. Of Honolulu*, 378 F. Supp. 2d 1241, 1247 (D.

5   Haw. 2005), *aff'd*, 511 F.3d 901 (9th Cir. 2007) (failure to discipline.)

6            3.   The complaint lacks facts supporting causation.

7            "In a § 1983 action, the plaintiff must also demonstrate that the defendant's

8   conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*,

9   533 F.3d 1010, 1026 (9th Cir. 2008). "Where the action taken or directed by the

10  municipality or its authorized decision maker itself violates federal law, resolving issues

11  of fault and causation is 'straightforward' because proof of such a violation 'establishes

12  that . . . the municipal action was the moving force behind the injury of which the

13  plaintiff complains.'" *Id.* Thus, "[r]egardless of what theory the plaintiff employs to

14  establish municipal liability— policy, custom, or failure to train—the plaintiff must

15  establish an affirmative causal link between the municipal policy or practice and the

16  alleged constitutional violation." Model Civ. Jury Instr. 9th Cir. 9.2 (2018); *citing*

17  *Canton*, 489 U.S. at 391-92; *Van Ort*, 92 F.3d at 835; *Oviatt v. Pearce*, 954 F.2d 1470,

18  1473-1474 (9th Cir. 1992). "That a plaintiff has suffered a deprivation of federal rights at

19  the hands of a municipal employee will not alone permit an inference of municipal

20  culpability and causation; the plaintiff will simply have shown that the *employee* acted

21  culpably." *Brown,* 520 U.S. at 406–07 (*emphasis in original*.)

22           As discussed in the context of the claims against the individual defendants, and

23  addressed *supra*, the Complaint fails to allege a causal link between the purported lack of

24  training, supervision, and proper investigation relating to staff communication and

25  medical treatment, and Plaintiff's injuries. Specifically regarding the failure to train

26  claim, Plaintiff repeatedly set forth conclusory statements regarding the alleged lack of

27  training, such as: "Defendants Gore, Lee, Joshua, and Does have failed to maintain

28  adequate and proper training necessary to educate deputies and medical staff as to the

1   Constitutional rights of inmates; to prevent the consistent and systematic failure to

2   provide medical care." [ECF No. 1 at ¶ 163.] Plaintiff then attempts to support causation

3   by repeatedly alleging what Defendants knew. *Id.* at ¶¶ 166-175. Information known or

4   unknown combined with conclusory allegations does not show that a systemic lack of

5   training relating to the very specific facts presented in this case caused a constitutional

6   deprivation. Plaintiff alleges that "Defendants Gore and Does failed to train their deputies

7   on proper cell checks and the use of the intercom system despite their knowledge that the

8   lack of training caused serious injuries and deaths." *Id.* at ¶ 177. However, he has not

9   presented any facts, that deputies training or lack thereof caused this constitutional

10  deprivation

11       This same logic applies to Plaintiff's allegations regarding failure to properly

12  supervise, discipline, and investigate. For example, the complaint sets forth that

13  "Defendants were aware of long series of untimely and wrongful deaths in the San Diego

14  County Jails from lack of medical care and failed to properly supervise and discipline

15  their employees or agents." [ECF No. 1 at ¶ 192.] The allegations that defendants failed

16  to supervise and discipline employees after a death or suicide case has no bearing on the

17  facts of the present case where Plaintiff sustained an injury due to a bunk assignment.

18  Under Plaintiff's failure to investigate claim he states:

19           This is the circle of death. Because the County does not sufficiently
20           fund or staff CLERB, it cannot complete investigations of the overwhelming
             number of deaths in the Jails. Because culpable Jail staff are not disciplined, it
21           creates a culture in which the staff violate the constitutional rights of inmates and
             lie to cover it up without fear of discipline. This leads to further mistreatment of
22           inmates/patients in which they die."

23  Compl. ¶ 224.

24       It is unclear how the above allegations caused the alleged breakdown of

25  communication alleged in the case. Understaffing and underfunding an investigative

26  agency has no relation to Plaintiff's top bunk assignment. Moreover, the allegations that

27  do relate to present case facts are conclusory and fail to show Defendants have failed to

28  properly investigate claims with similar facts and only alleged a general "failure to

1  properly investigate." For example, the Complaint states: "As a result of all Defendants'

2  historical failure to properly investigate, Defendants were deliberately indifferent to the

3  needs of Plaintiff Frankie Greer. The failure to investigate was the moving force behind

4  the denial of medical care and the resulting pain and suffering."  [ECF No. 1 at ¶ 223.]

5  Facts supporting this conclusion are not supplied.

6        Plaintiff attempts to support causation by mixing conclusory statements with

7  unrelated allegations to distract from the missing causal link between the County's

8  response to past incidents and Plaintiff's injuries to support municipal civil rights

9  liaiblity.

10          4.    <u>No pattern of prior similar constitutional violations.</u>

11        The Supreme Court in *City of Canton*, 489 U.S. 378, *Bd. of Comm'rs of Bryan*

12  *County v. Brown*, 520 U.S. 397 (1997), and *Connick*, 563 U.S. at 51 found that a *pattern*

13  *of constitutional violations* is required to demonstrate deliberate indifference for purposes

14  of failure to train. *City of Canton* stated that "a *pattern of constitutional violations"* could

15  put the municipality on notice that its officers confront a particular situation on a regular

16  basis, and that they often react in a manner contrary to constitutional requirements. *City*

17  *of Canton*, 489 U.S. at 397, *emphasis added*.  If police "so often *violate constitutional*

18  *rights*" the entity may be on notice of a need for further training.  *Id*. at 390 n. 10.

19          ('[M]unicipal liability for failure to train may be proper where it can be
        shown that policymakers were aware of, and acquiesced in, a *pattern of*

20          *constitutional violations* ...').  The existence of a pattern of tortious conduct
        by inadequately trained employees may tend to show that the lack of proper

21          training, rather than a one-time negligent administration of the program or
        factors peculiar to the officer involved in a particular incident, is the

22          'moving force' behind the plaintiff's injury.

23  *Bryan County*, 520 U.S. at 407–08.  Thus, a plaintiff must prove a pattern of

24  constitutional violations from which it can be fairly shown that the challenged program or

25  custom was the moving force of the constitutional violation, and that municipal decision

26  makers were on notice that a new program was called for and their continued adherence

27  to an inadequate approach reflected their conscious disregard for the consequences of

28  their program.  *Id.*  In *Connick*, the Supreme Court repeated that "[a] *pattern of similar*

- 15 -

*constitutional* violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.

As an initial matter, bare, and generalized statistics set forth in a local newspaper that involve jail deaths cannot be construed as prior similar constitutional violations because in-custody deaths may involve a variety of factors that have no relation to the situation in the present action (alleged failure to provide seizure medication and placement in a bottom bunk). Similarly, allegations involving CLERB, Disability Rights of California, and the Grand Jury also fail to show prior similar constitutional violations involving failing to provide seizure medication and appropriate bunk placement notation in JIMS.  The majority of cited prior incidences involve illicit drug overdoses or withdrawals, psychiatric illness, and suicides.  There are no facts alleged that Plaintiff was on illicit drugs, suicidal, or needed psychiatric care.  Prior incidences involving deaths as a result of drug overdoses or withdrawals are not indicative of a pattern of similar constitutional violations. Similarly, prior incidences involving inmate suicides are also inapplicable.  Plaintiff only sets forth one potentially related prior incident that involve the inputting of medical information in the JIMS system – but that case involved physicians, not a intake nurses', use of JIMS (*Nunez*, ECF at ¶ 84).  Moreover, Plaintiff does not allege that there was a finding of a constitutional violation in *Nunez* that would have put the County on notice.

One prior incident is insufficient to establish notice and do not satisfy Plaintiffs' burden of pleading a pattern of prior *constitutional violation*s, i.e. where a County employee was found liable for violating an inmate's constitutional rights.  *See Mueller v. Auker,* 700 F.3d 1180, 1194 (9th Cir. 2012) (four prior incidences were insufficient to put the city on notice such that it could reasonably be said to have been deliberately indifferent to the need for further training.).  The Supreme Court's decisions in *City of Canton, Bryan County,* and *Connick* did not provide that merely listing all past events incidences is sufficient to support a claim that a municipal federal civil violation by an

1    employee was caused by an inadequate program.  Rather those cases require occurrence

2    of a pattern of similar constitutional violations.

3              5.   The fifth claim (*Monell*) also fails to allege sufficient facts to support

4                   municipal civil rights liability.

5          Local governments "may not be sued under § 1983 for an injury inflicted solely by

6    its employees or agents.  Instead, it is when execution of a government's policy or

7    custom ... inflicts the injury that the government as an entity is responsible under §

8    1983."  *Monell*, 436 U.S. at 694.  To survive a motion to dismiss against the County, the

9    complaint must sufficiently allege facts that support four elements: (1) Plaintiff was

10   deprived of a constitutional right; (2) the County had a policy or longstanding custom so

11   persistent and widespread that it constituted a permanent and well-settled policy; (3) the

12   policy amounted to deliberate indifference to plaintiffs' constitutional rights; and (4) the

13   policy was the moving force behind the constitutional violation. *Van Ort*, 92 F.3d at 835;

14   *Bd. of Comm'rs of Bryan County*, 520 U.S. at 402-04; *Trevino v. Gates*, 99 F.3d 911, 918

15   (9th Cir. 1996).  Plaintiff has the burden of proving official policy by more than a "bald

16   allegation."  *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).

17         The Complaint falls far short of supplying sufficient factual allegations that

18   plausibly support the allegations against the County. Plaintiff simply lists a myriad of

19   purported customs and practices by Defendants.  Significantly, the majority of the alleged

20   customs and practices relate to various other unrelated incidences. There is also no

21   factual support how the many "de facto" policies and customs alleged were the "moving

22   force" behind the constitutional violation presently at issue in the complaints.  For

23   example, it is unclear how an alleged custom and practice or "hiding evidence" and

24   "lying under oath" was the moving force behind Plaintiff not receiving a bottom bunk or

25   his seizure medication. In regards to the allegations that the County had a "custom and

26   practice of not ensuring that deputies follow the policies and procedures with respect to

27   emergency calls in Housing units"  [ECF No. 1 at ¶ 246), the only factual allegations in

28   support of this "custom" or "policy" are those alleged in the complaint at issue.  These

1    unsupported custom and practice allegations are interspersed with allegations containing

2    the buzzword "deliberately indifferent." *Id.* at ¶¶ 234-258.  Many are also conclusory.

3    For example Plaintiff alleges there exists an "unconstitutional policy, ordinance or

4    regulation which allowed their deputies and medical staff to deny medical care to

5    inmates" and Defendants "failed to set forth any policies or conduct any self-evaluation

6    of procedures and training under the Americans with Disability Act and the

7    Rehabilitation Act for its personnel about how to handle encounters with persons who

8    have a disability." *Id.* at  ¶¶ 235, 237. However, Plaintiff fails to show identify a single

9    policy or practice supporting such allegations.

10         A complaint must contain factual content that allows the court to draw a reasonable

11   inference that the Defendant is liable for the misconduct alleged.  *Iqbal*, 129 S.Ct. at

12   1949.  Plaintiff has failed to support the alleged "de facto" polices and customs.

13   **C. The Sixth Claim For Negligence Should Be Dismissed As It Fails To Allege Any**
     **Actions By The Individual Defendants Sufficient To Impose Liability And The**
14   **County Is Immune From State Law Claims Based On Injuries To Prisoners**
15   **Under Government Code Section 845.2 And 844.6.**

16         A claim for negligence requires facts supporting duty, breach, causation and

17   damages.  *Ladd v. County of San Mateo,* 12 Cal. 4th 913, 917 (1996).  Here, the

18   Complaint fails to identify a cognizable legal duty owed by the individual defendants to

19   Plaintiff that was breached and caused his harm.  The only allegations regarding Sheriff

20   Gore, Lee, and Dr. Joshua are that they failed to conduct evaluation of training and

21   procedures required under the ADA and Rehabilitation Act.  [ECF No. 1 at  ¶¶ 267-268.]

22   Yet, there is no duty by individuals to conduct ADA and Rehabilitation Act self-

23   evaluations.  The ADA and Rehabilitation Act impose this responsibility on the *public*

24   *entity*, not its employees.  28 C.F.R. § 35.105(a)-(c)("a public entity shall . . ."); 28 C.F.R.

25   § 35.105(d).  Further, facts supporting a causal link between the missing assessment and

26   the Plaintiff's harm are not supplied.  In fact, none can be since any assessment

27   conducted would then need to be implemented through a transition plan implemented by

28   the public entity, not the individual defendants.  28 C.F.R. § 35.150(d)(1); 34 C.F.R. §

- 18 -

No. 19-cv-00378-GPC-AGS

1   104.22(e).   There is no viable claim for negligence stated against the individual

2   defendants in the Complaint.

3          The County is also immune from the negligence claim alleged in the Complaint.

4   Beyond its immunity from common law negligence under California Government Code

5   section 815, the County is specifically immune from liability for claims based on failure

6   to provide adequate jails or for injuries to inmates.   Government Code § 844.6 states, in

7   relevant part, that "a public entity is not liable for . . . (2) An injury to any prisoner." Cal.

8   Govt. Code § 844.6(a) (2).   Plaintiff's injury is the gravamen of his claim.   Courts have

9   afforded this section a broad application. *See Munson v. California,* No. CIV S–09–0478,

10  2011 WL 284591, at *3 (E.D.Cal. Jan.25, 2011);   *Teter v. City of Newport Beach*, 30

11  Cal.4th 446, 448–49 (2003); *Savitt v. Jordan*, 142 Cal.App.3d 820, 812–22 (1983)

12  ("Section 844.6, subdivision (a) explicitly provides that with the exception of certain

13  enumerated sections the immunity granted to public entities is absolute.")); *Badiggo v.*

14  *County of Ventura*, 207 Cal.App.3d 357, 361 (1989).   The County is immune for injuries

15  to Plaintiff.

16          Similarly, to the extent Plaintiff's claim is based on the inadequacy of the jail

17  staffing and facilities such as the failure to provide him with sufficient bed or the

18  understaffing of the intake nurses (e.g. ECF No. 1 at ¶ 87)  his claims are against all

19  Defendants are barred by California Government Code section 845.2.   Section 845.2

20  provides, "neither a public entity nor a public employee is liable for . . . failure to provide

21  sufficient equipment, personnel or facilities [in a jail]." Courts have applied the statute to

22  bar claims for inadequate security systems, *Taylor v. Buff*, 172 Cal.App.3d 384 (1972),

23  and insufficient personnel, *Estate of Abdollahi v. County of Sacramento*, 405 F.Supp.2d

24  1194 (E.D.Cal.2005); *Silverbrand v. Woodford*, 2010 WL 3635780 (C.D.Cal.2010).

25  Thus, there can be no negligence claim against defendants based on inadequate staffing at

26  the jail.

27  ///

28  ///

**D. The Seventh And Eighth Claims Plead Against The County Under The ADA And Rehabilitation Act Fail To Plead Facts Supporting Liability.[2]**

"To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Simmons v. Navajo City, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010.)   Under both the ADA and Rehabilitation Act, it is Plaintiff's burden to establish that "he was excluded from participating in or denied the benefits of the County's services, programs, or activities 'by reason of [his] disability.'"   *Wilkey v. City of Orange*, 295 F.Supp.3d 1086, 1092 (C.D. Cal. 2017).  Moreover, "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability."  *Simmons*, 609 F.3d at 1022 (citing *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996).)  Thus, absent evidence of discriminatory intent, if allegations are that the defendants denied a plaintiff "mental health medication and did not immediately provide him medically necessary care ... these allegations do not state a claim under the ADA."  *Wilkey v. City of Orange*, 295 F.Supp.3d  at 1093; see *also Figueira by & through Castillo v. City of Sutter*, 2015 WL 6449151, at *9 (E.D. Cal. Oct. 23, 2015) ("[D]efendants cannot have violated the ADA by failing to attend to the medical needs of [mentally] disabled prisoners.");  *Brown v. Brown*, 2015 WL 2374284, at *6 (E.D. Cal. May 18, 2015) ("[T]he, the underlying allegations appear related solely to the medical care Plaintiff was provided, and the treatment, or lack of treatment, concerning Plaintiff's medical conditions does not provide a basis upon which to impose liability under the ADA.");  *Arreola v. California Dep't of Corr. & Rehab.*, 2017 WL 1196802, at *2 (N.D. Cal. Mar. 31, 2017)("Simply alleging a

---

[2] "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

1     need for services is not enough. [Plaintiff] must plausibly allege that he was denied

2     benefits or programs, or discriminated against, because of a disability.")

3         Although the Complaint alleges that Plaintiff is a qualified person with a disability,

4     this is a conclusion and is not supported by the facts alleged in the Complaint.  Plaintiff

5     states he has a seizure disorder.  Compl. ¶ 108, 111.  However, a seizure disorder alone is

6     not enough alone to make him disabled under the ADA or Rehabilitation Act.  *See*

7     *Ramos-Echevarria v. Pichis, Inc.*, 698 F. Supp. 2d 262, 270 (D.P.R. 2010), *aff'd*, 659

8     F.3d 182 (1st Cir. 2011) (seizure disorder alone, not enough to qualify as disability under

9     ADA); *White v. Sears, Roebuck & Co., No.*, 07CV4286NGGMDG, 2009 WL 1140434

10    (E.D.N.Y. Apr. 27, 2009) (individual not "disabled" under ADA simply because of

11    diagnosis of seizure disorder).

12        Further, the mere allegations that individual County employees did not have

13    specialized training, provide heightened medical care, and diligent surveillance does not

14    equate to discriminatory conduct.  The mandate of Title II is that, when the public entity

15    operates a service, program or activity, it must simply ensure that the program "when

16    viewed in its entirety, is readily accessible to and usable by individuals with disabilities."

17    28 C.F.R. § 35.150(a).

18        Plaintiff failed to provide any factual support that Plaintiff was excluded from

19    participating in or treated differently with respect to the services, programs, or activities

20    provided at the jail as a result of his seizures. Rather, the Complaint concludes that

21    Plaintiff was not provided reasonable accommodations because he was not given a

22    bottom bunk.  However, this assignment was not *because* of his disability, rather the

23    Complaint alleges that "the corrections staff *did not have knowledge* of the special

24    housing requirement."  Furthermore, Plaintiff does not contend that he was excluded

25    from services by reason of his disability.  Rather, his claim is that he was improperly

26    treated the *same* as other inmates because officials did not properly document his

27    disability.   Thus, the Complaint fails to set forth any allegations that Decedent was

28

1  treated differently as a result of any discriminatory animus by the County.  Accordingly,

2  Decedent's ADA and Rehabilitation Act claims should be dismissed, with prejudice.

3

**E. The Requests For Declaratory And Injunctive Relief Are Moot And Should Be**
4  **   Dismissed.**

5       To obtain an injunction, the plaintiff must establish that a "real or immediate

6  threat" exists that he will be wronged again.  *Los Angeles v. Lyons*, 461 U.S. 95, 111

7  (1983).  Where the activities sought to be enjoined have already occurred, and the Court

8  cannot undo what has already been done, and there is no prospective harm to the plaintiff,

9  the action is moot and no injunction can be granted.  *ICR Graduate Sch. v. Honig*, 758 F.

10 Supp. 1350, 1354-55 (S.D. Cal. 1991).  Similarly, "[a] declaratory judgment…. is no

11 different from any other judgment. It will constitute relief, for purposes of § 1988, if, and

12 only if, it affects the behavior of the defendant toward the plaintiff." *Rhodes v. Stewart*,

13 488 U.S. 1, 4 (1988). Once an inmate is no longer exposed to the "challenged policy or

14 practice," declaratory relief would have no impact on the claimed rights or alleged injury.

15 *See Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012). Here, because Plaintiff is no

16 longer in Defendant's custody, injunctive and declaratory relief would have no impact on

17 his claims and is moot.

18 **F.  The Allegations Regarding In-Custody Deaths And Unrelated Incidents And**
   **    Punitive Damages Should Be Stricken As Immaterial, Scandalous, And**
19 **    Impertinent.**

20      Immaterial, scandalous, and impertinent matters may be stricken from a complaint.

21 Fed. R. Civ. P. 12(f).  Immaterial means "that which has no essential or important

22 relationship to the claim for relief or the defenses being pleaded." *Fantasy v. Fogerty*,

23 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

24 Impertinent means that the information does not pertain to the present action. *Id*.; *see also*

25 *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2005) ("To be immaterial or

26 impertinent, the challenged material must have 'no possible bearing on the

27 controversy.'") "Scandalous" includes allegations that cast a cruelly derogatory light on a

28 party or other person.*" In re 2TheMart.com, Inc. Sec. Litig*., 114 F. Supp. 2d 955, 965

1    (C.D. Cal. 2000). Additionally, "courts often require a showing of prejudice by the

2    moving party… The Ninth Circuit has stated that prejudice can arise from allegations that

3    cause delay or confusion of the issues." *S.E.C. v. Sands*, 902 F. Supp. 1149, 1166 (C.D.

4    Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998).

5         Plaintiff sets forth numerous unsupported allegations that are immaterial,

6    impertinent, and scandalous. Plaintiff alleges "[t]here had been a systemic failure in San

7    Diego County to investigate incidents of medical neglect, staff misconduct, serious

8    injuries and deaths in the Jail" than proceeds to cite statistics set forth in a local

9    newspaper and other allegations regarding suicides.  [ECF No. 1 at ¶¶ 60-63, 71, 74, 79,

10   80, 81, 90, 91.]  Plaintiff also cites to wholly unrelated incidents involving drug

11   overdoses and inmates with severe psychiatric issues. *Id.* at ¶¶ 60-63, 71, 75,-78, 80, 81,

12   83, 84, 89.  Plaintiff also discusses CLERB, the grand jury, a report from Disability

13   Rights of California-which also discusses jail suicides, and generally alleges that there

14   was "staff misconduct."  *Id.* at ¶¶ 64, 96-107.  Plaintiff generally avers that the County

15   officials targeted journalists, has attempted to oppress and silence the media, falsified

16   information, and lied under oath.  *Id.* at ¶¶ 225-226. 249-251. Such allegations do not

17   pertain to the Plaintiff's case. As such, they are impertinent, immaterial and scandalous.

18   (At best, this appears to be an attempt to use unrelated issues to make up for the lack of

19   prior constitutional violations supporting *Monell* liability.)

20        This information prejudices the County by confusing the discrete issues in the

21   present case:  he administration of medication to Plaintiff, Plaintiff's placement on a top

22   bunk due to communications between medical staff and sworn staff, whether Defendants

23   act deliberately indifferent to his medical needs after he fell, and whether these

24   allegations were the result of an unconstitutional policy, custom or practice. These are the

25   only issues which are presently before this Court and the only issues the County should

26   be defending against. Consequently, information presented in the Complaint should be

27   connected to these issues and not be used as a sounding board for every alleged

28   indiscretion Plaintiff credits to the County. Thus, paragraphs 56, 60, 61, 62, 63, 64, 65,

66, 67, 68, 69, 70, 71,  72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 164-166,  192, 193, 195, 206,  211, 212, 213, 214, 215, 216, 218, 219, 220, 221, 222, 223,  225, 224, 225, 226, 231, 250, and 251 should be stricken from the complaint in accordance with Federal Rules of Civil Procedure, rule 12(f).

Further, as addressed above, the allegations against Dr. Joshua, Lee, and Sheriff Gore do not allege adequate facts to support malicious, oppressive or reckless disregard of the Plaintiff's rights. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).  The County is also immune from punitive damages.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-71 (1981).  Thus Paragraphs 160, 302(3) seeking punitive damages should be stricken.

# V.

## **CONCLUSION**

For the forgoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's complaint, or alternatively strike portions thereof.

DATED: June 10, 2019                    THOMAS E. MONTGOMERY, County Counsel

By: s/MELISSA M. HOLMES, Senior Deputy
Attorneys for Defendants County of San Diego,
Sheriff William Gore, Alfred Joshua, M.D., and
Barbara Lee
E-mail: melissa.holmes@sdcounty.ca.gov