UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FRANKIE GREER,

                                      Plaintiff,

v.

COUNTY OF SAN DIEGO, WILLIAM
GORE, in his individual capacity,
ALFRED JOSHUA, in his individual
capacity, BARBARA LEE, in her
individual capacity, and DOES 1–100

                                      Defendants.

Case No.:  3:19-CV-0378-GPC-AGS

**ORDER:**
**(1) DENYING IN PART AND
GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS; and**

**(2) DENYING IN PART AND
GRANTING IN PART
DEFENDANTS MOTION TO
STRIKE**

**[ECF No. 9]**

Frankie Greer ("Plaintiff") has sued the County of San Diego ("County"), Sheriff
William Gore of San Diego County ("Gore"), Medical Director for the San Diego
Sheriff's Department Alfred Joshua ("Joshua"), Medical Administrator for the San Diego
Sheriff's Department Barbara Lee ("Lee"), and unknown Doe defendants working for the
San Diego County Sheriff's Department (collectively "Defendants") for injuries suffered
after falling from a top bunk onto a county jail concrete floor.  Plaintiff alleges claims for
violations of his civil rights, common law negligence, violations of the American
Disabilities Act ("ADA"), and violations of 29 U.S.C. § 794(a) ("Rehabilitation Act").

ECF No. 1. On June 10, 2019, Defendants filed a motion to dismiss and a motion to strike paragraphs 56, 60–91, 94–107, 164–66, 192–193, 195, 206, 211–216, 218–226, 231, 250, and 251 from Plaintiff's complaint. ECF No. 9. The parties have fully briefed this motion. ECF Nos. 9-1, 13, 14. For the reasons below, Defendants' motion to dismiss is **DENIED** in part and **GRANTED** in part, ECF No. 14, and the Defendant's motion to strike is **DENIED** in part and **GRANTED** in part. *Id.* Plaintiff is granted leave to amend his ADA and Rehabilitation Act claims.

## I. Background

### A. Factual Background

The instant litigation concerns events following the arrest and booking of Plaintiff into the San Diego Central Jail ("the Jail") on January 31, 2018. ECF No. 1 at 2. Plaintiff is a U.S. Army veteran who was treated at a VA hospital for seizures and prescribed Levetiracetam to prevent his seizures. *Id.* After his arrest, Plaintiff informed the intake nurses he suffered from chronic seizures and required medicine that was in his pants. *Id.* He also asked the jail to assign him a lower bunk, as Plaintiff feared he could fall off a top bunk during a seizure. *Id.* at 6. The medical staff failed to provide Plaintiff with his Levetiracetam, but they did notate his need for a lower bunk in his paperwork. *Id.* However, the medical staff failed to place the order for the lower bunk in the Jail Information Management System ("JIMS"), and thus the jail staff assigned Plaintiff a top bunk. *Id.* After he was assigned a top bunk, Plaintiff asked the jail staff for a lower bed and reported he had previously fallen off from a bed due to a seizure. *Id.* Without the alert in JIMS, the deputy directed Plaintiff to the top bunk because all other beds were taken. *Id.*

On February 1, 2018, Plaintiff suffered a seizure while on his top bunk and fell off the bed. His head hit the concrete floor and he was rendered unconscious. *Id.* Cellmates attempted to alert jail staff of Plaintiff's fall through a cell intercom. *Id.* However, because the intercom was silenced, his cellmates were unable to contact the deputies. The silent intercom was against jail policy. *Id.* at 7. The cellmates began yelling, "man

down," but the jail staff did not respond. *Id.* Fifteen minutes after Plaintiff's fall, jail staff conducting regular checks found Plaintiff and called for medical assistance. *Id.* Nurse staff arrived six minutes later, and paramedics arrived approximately nine minutes after the nurses. *Id.* Hospital records reveal Plaintiff facial fractures, brain bleed, and respiratory failure. *Id.* at 3.

In addition, the jail failed to immediately alert Plaintiff's next of kin about his injury due to a failure to properly document Plaintiff's next of kin. *Id.* at 7. A nurse at the University of California, San Diego turned to social media to find Plaintiff's family and make contact them. For weeks, Plaintiff remained in a coma. *Id.* When he regained consciousness, he could not recognize family and had suffered significant brain injury. *Id.* at 7.[1]

## B. Procedural Background

On February 25, 2019, Plaintiff filed his complaint alleging Defendants were deliberately indifferent to his medical needs in violation of 42 U.S.C. § 1983, had failed to train their subordinates, had failed to supervise and discipline employees, had failed to investigate serious institutional failures, and had committed *Monell* violations. *Id.* at 1. Plaintiff further alleged common law negligence, violations of 42 U.S.C. § 12101 ("ADA") and 29 U.S.C. § 794(a) ("Rehabilitation Act"). *Id.*

On June 10, 2019, Defendants filed their motion to dismiss claiming Plaintiff failed to state a claim on which relief can be granted as to the individual Defendants; failed to allege sufficient facts to support any § 1983, negligence, ADA or Rehabilitation Act claims; and that the County is immune to state law claims. ECF No. 9-1. In addition, Defendants moved to strike allegations related to prior lawsuits and litigation involving alleged failures to properly monitor and care for inmates. ECF No. 9. On July

---

[1] The Court notes that it is unclear from the record whether Mr. Greer is alive as of July 17, 2019. The complaint references Mr. Greer as to continuing to suffer from his injuries, while also calling him the "decedent" and mentioning his death. *See* ECF No. 1 at 21, 23. Defendants also references Plaintiff's death and mentions him as the "decedent." *See* ECF No. 9-1 at 7, 27.

5, 2019, Plaintiff filed his response to the motion to dismiss and the motion to strike. ECF No. 13. On July 12, 2019, Defendants filed their reply in support of the motion to dismiss. ECF No. 14.

## II. Defendants' Motion to Dismiss

### A. Legal Standard for Rule 12(b)(6)

A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), not "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make a claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A party may thus move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). In addition, Rule 12(b)(6) does not immunize from scrutiny assertions that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

### B. Discussion

Defendants have moved to dismiss the complaint in its entirety. First, Defendants move to dismiss Plaintiff's § 1983 on the basis that the Complaint fails to adequately

4

allege supervisory liability against Gore, Dr. Joshua, and Lee.  Specifically, Defendants argue that the § 1983 claims against Gore, Dr. Joshua, and Lee should be dismissed because Plaintiff does not identify facts that suggest personal participation by the individual defendants or a sufficient causal connection between Defendants' actions and Plaintiff's injuries.  Second, Defendants assert that Plaintiff's § 1983 claims fail to confer liability on the County of San Diego under *Monell*.  Third, Defendants contend that they are immune from Plaintiff's state law claim for negligence.  Fourth, the Defendants allege that Plaintiff has failed to state a plausible claim for relief under the ADA and the Rehabilitation Act.  Fifth, Defendants argue the Plaintiff's request for declaratory and injunctive relief are moot.  And finally, Defendants motion to strike portions of the pleadings that they believe are immaterial, scandalous, and impertinent.  The Court will address each of these arguments in turn.[2]

### 1. Supervisory Liability in § 1983 Claims Against the Individual Defendants

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations omitted).  A supervisor may be liable if he is either (1) personally involved in the constitutional deprivation; or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  For supervisory officials, liability can exist

---

[2] The Court notes that the Complaint is sprawling in its scope and unnecessarily duplicative in its claims against the County. It combines supervisory official claims with *Monell* Claims in Counts One through Four and does not provide a clear road map on how the case will proceed through trial.  Plaintiff's counsel is directed to file an amended complaint which clearly distinguishes supervisory official claims from *Monell* claims.

"even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.d 1435, 1446-47 (9th Cir. 1991) (internal citations omitted). The supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (internal quotations omitted). To impose this type of supervisory liability, Plaintiff must satisfy two conditions: (1) plead detailed factual allegations that "give fair notice" to the defendant to "enable the opposing party to defend itself effectively"; and (2) plead a theory of liability through these detailed allegations that "must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* at 1216.

Defendants contend that Plaintiff cannot meet these conditions. To impose supervisory liability absent personal participation, Defendants assert that the supervisory official must have known that the policy was so deficient as to be unconstitutional – and then subsequently failed to correct it, resulting in Plaintiff's injury. ECF No. 9 at 6; *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). According to Defendants, Plaintiff fails to allege facts that reveal the personal involvement of supervisory officials, a causal connection between the individual defendants' actions and Plaintiff's harms, or a policy that constitutes a repudiation of constitutional rights. Further, the Supervisory Defendants contend that the prior instances relied upon by Plaintiff as providing "knowledge" are so dissimilar that they could not have provided notice to the Individual Defendants of the existence of any unconstitutional policy that caused Plaintiff harm. As a result, Defendants aver that Plaintiff's § 1983 claims for deliberate indifference against the Individual Defendants should be dismissed.

3:19-CV-0378-GPC-AGS

Plaintiff counters that he has pled ample facts to support his theory of supervisory liability absent personal participation. Specifically, Plaintiff relies on *Starr*, where the Ninth Circuit held that Los Angeles County Sheriff Baca could be held liable in his individual capacity for unconstitutional conditions of confinement. In *Starr*, the Ninth Circuit found Sheriff Baca to be on notice of the need to take steps to protect inmates after multiple inmates had been killed or injured as a result of deputies' misconduct. 652 F.3d 1202, 1205-06 (9th Cir. 2011). The *Starr* court also found plaintiff's theory of liability plausible in large part because there was "no obvious alternative explanation" for Sheriff Baca's inaction in the face of his "subordinates' repeated violations of prisoners' constitutional rights despite being repeatedly confronted with those violations." *Id*. As such, plaintiff had plausibly shown that Baca was deliberately indifferent to the plaintiff's rights when he "acquiesced" through his inaction to the unconstitutional conduct of his subordinates. *Id.* (Citations Omitted).

In the instant case, Plaintiff alleges § 1983 causes of action against the Individual Defendants based upon their deliberate indifference in (1) failing to properly report and respond to serious medical needs, (2) failing to properly train staff, (3) failing to properly supervise and discipline staff; and (4) failing to properly investigate misconduct. Plaintiff contends that the Supervisory Defendants acquiesced through inaction in unconstitutional conduct where they had notice of (1) a CityBeat series reporting that San Diego County had the highest mortality rate among California's largest jail systems from 2007-2012 with deaths of sixty inmates, ECF No. 13 at 9, (2) examples of the failure to coordinate and share critical medical information among personnel, and other widespread problems, *id*. at 8-13; (3) the understaffing of the Citizen Law Enforcement Review Board (CLERB) and back up in investigating in-custody deaths, *id*. at 14; (4) a San Diego Grand Jury report which details problems with the Jail Information Management System (JIMS) and its operation, *id*. 13-14; (5) an 2018 report from Disability Rights California reviewing suicide deaths from 2014-2016, *id*. at 15; and (6) statistics which show that falling from the top bunk is the most common injury in prisons, constituting 72% of

injuries.  *Id.*  In view of these repeated errors, problems and failings, Plaintiff contends that Lee, Joshua, and Sheriff Gore acquiesced in constitutional violations by failing to offer additional training, supervision, policies, or counseling relating to proper medical care, cell checks and the use and operation of the JIMS system.

While there is significant factual overlap in the Plaintiff's claims, he has alleged separate causes of actions based on the failure to implement remedial measures in different areas of jail operation.  Accordingly, the Court will address the factual basis for each area of operation.

### a.  Deliberate Indifference to Serious Medical Needs

Claims for violations of the right to adequate medical care "brought by pretrial detainees against individual defendants under the Fourteenth Amendment" are evaluated under an objective deliberate indifference standard. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).[3]  The elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019). A constitutional violation may take place when the government does not respond to the legitimate medical needs of a detainee whom it has reason to believe

---

[3] There are "no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as ... the protection he is afforded against other inmates." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

suffers from a medical condition requiring medication. See *Lolli v. Cty. of Orange*, 351 F.3d 410, 420 (9th Cir. 2003)

Plaintiff claims that the Jail medical staff were required to obtain, input and document full and accurate medical information from inmates. ECF 1 at 17. Medical staff failed to do so and consequently, Mr. Greer did not receive his prescribed Levetiraetam for preventing seizures and was assigned an upper bunk. *Id*. at 16-17. When he suffered a seizure, Plaintiff fell off the top bunk but was denied timely medical treatment due to a silenced intercom system and delayed cell checks. *Id*. at 18. Plaintiff alleges that Individual Defendants were aware of numerous failures in inputting and documenting inmate medical information such that remedial measures were required and that the Defendants' inaction caused Plaintiff's injuries.

Individual Defendants assert that there are no facts that they "participated in or directed the violations" or knew that a "policy was so deficient to be unconstitutional and failed to correct it." ECF. No. 9-1 at 13. They describe Plaintiff's allegations regarding their knowledge of injuries due to lack of communication as conclusions that are founded upon prior instances that are so dissimilar that they cannot be the basis for knowledge about an unconstitutional policy. *Id*. Finally, they argue that Plaintiff has failed to establish a connection between any policy and failure to administer seizure medication. *Id*. at 14.

Plaintiff counters that the facts he has alleged in his complaint plausibly show a pattern of failing to communicate critical medical information regarding inmates which was known by the Defendants and which went unaddressed. As to the pattern of unconstitutional violations, he points to the deaths of: (1) Bernard Victorianne, who died due to a drug overdose after staff failed to input information into the JIMS system; (2) Ronnie Sandoval, who also died of an overdose after nurses failed to communicate his medical condition after a shift change; (3) Ruben Nunez, who died after medical staff failed to input critical medical information into JIMS; (4) Heron Moriarty, who committed suicide after jail personnel ignored 28 phone calls from Moriarty's wife

9

warning about his mental state; (5) Tommy Tucker, who died after jail officials said they did not know how to access the JIMS system to get vital medical information. In addition, he relies on a CityBeat series reporting a high mortality rate in the San Diego County Jail from 2007-2012; a CLERB letter to the Sheriff's Department expressing concerns regarding breakdowns in communication during shift changes; the understaffing of the CLERB and its back up in investigating in-custody deaths; and a Grand Jury report identifying problems with the JIMS system. *Id.* at 10–11.[4]

Defendants seek to distinguish *Starr* by noting that the Los Angeles jail received several reports, including one from the Department of Justice in 1996, about the assaults that had occurred in the jail, but did nothing to rectify them. *Id.* at 1209. To be placed on notice, Defendants assert they had to receive and ignore official reports. Under this view, media reports, statistics, and Citizen Law Enforcement Review Board ("CLERB") reports cited by Plaintiff are not enough to provide adequate notice. ECF No. 14 at 3.

The Court rejects the view that only official internal and external reports can provide notice to supervisory officials to support a constitutional violation under supervisory liability. What is important is whether supervisory officials are made aware of problems that require attention by supervisory officials in order to protect the lives of inmates. While notice can be provided in different ways, some of the forms relied upon by Plaintiff are deficient. As to the CityBeat series that reported the mortality rate at San Diego county jails, it does not identify a specific problem or constitutional violation relating to medical care. Meanwhile, with respect to understaffing at the CLERB, there is

---

[4] Plaintiff also relies on a 2018 Disabilities Rights California ("DRC") report which found that the jail suffered many deficiencies in its clinical and referral evaluation practices. ECF No. 13 at 8. Namely, the DRC found the jails failed to properly handle the intake of inmates, address housing placements, and coordinate communication between the various staffs. Id. at 13. Plaintiff has failed to allege that the 2018 DRC report existed prior to Plaintiff's February 2018 fall or that the Individual Defendants were aware of the contents of the report before Plaintiff's fall. Plaintiff also cites CLERB reports that made multiple recommendations to Defendants to make the jail safer, but that they ignored these reports. Id. at 14-15.

no indication of how this understaffing was made known to the Individual Defendants and how it is related to a failure to provide medical care. However, as to the five specific incidents identified above, the Grand Jury Report and CLERB letter, these materials provided notice and plausibly support the conclusion that the Supervising Defendants knew or should have known that jail staff did not properly enter information into the JIMS system and did not properly communicate critical medical information to other jail staff as to violate the constitutional rights of inmates. Because there is no obvious alternative explanation for the inaction by the Supervising Defendants, Plaintiff has plausibly alleged acquiescence in an unconstitutional practice, custom or pattern.

Plaintiff must also show that the inaction by the Supervising Defendants caused Plaintiff's injuries. *Gordon v. Cty. of Orange*, 888 F.3d at 1125. Here, Plaintiff has alleged that jail staff repeatedly failed to input and communicate medical needs of inmates, that the Supervising Defendants were aware of the problem and did nothing, and that the failure to take corrective action led to the denial of adequate medical care to the Plaintiff. These allegations plausibly show a causal connection between the Individual Defendants' inaction and Plaintiff's injuries. Consequently, the Court finds Plaintiff has sufficiently alleged a failure to obtain, input and document full and accurate medical information of which the Individual Defendants were aware and which caused Plaintiff harm.

### b. Failure to Properly Train Under § 1983

In his second cause of action, Plaintiff alleges that the Individual Defendants failed to provide adequate and proper training necessary to educate deputies and medical staff as to the constitutional rights of inmates in order to prevent the consistent and systematic failure to provide medical care. ECF 1 at 21-23. Specifically, Plaintiff claims that the Defendants were aware of a widespread pattern and long history of failure to communicate inmate's critical medical history. *Id*. The complaint adds that staff either did not know how to use the JIMS system or were failing to document critical information. *Id*. at 23. In addition, because inmates had been sustaining serious injuries

from falling off the top bunk, the Defendants knew that patients suffering from seizure disorders could not be placed on the top bunk for obvious medical reasons. *Id*. Finally, Plaintiff asserts that corrections staff failed to conduct proper cell checks, lied about cell checks and were unable to perform cell checks due to understaffing.

Individual Defendants argues that Plaintiff merely states conclusions but has failed to allege sufficient facts to support a plausible claim for failure to properly train under § 1983. ECF 9-1 at 14. Defendants further claim that there is a dearth of specifics as to how the individually named Defendants knew of a pattern and history of a failure to communicate medical history, failure to conduct proper cell checks or improper placement of inmates suffering from seizures on top bunks. *Id*. Without these details, Defendants argue that Plaintiff cannot show his injuries stemmed from Defendants' failure to train which Defendants knew or should have known would result in Plaintiff's injuries from a failure to provide medical care. *See Johnson v. Duffy*. 588 F.2d 740, 743–744 (9th Cir. 1978) (requisite causal connection established by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury).

This failure to train cause of action shares a number of allegations with the denial of medical care claim discussed above as it relates to failures to input and communicate critical medical information. Here, as there, the reports and incidents presented by Plaintiff plausibly show that Individual Defendants were placed on notice that their medical and reporting policies produced unconstitutional conditions of confinement which required remedial measures to cure, including the proper training of jail staff on the input and communication of inmate medical information.

As to communication of medical information, Defendants assert that Plaintiff has failed to identify any deficiencies that are sufficiently related to his injuries. The Ninth Circuit has observed that "[t]he requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause

others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Here, Plaintiff has identified repeated failures to properly communicate medical information and emergencies which harmed other inmates. These deficiencies were known or should have been known by the Individual Defendants and the failure to remedy the constitutional violations by providing adequate training plausibly led to Plaintiff's injuries.

As to failures to conduct proper cell checks, Plaintiff's complaint relies on the deaths of three inmates as placing the Supervising Defendants on notice of the existence of constitutional violations and the need for training: (1) Bernard Victorianne, who died in 2012 due to a drug overdose when staff failed to conduct a proper cell check after an inmate reported Mr. Victorianne was not breathing; (2) Daniel Sisson who died in 2011 from an acute asthma attack exacerbated by drug withdrawal after jail staff failed to monitor him in spite of observed signs that he was experiencing withdrawals; (3) Kristopher NeSmith who committed suicide in 2014 after jail staff performed a cell check and observed a bedsheet fashioned into a rope and took no additional steps to protect NeSmith. These three isolated instances over the course of the last eight years relate to the frequency and adequacy of cell checks and are insufficiently numerous or indicative of constitutional violations to provide notice of the need for further training on the conducting of cell checks.

Likewise, with respect to the claim that inmates suffering from seizures were assigned top bunks, Plaintiff has failed to provide any prior case where an inmate suffering from seizures had fallen from an upper bunk. Instead, Plaintiff cites one individual, George Bryan, who fell off the top bunk in December 2017 and severely injured himself. The law requires more than one documented case to provide supervising officers with fair notice of ongoing constitutional violations. In addition, Plaintiff cites an unidentified "comprehensive study of emergency room visitors" which identifies falling out of a bunk bed as the most common injury treated in emergency rooms. ECF No. 1 at 7. There is no indication that the study relates to San Diego county jails or that

the Defendants were aware of it. Given the inadequate notice of a constitutional violation, the allegations are insufficient to establish a claim for failure to train related to placement of inmates in upper bunks.

In sum, Individual Defendants had notice of the need to train their subordinates with respect to adequate medical care, communication of medical conditions and the use of JIMS. Defendant's inaction in providing training in these areas, like in *Starr*, plausibly alleges deliberate indifference to Plaintiff's medical needs through "acquiescence in the constitutional deprivations." *Starr*, 652 F.3d 1202, 1205-06 (2011).

### c. Failure to Properly Supervise and Discipline Under § 1983

Plaintiff's third cause of action alleges that Defendants failed to properly supervise and discipline subordinates as to the need to communicate critical information and need to provide adequate care. ECF No. 1 at 25. Further, he claims that Defendants refused to investigate misconduct and took no remedial steps against deputies and medical staff. *Id*. According to Plaintiff, Defendants were aware of a long series of wrongful deaths from lack of medical care and that jail staff were improperly monitoring housing units and failing to properly perform cell checks. *Id*. Thus, Plaintiff concludes that the various named Defendants were on notice that they had failed to properly supervise, discipline, and investigate.

Relying on *Iqbal*, Defendants claim that these allegations are conclusory and lack the factual basis to state a claim. *Iqbal*, 556 U.S. at 677. In addition, Defendants claim that the Plaintiff relies on examples that are dissimilar from the incident. ECF No. 9-1 at 15-16. Further, Defendants assert that the Plaintiff has failed to show that any actions by the individually named Defendants was a "'moving force'" behind any constitutional violation. ECF No. 9-1 at 16. (Internal Citations Omitted).

As before, the Court finds that Plaintiff has sufficiently shown that the jail staff committed constitutional violations in the failure to input and communicate critical medical information and that this failure was made known to the individual Defendants and plausibly led to Plaintiff's injuries. These facts would have placed a reasonable

14

person on notice that improved supervision and proper discipline were required as a response to these constitutional violations.  Under the standards set forth in *Starr*, Plaintiff has successfully alleged enough to support a claim under Rule 12(b)(6) on failure to supervise, and discipline.

### d. Failure to Investigate

As his final § 1983 claim against the Individual Defendants, Plaintiff alleges that Defendant failed to properly investigate misconduct by maintaining a policy of not obtaining accurate and timely reports from witnesses and maintained a de facto policy of allowing investigators to intimidate witnesses and summarize interviews of inmates in a manner to distort the actual recorded statements of witnesses.  ECF 1 at 26-27.  Plaintiff alleges in an expansive fashion that the Individual Defendants have historically and systematically engaged in a pattern of failing to properly investigate misconduct. *Id*. at 27.  Plaintiff points to de facto policies of failing to investigate in-custody deaths, failing to notify CLERB of in-custody deaths and maintaining an ineffective system where Internal Affairs and CLERB are unauthorized to investigate medical staff misconduct.

Defendants once again rely on *Iqbal* to assert that the allegations are conclusory and dissimilar. The Court agrees that many of the allegations are conclusory.  More problematic is the failure to tie the alleged failures to investigate with the Plaintiff's injuries.  As a starting point, the Court observes that Plaintiff is not alleging a failure to investigate breakdowns in communicating critical medical information. Instead, Plaintiff alleges in a conclusory fashion that families of inmates were provided limited information regarding the deaths of their loved ones which was part of a pattern of conduct to cover up their misconduct. ECF No. 1 at 27-31.  Assuming this is true, any failure to provide information to family members involves the failure to input critical information and not a failure to investigate misconduct.  Similarly, there are insufficient allegations which tie the alleged failures to the Plaintiff's injuries.

However, the Court finds that it is possible that Plaintiff can cure these defects so the dismissal of this claim is **WITHOUT PREJUDICE.**

### 2. Claims Against the County Under *Monell* and § 1983 for Failure to Train, Supervise, and Discipline

Defendants also move to dismiss Plaintiff's § 1983 claims against the County of San Diego. They claim that the Plaintiff's first cause of action for indifference to medical needs is duplicative of the *Monell* claims. In addition, Defendants contend that the other claims § 1983 claims against the County for failure to train, failure to supervise, failure to discipline, and failure to investigate must be dismissed because Plaintiff has not pled adequate facts to demonstrate causation or a pattern of similar constitutional violations. Finally, Defendants argue that the *Monell* claims lack a sufficient factual basis for municipal liability. The Court will address each of these arguments in turn.

#### a. Duplicity of Plaintiff's *Monell* Claim and the § 1983 Claim for Deliberate Indifference Against the County

The Defendant County moves to dismiss Plaintiff's first claim for deliberate indifference to serious medical needs on the ground that it duplicates his *Monell* claim contained in the fifth cause of action. ECF No. 9-1 at 17. The County points out that both claims are based on the claim that Plaintiff's injuries were the product of the County's *de facto* policies that resulted in a pattern of constitutional violations to detainees which was closely related to the ultimate injuries sustained by Plaintiff. *Id*.

In his opposition papers, Plaintiff fails to address this argument. The Court concurs that both causes of action are predicated upon *Monell* liability.[5] Indeed, *Monell* liability is the only means that the County can be held liable for the actions of its employees. Count 1 alleges, among other things, a pattern of deliberate indifference to inmates' serious medical needs while Count 5 includes the same alleged pattern of

---

[5] The County's moves to dismiss the first cause of action because it is duplicative of his *Monell* cause of action. The Court agrees but also observes that this argument applies equally to the second, third and fourth causes of action. These three causes of action are also duplicative of the claims contained in the *Monell* cause of action. However, in that the County has not challenged these additional claims as duplicative, the Court will not *sua sponte* dismiss these claims as to the County and will address each claim in section II(B)(2)(b).

deliberate indifference to the constitutional rights of pretrial detainees. ECF No. 1 at 31-32. Accordingly, the Court finds that Plaintiff's first claim against the County is essentially duplicative of his *Monell* cause of action and will **DISMISS** the first claim against the County for deliberate indifference to serious medical needs.

### b. Causation and Pattern of Constitutional Violations in Claims Against the County

Next, the County argues that Plaintiff's second, third, fourth, and fifth claims against it should be dismissed because they lack factual allegations setting forth causation or a pattern of similar constitutional violations. The County submit that under § 1983, a municipality can only be sued directly if the alleged unconstitutional conduct is the result of an official policy, the *Monell* model – or a pervasive practice, the *Canton* model – and when the policy or practice was the "moving force" behind the violation. *See Canton v. Harris*, 489 U.S. 378-390-91 (1989); *Brown*, 520 U.S. at 404; *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). For cases involving a pervasive practice, the County notes that a plaintiff must prove a pattern of similar constitutional violations from which it can be plausibly shown that the challenged practice or custom was the moving force of the constitutional violation – and that municipal decision makers were on notice. *See Brown* at 407-08. In this case, Defendants proffer that Plaintiff has not established that the constitutional violations resulted from an official policy under *Monell.* Defendants also aver that that Plaintiff can show neither a pervasive pattern of constitutional violations similar to the one Mr. Greer experienced nor that a pervasive practice caused the present violations.

Plaintiff asserts that the County "deliberately conflates the specific medical harm suffered with the Constitutional violations which caused the harm," misrepresenting the holding of *Brown*. ECF No. 13 at 19; *see also Brown*, 520 U.S. 407-08. Specifically, Plaintiff argues that *Brown* never equates a "pattern of similar constitutional violation" with "multiple instances of *harm*." *Id.* (Emphasis in original). Rather, *Brown*, in discussing *Canton*, 489 U.S. at 390, also reiterates that municipalities may be held liable

when "policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Brown* at 407. (Internal citations omitted). Moreover, Plaintiff points out that "municipalities'" "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees" can establish the requisite deliberate indifference for imposition of municipal liability. ECF No. 13 at 20; *Brown* at 407. Thus, *Brown* "makes clear that the dispositive inquiry is the repeated derivation of a federally-protected right, not the specific harm inflicted by each deprivation." ECF No. 13 at 20.

Here, Plaintiff argues that the County violated inmates' Fourteenth Amendment rights to adequate medical care as a result of the Jail's failure to communicate critical conditions. This known pervasive practice led to a "pattern of similar constitutional violation" that, although resulting in different harms to different detainees, constituted a *de facto* policy of deliberate indifference. Plaintiff submits that a common constitutional violation promulgated harms to numerous detainees, including himself. As such, Plaintiff counters that he has established a pervasive pattern of common constitutional violations through the County's *de facto* policies and in turn, can confer municipal liability.

The Court agrees. To trigger municipal liability under *Monell* and *Brown* in the absence of an official policy, Plaintiff must demonstrate a known pattern of similar constitutional violations that resulted from a challenged custom or pervasive practice. In this case, Plaintiff has pled that municipal policymakers were aware of and acquiesced in a pattern of constitutional violations. His Complaint is supported by specific instances of death and injury to inmates due to the denial of needed medical care. These repeated incidences allegedly resulted from Jail staff's failures to communicate medical needs and coordinate care for inmates' known medical conditions. In addition, Plaintiff has detailed that injuries resulted on multiple occasions through SDCJ's failure to train and supervise subordinates with respect to the communication of critical medical information; failure to train and supervise subordinates on the use of JIMS; the failure to render medical care to inmates in dire medical need; and failure to discipline staff on these matters.

Because these detailed factual allegations offer a plausible theory of pattern and causation, the Plaintiff's claims against the County survive a 12(b)(6) motion to dismiss.

### 3. Count 4: Common Law Negligence

Defendants also challenge Plaintiff's negligence cause of action, arguing that the individually named Defendants had no cognizable legal duty towards the Plaintiff and that the County is immune from liability due to California Government Code § 844.6(a)(2).

#### a. Individual Defendants' Duty to Plaintiff

California law follows the common law as to the tort of negligence and requires Plaintiff to allege that Defendants had a duty of care, that the duty was breached, that this breach of duty was the cause in fact and the proximate cause of Plaintiff's harm, and that Plaintiff suffered resulting damages. *See Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996).

Individual Defendants claim that Plaintiff failed to allege that they owed him a duty of care. Based upon their reading of the complaint, Defendants argue that the only identified duty of care owed by the three individual Defendants are based upon the ADA and Rehabilitation Act which only place a duty on municipalities, not on individuals. ECF No. 9-1 at 24. Plaintiff does not respond to this argument and, accordingly, the Court GRANTS the Individual Defendants' motion to dismiss a negligence claim premised upon a duty arising out of the ADA and Rehabilitation Act. Because it is possible that Plaintiff might overcome the defects detailed herein, dismissal is **WITHOUT PREJUDICE**.

However, a fair reading of the complaint discloses more than an alleged duty arising out of the ADA and Rehabilitation Act. Plaintiff also claims that Defendants had a duty to act with ordinary care and prudence so as not to cause harm or injury to others. Because pretrial detainees are nearly completely dependent on the jail's staff and administration and have limited ability to shield themselves from harm and risk, it is necessarily incumbent on jail staff to ensure proper medical care of prisoners. Plaintiff

3:19-CV-0378-GPC-AGS

alleges that Defendants negligently failed to properly document his serious medical condition, failed to communicate the need to monitor, failed to provide any medical care for a serious condition and failed to respond promptly to calls for medical care following Plaintiff's fall. ECF 1 at 33. Defendants do not address this duty of care in their motion to dismiss. As such, the motion to dismiss is **DENIED** as to a duty to care owed to pretrial detainees.

b. **County's Claim of Immunity Under Government Code §** **844.6(a)(2) and § 845.2**

Next, Defendants claim that under California Government Code § 844.6(a)(2) and § 845.2 they are immune from liability. Government Code section 844.6(a)(2) is part of the California Tort Claims Act (Gov. Code, § 810 et seq.). The Tort Claims Act provides that "[e]xcept as otherwise provided by statute," "[a] public entity is not liable for an injury." (Gov. Code, § 815.) (2) "[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances ...." *Brown v. Poway Unified School Dist*. (1993) 4 Cal.4th 820, 829. California Government Code § 844.6(a)(2) states: "a public entity is not liable for . . . (2) An injury to any prisoner." Citing the California Supreme Court, Defendants argue that the County is immune from suit based on the tort of negligence. *See Teter v. City of Newport Beach*, 30 Cal. 4th 446, 448–49 (2003) (holding that municipalities are immune from suit based on injuries done to prisoners except for explicitly enumerated exceptions such as § 845.6).

California Government Code § 845.2 provides, "neither a public entity nor a public employee is liable for . . . failure to provide sufficient equipment, personnel, or facilities." Defendants argue that to the extent that Plaintiff's claim is based upon the inadequacy of jail staffing and facilities, his claims are barred. The Court agrees that § 845.2 provides immunity under the stated circumstances. However, it is plain that Plaintiff's claims go beyond the inadequacy of jail staffing and inadequate facilities. Consequently,

3:19-CV-0378-GPC-AGS

Defendants cannot show that they are entitled to immunity as to all of the claimed negligent acts alleged.

As to Defendant's § 844.6 defense, Plaintiff counters by citing California Government Code § 845.6, which states that an employee and public entity "is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and fails to take reasonable action to summon such medical care." To bolster his argument, Plaintiff refers to *Lucas v. Cty. Of Los Angeles,* where the California Appellate Court found that "reason to know" is an objective standard that should be left to the finder of fact to determine liability. 47 Cal. App. 4th 277, 288 (1996). "Section 845.6 places the burden on the governmental entity, not the individual. It is as special statute which creates liability . . . a special burden to be borne by public entities under limited circumstances." *Zeilman v. Cty. of Kern*, 168 Cal. App. 3d 1174, 1186 (1985) (Citations Omitted). Thus, Plaintiff concludes that his claim falls into one of the specifically enumerated exemptions put forth by the California Supreme Court, and that the extent of Plaintiff's damages that were caused by Defendants alleged delayed response to his injury is a matter of fact for the jury.

Here, at least in part, Plaintiff's negligence claim falls under a specifically enumerated exemption that confers municipal liability. Although the County may not be liable under California law for negligence as to every event or failure to act leading up to Plaintiff's seizure and fall from his bed, the County may be held liable for any harm caused by their delayed response to his fall and resulting injuries. Plaintiff has alleged that crucial minutes to provide aid were lost following his fall from his bed because jail staff did not timely respond to his cellmates attempts to communicate with them through a touch screen system where an audio alert was allegedly set to mute. The failure to respond to a touchscreen alert plausibly alleges that the County had a "reason to know" that medical attention was required and leave the County liable for damages under § 845.6. It is not for the Court to decide, as Defendants ask in their reply, whether jail staff actually had "reason to know" Plaintiff had fallen from his bed and had been critically

injured. A motion to dismiss tests the plausibility of a claim and, here, Plaintiff has sufficiently alleged a delayed response to his injury which caused him harm and establishes liability under California Code § 845.6.

### 4. Merits of the ADA and Rehabilitation Act Claims

Defendants argue Plaintiff has failed to allege the facts necessary to state ADA or Rehabilitation Act ("RA") claims. The Ninth Circuit has found,

> To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities or was otherwise discriminated against by the public entity's services; (4) such exclusion, denial of benefits, or discrimination was by reason of disability. *Simmons v. Navajo City, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010).

Here, Defendants assert Plaintiff's complaint fails to adequately allege that Plaintiff was denied the benefit of government services "by reason of his disability." Specifically, Defendants challenge Plaintiff's claims by asserting that a seizure disorder does not render a person disabled under the ADA and RA. In addition, Defendants allege that Mr. Greer has failed to plead facts to satisfy the third element of the ADA – that Plaintiff was either excluded from participation in, or denied the benefits of, the Central Jail's services, programs, or activities, or otherwise discriminated against by the Central Jail. Without such allegations of discrimination, Defendants argue Plaintiff's claim fails.

Plaintiff claims that a seizure disorder qualifies as a physical impairment that would render Mr. Greer disabled. It is established law that a pretrial detainee has a Fourteenth Amendment right to a bed or mattress. *Thompson v. Los* Angeles, 885 F.2d 1439, 1448 (9th Cir. 1989), *abrogated on other grounds by Bull v. City & County of San* Francisco, 595 F.3d 964, 981 (9th Cir. 2010). Due to chronic seizures, Mr. Greer required a bottom bunk due to enjoy the benefit of the bed. Plaintiff surmises that the Jail staff's decision to deny him a bottom bunk was deliberate, since Mr. Greer was placed in a top bunk even after he requested accommodation. As such, jail staff's failure to

accommodate Plaintiff despite his request thus demonstrates the requisite discrimination "by reason of disability."

The Ninth Circuit has held that a plaintiff must "prove that the alleged exclusion from participation . . . was 'solely by reason of disability.'" *Weinreich v. Los Angeles Cty. Metro. Transp. Auth.*, 114 F.3d 976, 978–79 (1997). Other districts in California have similarly applied the Ninth Circuit's rule to prison ADA and Rehabilitation Act cases. *See e.g. Arreola v. Cal. Dep't of Corr. & Rehab.*, Case No. 16-cv-03133-JD, 2017 WL 1196802 (N.D. Cal. Mar. 31, 2017) (granting judgment on the pleadings in favor of the Defendants on a prisoners' ADA claim when he failed to allege that the prison had discriminated against him solely on the basis of disability). Moreover, courts have found that a seizure disorder alone may not be enough to qualify as disability under the ADA. *See Ramos-Echevarria v. Plc/us, Inc.*, 698 F. Supp. 2d 262, 270 (D.P.R. 2010) (aff'd 659 F.3d 182 (1st Cir. 2011); *see also White v. Sears, Roebuck & Co.*, 2009 WL 1140434 (E.D.N.Y. Apr. 27, 2009) (finding that an individual is not "disabled" under the ADA simply upon diagnosis of a seizure disorder). Instead, "a 'disability' exists only when an impairment 'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not 'substantially limi[t] ' a major life activity." *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 482-83 (1999).

It is unclear through Plaintiff's Complaint whether Mr. Greer is a disabled person under the ADA or Rehabilitation Act. As pled, Plaintiff does not indicate that that his seizure disorder "substantially limits" any major life activity. The Complaint provides factual assertions that indicate Plaintiff's seizure disorder may prevent him from certain activities, such as sleeping in a top bunk without medication. But there is no suggestion

that Plaintiff was unable to physically access – or sleep in – the top bunk or that his impairment could not be corrected by mitigating measures, such as his medication.

In addition, Plaintiff's Complaint specifically mentions that jail staff placed him into a top bunk because there were no more beds available. ECF No. 1 at 6. Plaintiff notably does not offer any allegation that the decision to put him in a top bunk had anything to do with any other factors other than indifference coupled with availability. This allegation does not sufficiently establish that Defendants denial of Plaintiff's request was "by way of [his] disability." *Simmons* at 1021. In fact, the Complaint suggests that Plaintiff was not given a bottom bunk due to a disability, but rather because the corrections staff did not have knowledge of his special housing requirement. As such, Plaintiff has not provided sufficient facts for the claim that he was treated differently or excluded from a benefit on the basis of discriminatory animus.

Accordingly, the Court **GRANTS** this portion of Defendant's motion to dismiss Plaintiff's ADA and RA claims. Since it is possible that Plaintiff might overcome the defects detailed herein, dismissal is **WITHOUT PREJUDICE**.

### 5. Motion to Dismiss Plaintiff's Request of Declaratory and Injunctive Relief

Defendants move to dismiss Plaintiff's motion for declaratory and injunctive relief because they are moot. Since Plaintiff is no longer in their custody and the damage done to Plaintiff cannot be undone, Defendants argue that declaratory and injunctive relief would have no impact on Plaintiff's claims and are thus moot. Plaintiff does not offer an explanation in his response as to why he requested the relief, nor how it would affect his claim. Thus, the Court will **GRANT** Defendants' motion to dismiss Plaintiff's request for declaratory and injunctive relief.

### 6. Motion to Strike

The final issue before the Court is Defendant's motion to strike paragraphs 56, 60–91, 94–107, 164–66, 192–193, 195, 206, 211–216, 218–226, 231, 250, and 251 of Plaintiff's complaint. Defendants claim that the Court should strike the material as it is

immaterial, scandalous, and impertinent as per the Federal Rules of Civil Procedure 12(f).

Upon motion by a party, the Court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from any pleading. Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). "Impertinent" matter includes "statements that do not pertain, and are not necessary, to the issues in question." *Id.*

"Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). A Rule 12(f) motion should only be granted when it is "clear that [a matter] can have no possible bearing on the subject matter of the litigation." *Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.*, 870 F. Supp. 2d 1015, 1039 (D. Haw. 2012). A court may not resolve any disputed or substantial factual or legal issues. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). If there is any doubt whether the allegations might bear on an issue in the litigation, the court should deny the motion. *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Ultimately, the decision whether to grant a Rule 12(f) motion is in the district court's discretion. *Cortina v. Goya Foods, Inc.*, 94 F. Supp. 3d 1174, 1182 (S.D. Cal. 2015).

Defendants argue that the other incidents at the prison, the statistics cited by Plaintiff, and the various press releases are all completely unrelated to Plaintiff's case and are used to prejudice the Court against the Defendants. Plaintiff argues that these sources are necessary in order to plead the facts required of a *Monell* claim.

In this case, Plaintiff substantially relies on the external sources in the Complaint to demonstrate that all incidents plausibly stem from the same constitutional deprivation.

Here, Plaintiff's complaint hinges on showing a pattern of misconduct of which the County and individually named Defendants had notice. While a number of allegations are conclusory and are insufficient to support a number of claims at this stage, the Court does not find that it is "clear that [the allegations] can have no possible bearing on the subject matter of the litigation." Thus, the Court **DENIES** Defendant's motion to strike with one exception. The Court will **STRIKE** paragraphs 219 and 220 as they discuss a deputy's domestic dispute which ultimately led to the County terminating his employment. These paragraphs are of the scandalous and prejudicial nature that Rule 12(f) was designed to eliminate.

### III. Conclusion

For the reasons enumerated above in this order, Defendants' motion to dismiss is:

- **GRANTED WITH PREJUDICE** as to Plaintiff's First Claim for deliberate indifference to serious medical needs against the County of San Diego brought under 42 U.S.C. § 1983

- **GRANTED WITHOUT PREJUDICE** as to the ADA claim brought under 42 U.S.C. § 12101 et seq.

- **GRANTED WITHOUT PREJUDICE** as to the Rehabilitation Act claim brought under 29 U.S.C. § 794(a).

- **GRANTED IN PART WITHOUT PREJUDICE and DENIED in part** as to Plaintiff's remaining claims brought under 42 U.S.C. § 1983 and common law negligence.

In addition, Defendant's motion to strike is **GRANTED** in part with respect to Paragraphs 219 and 220 and **DENIED** as to the remainder**.** If Plaintiff wishes to file an amended complaint, he must do so no later than within **20 days of this order.**

**IT IS SO ORDERED.**

Dated: October 24, 2019

Hon. Gonzalo P. Curiel
United States District Judge