UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>                                     Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, in his individual capacity, ALFRED JOSHUA, in his individual capacity, BARBARA LEE, in her individual capacity, and DOES 1–100<br><br>                                     Defendants. | Case No.: 3:19-CV-0378-GPC-AGS<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>**[ECF No. 18]** |

Before the Court is Defendants' motion to dismiss Plaintiff Frankie Greer's ("Plaintiff") first amended complaint. ECF No. 18. The motion has been fully briefed. ECF Nos. 22, 24.

## I. Background

### A. Factual Background

The instant litigation concerns events following the arrest and booking of Plaintiff into the San Diego Central Jail ("the Jail") on January 31, 2018. ECF No. 17 ("First Amended Complaint" or "FAC") ¶ 22. Plaintiff is a U.S. Army veteran who was treated at a VA hospital for seizures and prescribed Levetiracetam to prevent his seizures. *Id.* ¶ 21. After his arrest, Plaintiff informed the intake nurses he suffered from chronic

seizures and required medicine that was in his pants.  *Id.* ¶ 26.  He also asked the jail to assign him a lower bunk, as Plaintiff feared he could fall off a top bunk during a seizure. *Id.* ¶ 33.  The medical staff failed to provide Plaintiff with his Levetiracetam, but they did notate his need for a lower bunk in his paperwork.  *Id.* ¶¶ 27, 28.  However, the medical staff failed to place the order for the lower bunk in the Jail Information Management System ("JIMS"), and thus the jail staff assigned Plaintiff a top bunk.  *Id*. at 29.  After he was assigned a top bunk, Plaintiff told the jail staff that he feared a top bunk and reported he had previously fallen off from a bed due to a seizure.  *Id.* ¶ 33.  The deputy told Plaintiff to get on the top bunk because all other beds in that cell were already taken.  *Id.* ¶ 34.  Plaintiff alleges that the deputy did not inquire of the other inmates who were in bottom bunks whether they needed to be in the bottom for any medical or other reason. *Id.* ¶ 35.  Plaintiff additionally alleges that the deputy did not look for any available bottom bunks in other cells, and that the deputy failed to tell other jail staff that Plaintiff suffered from a seizure disorder.  *Id.* ¶¶ 36, 37.

On February 1, 2018, Plaintiff suffered a seizure while on his top bunk and fell off the bed.  *Id.* ¶ 38, 39.  His head hit the concrete floor and he was rendered unconscious. *Id.*  Cellmates attempted to alert jail staff of Plaintiff's fall through a cell intercom.  *Id.* However, because the intercom was silenced, his cellmates were unable to contact the deputies.  *Id.* ¶ 40.  The silent intercom was against jail policy, and Plaintiff alleges that Defendants had been aware of the deputies' failure to abide by this intercom policy since 2016.  *Id*. ¶ 48.  The cellmates began yelling, "man down," but the jail staff did not respond.  *Id.* ¶ 41.  Fifteen minutes after Plaintiff's fall, jail staff conducting regular checks found Plaintiff and called for medical assistance.  *Id.*  Nurse staff arrived six minutes later, and paramedics arrived approximately nine minutes after the nurses.  *Id.* ¶¶ 43, 44.  Plaintiff was rendered unconscious for several weeks, and hospital records reveal Plaintiff facial fractures, brain bleed, and respiratory failure.  *Id.* ¶¶ 49, 50.

In addition, the jail failed to immediately alert Plaintiff's next of kin about his injury due to a failure to properly document Plaintiff's next of kin.  *Id.* ¶ 53.  A nurse at

the University of California, San Diego turned to social media to find Plaintiff's family and make contact with them. *Id.* ¶ 54. For weeks, Plaintiff remained in a coma. *Id.* When he regained consciousness, he could not recognize family and had suffered significant brain injury. *Id.* ¶ 58.

Plaintiff alleges that on November 8, 2016, the San Diego Sheriff's Department contracted with the National Commission on Correctional Health Care ("NCCHC") in order to assist the jail in meeting health services compliance standards. *Id.* ¶¶ 64, 65. The NCCHC issued a report in January 2017 and found that of the thirty-eight (38) "essential standards" for accreditation, the jail failed to meet twenty-six (26) standards. *Id.* ¶ 66. The NCCHC found that the jail had inadequate healthcare policies – including the lack of any policy addressing the time frame between ordering medication and receiving it from the pharmacist, and that there could be a delay of up to 30 hours in completing of the booking of an inmate into the jail without being evaluated by health staff. *Id.* ¶¶ 72, 73. Additionally, the jail failed to meet the NCCHC standard on chronic disease services, requiring that an inmate suffering from chronic conditions (including seizure disorder) be identified and enrolled in a chronic disease program based on national clinical protocols. *Id.* ¶ 78-80. Plaintiff alleges that the NCCHC recommended that the jail adopt new policies and procedures to remedy these deficiencies, but since Defendants failed to implement these suggested changes, Plaintiff was denied the necessary medication to prevent a seizure from occurring in his sleep. *Id.* ¶ 86.

Plaintiff also alleges that Defendants were on notice regarding the risk of inmates sustaining injuries due to their falling out of the top bunk during their sleep or a seizure, *see id.* ¶¶ 97, 98, pointing to the publication of a January 2018 article which showed that the most common injury within jails involved inmates falling out of bunk beds, and that seizure disorders are 4.5 times more common in jail inmates than in non-inmates. *Id.* ¶¶ 90-91.

/ / /

## B. Procedural Background

On February 25, 2019, Plaintiff filed his original complaint alleging the following causes of action:  (1) Deliberate Indifference to Serious Medical Needs, (2) Failure to Properly Train, (3) Failure to Properly Supervise and Discipline, (4) Failure to Properly Investigate, (5)  Section 1983 liability under *Monell*, (6) Common law negligence, (7) Violations of the American Disabilities Act ("ADA"), and (8) Violations of 29 U.S.C. § 794(a) ("Rehabilitation Act").  On June 10, 2019, Defendants filed their motion to dismiss claiming that Plaintiff failed to state a claim on which relief can be granted as to the individual Defendants; that Plaintiff failed to allege sufficient facts to support any § 1983 claim, negligence, ADA or Rehabilitation Act claims; and that the County was entitled to immunity as to state law claims.  ECF No. 9-1.

On October 24, 2019, the Court denied in part and granted in part Defendants' motion to dismiss the original complaint.  ECF No. 16.  The Court granted Plaintiff leave to amend within 20 days of the order.  Plaintiff filed a first amended complaint ("FAC") on November 13, 2019.  ECF No. 17.

In the FAC, Plaintiff names as Defendants the County of San Diego ("County"), Sheriff William Gore of San Diego County ("Gore"), Medical Director for the San Diego Sheriff's Department Alfred Joshua ("Joshua"), Medical Administrator for the San Diego Sheriff's Department Barbara Lee ("Lee"), and unknown Doe defendants working for the San Diego County Sheriff's Department (collectively "Defendants") for injuries Plaintiff suffered after falling from a top bunk onto a county jail concrete floor.  The FAC re-alleges all eight causes of action contained in the original complaint.

The FAC adds new allegations regarding the January 2017 NCCHC report on the jail (FAC ¶¶  64-87); allegations regarding falls from top bunks in jails (FAC ¶¶ 88-100); allegations regarding previous deaths and injuries as a result of neglect and misconduct (FAC ¶¶ 106-114); and violations of the Americans with Disability Act ("ADA") and Rehabilitation Act (FAC ¶¶ 132-153).

With the exception of the third cause of action, the Defendants attack each of the remaining causes of action based upon various grounds. For the reasons below, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## II. Defendants' Motion to Dismiss

### A. Legal Standard for Rule 12(b)(6)

A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), not "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make a claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A party may thus move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that contradict matters properly subject to judicial notice." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). In addition, Rule 12(b)(6) does not immunize from scrutiny assertions that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

### B. Discussion

#### 1. Failure to Implement or Train on Chronic Disease Protocol

Defendants move to dismiss what is described as a new theory of relief that is contained in the first, second, fifth, sixth, seventh and eight causes of action, to wit, the

failure to implement or train on a "chronic disease pathway or protocol."  FAC ¶¶ 158, 231, 310, 334.

Plaintiff responds that the allegations prove that Defendants were aware of a substantial risk of harm arising from the failure to implement the chronic disease protocol because they were advised in January 2017 by the accrediting agency, the NCCHC, of the critical need to treat seizure disorders in a manner different than that which was in place.  FAC ¶¶ 66, 79-85.

The Court finds that these allegations relate to notice provided by the NCCHC to the County and its supervisors regarding the existence of deficiencies relating to the handling of inmates who have seizure disorders as of January 2017.  The Court has previously found that the Plaintiff has sufficiently alleged a deliberate indifference to serious medical needs and a failure to properly train County employees.  The additional allegations provide context and background regarding the alleged deliberate indifference to serious medical needs, failure to accurately document medical health information, and failure to properly train staff which undergird the § 1983 causes of action.

In view of the foregoing, the Court finds that the challenged allegations do not specify a separate cause of action but rather, support an existing cause of action that has previously survived a motion to dismiss.  Defendants' motion to dismiss or strike these allegations is DENIED.

**2.  Failure to Properly Train Under § 1983 Against Individual Defendants**

Defendants move to dismiss Plaintiff's second cause of action – failure to properly train under § 1983 against Defendants Sheriff William Gore, Barbara Lee, and Alfred Joshua ("Individual Defendants") – on the basis that Plaintiff has failed to allege sufficient facts to show a pattern of prior wrongful actions to impose liability on the Individual Defendants for failure to train as to cell checks and for placing vulnerable inmates in top bunk beds.  ECF No. 18-1 at 23-25.  Plaintiff opposes.  FAC ¶¶ 232, 234-248.

"Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations omitted). A supervisor may be liable if he is either (1) personally involved in the constitutional deprivation; or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). For supervisory officials, liability can exist "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (internal citations omitted). The supervisor's participation could include his "own culpable action or inaction in the training, supervision, or control of his subordinates, his acquiescence in the constitutional deprivations of which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (internal quotations omitted). To impose this type of supervisory liability, Plaintiff must satisfy two conditions: (1) plead detailed factual allegations that "give fair notice" to the defendant to "enable the opposing party to defend itself effectively"; and (2) plead a theory of liability through these detailed allegations that "must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. at 1216.

The Court previously found that the allegations regarding failure to train as to cell checks and placement of vulnerable inmates in top bunk beds were insufficient. ECF No. 16 at 13-14. Plaintiff has addressed these deficiencies in the FAC. On one hand, the FAC alleges in a conclusory fashion alleges that the Individual Defendants knew that the patients suffering from seizure disorders would sustain death or injuries falling from the

top bunk, yet failed to train the jail staff on the necessity to house inmates with seizure disorders on the bottom bunks. FAC ¶¶ 231, 232. Plaintiff observes, generally, that the housing inmates with seizure disorders is a "recurring situation" and that the outcome of an inmate with a seizure disorder falling from the top bunk is a "highly predictable consequence." *Id.* ¶ 233. Plaintiff points to medical journals that report the statistic that the inmate population if 4.5 times more likely to suffer from seizure disorders. *Id.* ¶ 227. However, the mere publication of an article regarding the statistics of the likelihood of seizure disorder occurrence in the inmate population is insufficient to establish that Individual Defendants had notice of the need for further training with respect to proper bunk assignments.

On the other hand, Plaintiff offers significantly more substantial allegations to support his position that Defendants Gore and Does knew that the jail staff members failed to properly conduct cell checks. For one, the FAC reports that the NCCHC was contacted by the San Diego Sheriff's Department for assistance regarding compliance with the NCCNC Standards for Health Services in Jails in November 2017. FAC ¶ 65. Among other things, the NCCHC reported that the county jails lacked a standard on chronic disease services to ensure that inmates who suffer from one of nine chronic conditions, including seizure disorders, are identified and provided with needed care. FAC ¶¶ 77-85. In addition, notice was allegedly provided through the deaths of at least six individuals between 2011 and 2016 due to the failure to maintain proper protocols in checking on the condition of inmates with serious medical or psychiatric conditions. FAC ¶¶ 108(a)-(f). Finally, Defendants was made aware that the emergency call button on the intercom system was not functioning properly after the death of an inmate in February 2016. *Id.* ¶ 109.

In view of the foregoing, Plaintiff's allegations regarding Defendants' failure to provide further training with respect to cell checks are sufficient to make out a claim "for deliberate indifference based upon the supervisor's knowledge of and acquiescence in

unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). The motion to dismiss the second cause of action is DENIED.

### 3. Failure to Investigate Against Individual Defendants

Next, Defendants move to dismiss the fourth cause of action – *i.e.*, Plaintiff's "Failure to Investigate" claims against Individual Defendants and the County of San Diego – on the basis that the FAC does not cure the deficiencies noted in the Court's prior order. ECF No. 16 at 15.

Plaintiff re-alleges his claim that Individual Defendants failed to properly investigate misconduct due to (1) their failure to investigate medical staff and (2) their failure to investigate correctional staff. Defendants move to dismiss these claims since Plaintiff has failed to allege that Defendants actually implemented an unconstitutional policy or practice or that Defendants maintained a practice of reckless indifference. ECF No. 18-1 at 20-21. Defendants also note that Plaintiff has failed to allege a causal link between any failure to investigate and an alleged constitutional violation. The Court previously dismissed this claim without prejudice on the basis that Plaintiff's allegations were insufficient to establish a failure to investigate employee misconduct since Plaintiff's allegations were conclusory and Plaintiff failed to show how Defendants' alleged failure to investigate was tied to the Plaintiff's injuries.

First, as to the failure to investigate medical staff, Plaintiff has added new allegations based upon the NCCHC's investigation that reports findings that the jail lacked a formal review process to independently investigate medical providers' misconduct; that the medical staff failed to keep track of inmate grievances; that medical practitioners were not informed of the results of investigations into inmate deaths; and that individual Defendants failed to investigate medical staff misconduct regarding preventable deaths. FAC ¶¶ 273-281. Plaintiff alleges these failures to investigate led to the death of Ruben Nunez, citing the "failure to coordinate care and communicate." *Id.* ¶ 277. Plaintiff argues that as a result of repeated failures to investigate medical staff, the

jail medical staff continued to engage in the type of unconstitutional conduct that harmed both Plaintiff and other inmates. *Id.* ¶ 281.

The Court finds that these allegations continue to be too conclusory to withstand the Defendants' motion to dismiss. There is nothing that reveals the estimated number of cases or grievances involved, what type of misconduct was involved and the nexus between these cases and the Plaintiff's case. Instead, Plaintiff makes broad references to "inmate grievances" but does not clarify how they relate to Plaintiff's injuries. Plaintiff also refers to the jail staff's failure to conduct posthumous investigations of inmates' deaths but similarly does not tie this to an alleged constitutional violation.

Next, as to a failure to investigate correctional staff, Plaintiff summarily alleges that a "systemic" culture existed in the jail wherein deputies either turned off or turned low the volume of the emergency sound call system, which resulted in a 2016 incident of a cellmate's emergency call going unheard. FAC ¶¶ 290-292. Greer also alleges that CLERB summarily dismissed 22 investigations involving people who died in the Jails due to failing to complete the investigations within 12 months. Plaintiff claims that the failure to properly fund CLERB has prevented timely investigations in order to discipline culpable jail staff which has created a culture in which the staff violates the constitutional rights of inmates. FAC ¶ 284. Again, the Court finds that these allegations are conclusory and do not identify specific cases that gave notice of deficiencies in the conducting of investigations which then caused the Plaintiff's injuries. Thus, it appearing that further amendment will not cure the deficiencies with this claim, the motion to dismiss the fourth cause of action against the Individual Defendants is GRANTED and Plaintiff's claim is dismissed with prejudice.[1]

/ / /

/ / /

---

[1] The motion to dismiss is GRANTED without leave to amend given that Plaintiff has not shown that a second amended complaint would cure the deficiencies identified here and in the original. ECF 16 at 15.

## 4. Failure to Investigate and Train by the Municipal Defendant under *Monell*

Defendants also move to dismiss Plaintiff's fifth cause of action, the § 1983 claim against the County of San Diego, alleging the failure to investigate and discipline deputies and medical staff. ECF No. 18-1 at 19-22. Plaintiff counters that he has sufficiently alleged claims regarding the pattern of failing to investigate staff misconduct, which created a "culture of lawlessness." ECF No. 22 at 19.

A municipality may be sued directly under Section 1983 only where the alleged unconstitutional conduct "reflects a 'deliberate' or 'conscious' choice by the municipality can the failure be properly thought of as an actionable city 'policy.' " *See Canton v. Harris*, 489 U.S. 378, 389-391 (1989). The *Monell* standard requires that the policy or custom must be the "moving force" behind the constitutional violation. *Id.* As to the alleged failures to investigate, the allegations fail to show a pervasive practice or a policy which was the moving force behind a constitutional violation. As such, the Court GRANTS the motion to dismiss solely as to this theory of liability.

With respect to the alleged failure to train, "the focus must be on . . . whether such inadequate training can justifiably be said to represent 'city policy.' " *Canton* at 379. The respondent must also prove "that the deficiency in training actually caused the police officers' indifference to her medical needs." *Id.* Plaintiff does not allege that the County of San Diego had an official policy, but had a "*de facto* policy" which "gives inference of a municipal custom that authorized or condoned deputy misconduct. FAC ¶¶ 300, 304. Plaintiff alleges that "there was a custom and practice" of, *inter alia*, failing to establish required chronic disease protocol for seizure disorders; failing to communicate medical needs of inmates between medical staff and deputies; and failing to check on welfare of inmates with serious medical needs. FAC ¶¶ 304-313. Plaintiff's allegations regarding this deficiency in training are therefore substantial enough to survive a motion to dismiss, and the Court accordingly DENIES the motion to dismiss as to this theory of liability. Further, the motion to dismiss is DENIED as to the other theories that were previously upheld in the prior court order. ECF No. 16 at 20-22.

**5. Common Law Negligence**

Defendants also move to dismiss the sixth cause of action for negligence for conduct beyond the failure to promptly summon medical care. ECF No. 16 at 14-18. Defendants argue that, with the exception of a delaying medical care, the County is immune from liability under California Government Code § 844.6(a)(2) for all other negligence claims. *Id.* Plaintiff argues that Defendants' immunity argument lacks merit because the negligence claim is wholly based on delaying medical care, which is expressly excluded from the Government Code immunities. ECF No. 22 at 28-29.

In its prior order, the Court denied the motion to dismiss as it related to the failure to summon medical care. ECF No.16 at 20-21. However, in its order, the Court did observe that the County may not be liable for negligence as to every event or failure to act leading up to Plaintiff's seizure and fall from his bed. *Id.* at 21. In his FAC, Plaintiff has alleged acts that Defendants assert go beyond the failure to promptly summon medical care and that are entitled to immunity under Government Code § 844.6(a)(2).

### a. County's Claim of Immunity Under Government Code § 845.6

Defendants argue that Plaintiff has improperly alleged a negligence claim against the Defendants since their actions are beyond the narrow exception permitted by California Government Code § 845.6. Under California Government Code § 845.6, a public entity or public employee is generally not "liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his [or her] custody." Cal. Gov't Code § 845.6. However, a public entity or public employee is liable for an injury proximately caused to a prisoner where: (1) "the employee is acting within the scope of his [or her] employment," (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he [or she] fails to take reasonable action to summon such medical care." *Id.*

California courts have construed the provision to create limited liability only "when: (1) the public employee knows or has reason to know [of the] need, (2) of immediate medical care, and (3) fails to take reasonable action to summon such medical

12

care." *Scalia v. County of Kern*, 308 F.Supp.3d 1064 (E.D. Cal. 2018) (citing *Castaneda v. Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1070 (2013)) (internal quotation marks omitted). This section is "very narrowly written to authorize a cause of action against a public entity for its employees' failure to summon immediate medical care only, not for certain employee's malpractice in providing that care." *Id.*

Defendants argue that Plaintiff's allegations "leading up to Plaintiff's fall from his bunk" are beyond the scope of claims authorized by section 845.6 since (1) immunity extends to allegations of medical negligence by employees; and (2) no public employee would have reason to know that Plaintiff suffered from a serious and obvious medical condition prior to his fall. ECF No. 18-1 at 15. Defendants also argue that any allegation for failure to train and set forth policies regarding inmate care must fail since there is no statutory basis for such a claim.

Plaintiff argues that the Defendants' immunity argument lacks merit because his entire negligence claim is based on delaying medical care, which is expressly excluded from the Government Code immunities. ECF No. 22 at 28-29. The parties do not appear to dispute that his claim regarding a delay in summoning staff for medical care following his fall is not subject to any immunity. They dispute what qualifies as delaying medical care. In the FAC, Plaintiff alleges that immediate medical care was needed when he notified staff at the time of his booking that he had a seizure disorder and required immediate medical care vis a vis his anti-seizure medication and bottom bunk designation. ECF No. 22 at 28. Once an inmate is receiving medical care, Government Code § 845.6 does not create a duty to provide adequate or appropriate care. *Watson v. California,* 21 Cal. App. 4th 836, 841–843 (1993). Under California law, the failure of a practitioner to prescribe or provide necessary medication or treatment to one he or she has been summoned to assist constitutes medical malpractice and clearly, as a matter of the plain meaning of the statutory language, cannot be characterized as a failure to summon medical care. *Nelson v. State of California*, 139 Cal. App. 3d 72, 81 (Ct. App. 1982). The Court finds that the failure to provide Plaintiff seizure medication and bottom

13

bunk placement do not support his claim that he was denied immediate medical care. The motion to dismiss is GRANTED as to these two theories and otherwise DENIED as to the failure to provide prompt medical care after Plaintiff's fall.

Prison officials may also be liable for negligent supervision and training as to the prompt summoning of medical care. *See Bock v. Cnty. of Sutter*, 2012 WL 3778953, at *18–19 (E.D. Cal. Aug. 31, 2012) (denying motion to dismiss claims for negligent supervision and wrongful death that were based upon jail personnel's failure to furnish medical care); *Resendiz v. Cty. of Monterey*, 2015 WL 3988495, at *8 (N.D. Cal. June 30, 2015) ("[T]he Court concludes that Plaintiffs may state claims for negligent supervision and wrongful death pursuant to Cal. Gov't Code § 845.6.").

Here, taking Plaintiff's allegations as true, the FAC alleges sufficient facts to infer that the County employees failed to take reasonable action to summon the necessary medical care for Plaintiff. *See Estate of Victorianne v. Cty. of San Diego*, 2016 WL 411292, at *14 (S.D. Cal. Feb. 3, 2016) (the exception to immunity applied because employees knew or had reason to know that plaintiff was in need of immediate medical care). To the extent that there was such a failure to provide immediate attention, the County will be liable if it is shown that the failure to respond promptly was due to the County's negligent supervision and training.

### b. Liability of Individual Defendants

The Court previously dismissed without prejudice the negligence claim against Individual Defendants since Plaintiff failed to respond to the Defendants' argument that the only identified duty of care was based upon the ADA and Rehabilitation Act, which only place a duty on municipalities. ECF No. 16 at 19. Defendants now move to dismiss this amended claim on the basis that Plaintiff's allegations were made out against the jail staff and not against the Individual Defendants, and Plaintiff cannot hold Individual Defendants liable solely based on their supervisory roles. Defendants note that Plaintiff must allege a "special relationship" in order to bring claims based on negligent supervision of training of employees.

Unless there is a duty between the defendant and plaintiff, or, in the alternative, between the defendant and the individuals who injured the plaintiff, a claim for negligent misconduct against a third party will fail. *See e.g., Willis v. Cty. of Sacramento*, 2014 WL 1027070, at *6 (E.D. Cal. Mar. 14, 2014) ("Absent such a special relationship, there can be no individual liability to third parties for negligent hiring, retention or supervision of a fellow employee, and hence no vicarious liability."). Here, Plaintiff broadly states that the "negligence claim is based on [the Individual Defendants'] conduct in failing to set forth policies and failing to train their staff including the failure to train their subordinates on the need to summon immediate medical care." ECF No. 22 at 29. However, Plaintiff's cited cases are inapposite. In *Estate of Claypole v. Cty. of San Mateo*, No. 14-CV-02730-BLF, 2014 WL 5100696, at *8 (N.D. Cal. Oct. 9, 2014), the court found that a negligence claim against the *public entity* – not, individual defendants – was permitted. In *Bock v. Cty. of Sutter*, 2012 WL 3778953, at *16 (E.D. Cal. Aug. 31, 2012), the plaintiffs alleged the Defendant County of Sutter, not an individual defendant, was negligent in hiring, supervising, training, and retaining employees. And finally, in *Estate of Victorianne v. Cty. of San Diego*, 2016 WL 411292, at *19 (S.D. Cal. Feb. 3, 2016), the court permitted plaintiffs to bring a negligence and wrongful death claim under California Code of Civil Procedure § 377.60, but specifically denied negligence claims for negligent hiring, training, and supervision – the negligence claim that is brought here. *Id.* at *13.

In sum, Plaintiff has failed to substantiate negligence claims against Individual Defendants and the motion to dismiss as to these claims is GRANTED WITH PREJUDICE.

### 6. Merits of the ADA and Rehabilitation Act Claims

Finally, Defendants move to dismiss the seventh and eighth causes of action under the ADA and Rehabilitation based on the argument that Plaintiff's claims are premised on inadequate medical care, rather than the denial of benefits or services by reason of his disability with discriminatory animus. ECF 18-1 at 11-13.

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a prima facie claim, the Ninth Circuit has found:

> [P]laintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities or was otherwise discriminated against by the public entity's services; (4) such exclusion, denial of benefits, or discrimination was by reason of disability.

*Simmons v. Navajo City, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010). There is no significant difference in analysis of the rights and obligations afforded under the ADA and the Rehabilitation Act. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999).

As to the first factor, Defendants did not challenge, in their moving papers, Plaintiff's status as a disabled person under the ADA and Rehabilitation Act. However, in their reply, Defendants resurrect an argument that was included in the original motion to dismiss. Given that this argument was only raised in a reply, the Court would normally disregard the argument. However, in his FAC, Greer has alleged that he is a disabled person whose major life activity is substantially limited due to his seizure disorder and that he has previously fallen off a bed while suffering a seizure. FAC ¶ 345. At this stage, the Court finds that Plaintiff is a qualified individual based upon his claimed disability.

Next, Defendants allege that Mr. Greer has failed to plead facts to satisfy the third element of the ADA – that Plaintiff was either excluded from participation in, or denied the benefits of, the Central Jail's services, programs, or activities, or otherwise discriminated against by the Central Jail. Without such allegations of discrimination, Defendants argue Plaintiff's claim fails. The Court finds that Plaintiff has plausibly

alleged that he was denied benefits afforded inmates, a bed which would permit safe, uninterrupted and restful sleep. *Cf. Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 290 (1st Cir. 2006) (inmate presented evidence establishing factual disputes on whether defendants denied him access to lower tier and bottom bunk placement, *in violation of Title II*).

As to the fourth factor, Defendants assert Plaintiff's complaint fails to adequately allege that Plaintiff was denied the benefit of government services "by reason of his disability." ECF No. 18-1 at 11-12. Further, Defendants argue that Plaintiff's claims are premised on inadequate medical care. In order to satisfy this factor, a plaintiff must show that he was denied the opportunity to participate in or benefit from the State Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants, *as a result of his disability*. See 42 U.S.C. § 12132 (emphasis added). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). To demonstrate that individuals were deprived of an opportunity or benefit or discriminated against "by reason of their disabilities," Plaintiffs must demonstrate that "Defendants failed to undertake some feasible measure to improve accessibility." *United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 626 (S.D.N.Y. 2012), *aff'd sub nom. Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189 (2nd Cir. 2014)

Greer claims he was denied reasonable accommodations and seeks relief under the federal regulations implementing Title II of the ADA, which require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Because the regulation requires modifications that are "necessary to avoid discrimination on the basis

of disability," liability does not depend on evidence of purposeful discrimination. *Patterson v. Kerr Cty.*, No. SA-05-CA-0626-RF, 2007 WL 2086671, at *7 (W.D. Tex. July 18, 2007). Plaintiff's ADA and Rehabilitation Act claims are based on a jail staff's failure to make reasonable accommodations. Consequently, Plaintiff need not allege either disparate treatment or disparate impact in order to state a reasonable accommodation claim. *See, e.g., Henrietta D. v. Bloomberg*, 331 F.3d 261, 276–77 (2d Cir.2003) ("[A] claim of discrimination based on a failure reasonably to accommodate is distinct from a claim of discrimination based on disparate impact.

Here, Plaintiff alleges that he was denied a reasonable accommodation when the County (1) failed to supply safe housing in the form of a bottom bunk, (2) failed to provide him seizure medication, and (3) failed to conduct a chronic disease protocol. The Court will address these claims in turn.

## Failure to Provide Bottom Bunk Bed

Greer specifically alleges that he requested a reasonable accommodation in the form of a bottom bunk bed. FAC ¶ 353. Under the ADA, the jail staff was placed on notice of the need for a reasonable accommodation. *See Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d at 289 (failure to accommodate inmate who requested bottom bunk was sufficient to provide notice of medical condition and need for accommodation). As to the bunk bed, Greer alleges that the jail staff took no steps to determine if a bottom bunk bed could be made available. FAC ¶ 353. In this way, it is alleged the jail failed to provide a reasonable accommodation that did not impose an undue hardship on the jail and was required due to his disability. 45 C.F.R. § 84.12(a) ("A reasonable accommodation is one that does not 'impose an undue hardship on the operation of [a] program or activity.' ")

Defendants also argue that Plaintiff has failed to allege intentional discrimination. To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir.1998). The Ninth Circuit has held that the

3:19-CV-0378-GPC-AGS

deliberate indifference standard applies to the requisite showing of intentional discrimination. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001). The Court finds that Plaintiff has adequately alleged deliberate indifference to support an ADA claim based upon Plaintiff's request for a bottom bunk bed that was refused without any attempt to accommodate his request for an accommodation. *See Duvall*, 260 F.3d at 1138–39; *see also Brown v. Woodford*, 2007 WL 735768, at *2 (N.D.Cal.2007) (inmate sufficiently alleged deliberate indifference under the ADA when prison officials refused to provide orthopedic shoes for his club feet).

In view of the foregoing, the Court finds that, as to his request for bottom bunk bed, Plaintiff has presented a plausible claim under the ADA and Rehabilitation Act and Defendant's motion to dismiss is DENIED as to this claim.

<u>Failure to Provide Seizure Medication</u>

As to the failure to provide him seizure medication, Plaintiff alleges that he notified the intake nurse that he suffered from a seizure disorder and yet was denied medical services. FAC ¶ 353. Among other things, he alleges that the jail staff failed to communicate or document his condition. Medical care is one of the "services, programs, or activities" covered by the ADA. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) (stating that the "deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as ... medical care ... constituted 'exclu[sion] from participation in or ... den[ial of] the benefits of' the prison's 'services, programs, or activities' " (quoting 42 U.S.C. § 12132)). However, negligent medical claims are distinguished from ADA claims. *See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir.2005) ("[P]urely medical decisions ... do not ordinarily fall within the scope of the ADA or the Rehabilitation Act."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) ("The ADA does not create a remedy for medical malpractice."). These allegations relate to the denial of medical care and are based upon negligence and are not properly brought under the ADA as a failure to provide reasonable

accommodation.  Accordingly, the motion to dismiss as to this alternative theory is GRANTED.

<u>Failure to Employ Safeguards, Conduct Protocols and Self-Evaluate</u>

In addition, Plaintiff asserts that he was entitled to accommodations that "include training on specialized training of jail staff, heightened level of medical care, and diligent surveillance." FAC ¶ 350.  Relatedly, Plaintiff claims that he was denied a chronic disease control protocol. FAC ¶ 354.  Plaintiff did not make a request of the jail staff for these safeguards or protocol.  The ADA's reasonable accommodation requirement usually does not apply unless "triggered by a request" from the employee.  *Reed v. LePage Bakeries, Inc*., 244 F.3d 254, 261 (1st Cir. 2001); *see also* Henry Perrett, Jr., 1 Americans With Disabilities Act Handbook, § 4.17, at 121 (3d ed.1997) (collecting cases).  The request must be "sufficiently direct and specific," giving notice that she needs a "special accommodation." *Wynne v. Tufts Univ*., 976 F.2d 791, 795 (1st Cir.1992) (*quoting Nathanson v. Medical Coll. of Pa*., 926 F.2d 1368, 1381 (3d Cir.1991)); *Walker v. City of New York*, 367 F. Supp. 3d 39, 55 (S.D.N.Y. 2019) ("to be denied a reasonable accommodation, an individual must first request that accommodation.").

This claim is deficient not only because Plaintiff failed to request such safeguards but, further, the actions complained of reveal an individualized breakdown in responding to Plaintiff's medical condition rather than the failure to provide a reasonable accommodation. As recognized above, however, the ADA cannot be used to bring a claim for medical negligence. S*ee Bryan v. MadiGal*, 84 F.3 246, 249 (7th Cir. 1996).

Finally, Plaintiff alleges a claim based upon the failure to self-evaluate under regulations promulgated by the Department of Justice to implement Part A of Title II of the ADA.  FAC ¶¶ 357-359.  Plaintiff did not make a request for self-evaluation. Moreover, Plaintiff has not pointed to any authority which creates a cause of action based upon the existence of an administrative regulation and the Court has not found any case that supports this position.

3:19-CV-0378-GPC-AGS

In view of the foregoing, the Court **GRANTS** this portion of Defendant's motion to dismiss Plaintiff's ADA and RA claims in the FAC.

## III.  Conclusion

For the reasons enumerated above in this order, Defendants' motion to dismiss is:

- **DENIED** with respect to the second cause of action for brought under 42 U.S.C. § 1983 (Failure to Properly Train Against Individual Defendants);

- **GRANTED** with respect to the fourth cause of action brought under 42 U.S.C. § 1983 for failure to investigate against the Individual Defendants;

- **DENIED IN PART and GRANTED IN PART** as to the fifth cause of action brought under 42 U.S.C. § 1983 against the County of San Diego as to the failure to investigate theory ONLY;

- **DENIED IN PART and GRANTED IN PART** with respect to the sixth cause of action for common law negligence against the County of San Diego and **GRANTED WITH PREJUDICE** with respect to the Individual Defendants;

- **DENIED IN PART and GRANTED IN PART WITH PREJUDICE** with respect to the seventh cause of action for an ADA claim brought under 42 U.S.C. § 12101 et seq.;

- **DENIED IN PART and GRANTED IN PART WITH PREJUDICE** with respect to the seventh cause of action for a Rehabilitation Act claim brought under 29 U.S.C. § 794(a).


**IT IS SO ORDERED.**

Dated:  April 14, 2020

Hon. Gonzalo P. Curiel
United States District Judge