UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>         Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE, in his individual capacity, ALFRED JOSHUA, in his individual capacity, BARBARA LEE, in her individual capacity, and DOES 1–100<br><br>         Defendants. | Case No.:  3:19-CV-0378-GPC-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>[ECF No. 48] |

Before the Court is Plaintiff's Motion for Leave to File a Second Amended Complaint.  ECF No. 48.  The motion has been fully briefed.  ECF Nos. 53, 56.  The Court finds this motion suitable for disposition without oral argument pursuant to Civ. L.R. 7.1(d)(1) and accordingly VACATES the hearing on this matter currently set for February 19, 2021.  For the reasons set forth below, the Court GRANTS in part and DENIES in part the Motion.

### I. Background

#### A. Factual Background

The instant litigation concerns events following the arrest and booking of Plaintiff into the San Diego Central Jail ("the jail") on January 31, 2018.  ECF No. 17 ("First

Amended Complaint" or "FAC") ¶ 22.  Plaintiff is a U.S. Army veteran who was treated at a VA hospital for seizures and prescribed Levetiracetam to prevent his seizures.  *Id.* ¶ 21.  After his arrest, Plaintiff informed the intake nurses he suffered from chronic seizures and that he had his required medicine in his pants pocket.  *Id.* ¶ 26.  He also asked the jail to assign him a lower bunk, as Plaintiff feared he could fall off a top bunk during a seizure.  *Id.* ¶ 33.  The medical staff failed to provide Plaintiff with his medication, but they did notate his need for a lower bunk in his paperwork.  *Id.* ¶¶ 27, 28.  However, the medical staff failed to place the order for the lower bunk in the Jail Information Management System ("JIMS"), and thus the jail staff assigned Plaintiff a top bunk.  *Id*. at 29.  After he was assigned a top bunk, Plaintiff told the jail staff that he feared a top bunk and reported he had previously fallen off from a bed due to a seizure.  *Id.* ¶ 33.  The deputy told Plaintiff to get on the top bunk because all other beds in that cell were already taken.  *Id.* ¶ 34.  Plaintiff alleges that the deputy did not inquire of the other inmates who were in bottom bunks whether they needed to be in the bottom for any medical or other reason.  *Id.* ¶ 35.  Plaintiff additionally alleges that the deputy did not look for any available bottom bunks in other cells, and that the deputy failed to tell other jail staff that Plaintiff suffered from a seizure disorder.  *Id.* ¶¶ 36, 37.

On February 1, 2018, Plaintiff suffered a seizure while on his top bunk and fell off the bed.  *Id.* ¶ 38, 39.  His head hit the concrete floor and he was rendered unconscious.  *Id.*  Cellmates attempted to alert jail staff of Plaintiff's fall through a cell intercom.  *Id.*  However, because the intercom was silenced, his cellmates were unable to contact the deputies.  *Id.* ¶ 40.  The silent intercom was against jail policy, and Plaintiff alleges that Defendants had been aware of the deputies' failure to abide by this intercom policy since 2016.  *Id*. ¶ 48.  The cellmates began yelling, "man down," but the jail staff did not respond.  *Id.* ¶ 41.  Fifteen minutes after Plaintiff's fall, jail staff conducting regular checks found Plaintiff and called for medical assistance.  *Id.*  Nurse staff arrived six minutes later, and paramedics arrived approximately nine minutes after the nurses.  *Id.* ¶¶

43, 44. Plaintiff was rendered unconscious for several weeks, and hospital records reveal Plaintiff facial fractures, brain bleed, and respiratory failure. *Id.* ¶¶ 49, 50.

In addition, the jail failed to immediately alert Plaintiff's next of kin about his injury due to a failure to properly document Plaintiff's next of kin. *Id.* ¶ 53. A nurse at the University of California, San Diego turned to social media to find Plaintiff's family and make contact with them. *Id.* ¶ 54. For weeks, Plaintiff remained in a coma. *Id.* When he regained consciousness, he could not recognize family and had suffered significant brain injury. *Id.* ¶ 58.

### B. Procedural Background

On February 25, 2019, Plaintiff filed his original complaint alleging the following causes of action: (1) Deliberate Indifference to Serious Medical Needs, (2) Failure to Properly Train, (3) Failure to Properly Supervise and Discipline, (4) Failure to Properly Investigate, (5) Section 1983 liability under *Monell*, (6) Common law negligence, (7) Violations of the American Disabilities Act ("ADA"), and (8) Violations of 29 U.S.C. § 794(a) ("Rehabilitation Act"). On June 10, 2019, Defendants filed their motion to dismiss claiming that Plaintiff failed to state a claim on which relief can be granted as to the individual Defendants; that Plaintiff failed to allege sufficient facts to support any § 1983 claim, negligence, ADA or Rehabilitation Act claims; and that the County was entitled to immunity as to state law claims. ECF No. 9-1.

On October 24, 2019, the Court denied in part and granted in part Defendants' motion to dismiss the original complaint. ECF No. 16. The Court granted Plaintiff leave to amend within 20 days of the order. Plaintiff filed a first amended complaint ("FAC") on November 13, 2019. ECF No. 17. On April 14, 2020, the Court denied in part and granted in part Defendants' motion to dismiss the FAC. ECF No. 28. Plaintiff now seeks leave to file a Second Amended Complaint ("SAC").

In the proposed SAC, Plaintiff seeks to add as defendants Macy Germono, a registered nurse at SDCJ; Francisco Bravo, a classification deputy at SDCJ; Christopher Simms, Michael Brown, and M. Campos (#3780), law enforcement deputies at SDCJ;

Coast Correctional Medical Group ("CCMG"), a private medical services contractor to the County; and Dr. Mauricio Martinez, a physician employed by CCMG. ECF No. 48-2 (Proposed SAC, or "PSAC") ¶¶ 12–17. Plaintiff also seeks to add two new causes of action: A claim under Section 1983 for denial of access to the courts predicated on Defendants' alleged failure to preserve video evidence, and a claim under the Bane Act, Cal. Civ. Code § 52.1. *Id.* ¶¶ 294–300, 335–44. Further, Plaintiff seeks to supplement their *Monell* claim against the County of San Diego ("County") with additional facts related to the County's ratification of its employees' conduct. *Id.* ¶¶ 284–86. The proposed SAC also removes causes of action and theories of liability the Court previously ordered dismissed.

Defendants oppose the Motion in its entirety. For the reasons below, the Motion is GRANTED in part and DENIED in part.

## II. Legal Standard

Under Federal Rule of Civil Procedure ("Rule") 15(a), leave to amend a complaint after a responsive pleading has been filed "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court, *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985) but "[r]equests for leave to amend should be granted with 'extreme liberality.'" *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)). Courts look to several factors when considering whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc." *Sonoma Cnty. Ass'n of Retired Emples. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman*, 371 U.S. at 182 (1962)).

"Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). "A determination of futility contemplates whether . . . the amendment could present a viable claim on the merits for which relief could be granted." *Murray v. Schriro*, 745 F.3d 984, 1015 (9th Cir. 2014) (citing *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 893 (9th Cir. 2010)). In determining whether an amendment would present a viable claim against a party, a court should apply the same standards that control a motion to dismiss under Rule 12(b)(6), which requires that a complaint be dismissed if it fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013) (applying *Iqbal* in context of motion for leave to amend). A court must accept all factual allegations in the complaint as true, but should disregard all legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### III. Discussion

Defendants oppose the Motion in its entirety on the grounds that amendment would be futile. ECF No. 53. Defendants principally argue (1) that the statute of limitations bars claims against the proposed new defendants; (2) that alternatively, the proposed SAC does not state a claim against the proposed new defendants; (3) that Plaintiff's proposed denial of access to courts claim is legally insufficient; and (4) that Plaintiff's proposed Bane Act claim is legally insufficient.

**1. Statute of Limitations**

Defendants contend that Plaintiff's claims against newly added defendants are untimely because the two-year statute of limitations has now expired, and the proposed amended complaint cannot relate back to the original pleading under Rule 15(c)(1)(C) or California Code of Civil Procedure § 474 because "Plaintiff . . . did nothing to identify the names of individual defendants," like file a Public Records Request, and thus was not genuinely ignorant of their identity. ECF No. 53 at 7–8. Plaintiff asserts that he only

became aware of the identities of newly added defendants during discovery. ECF No. 56 at 7. Plaintiff further argues that California's relation back law imposes no requirement that a plaintiff search for information he or she did not have at the time of the original complaint. *Id.* at 7–8.

Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts "'apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.'" *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (quoting *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004)). Under California law, a two-year statute of limitations applies to personal injury claims, including Section 1983 actions. Cal. Code Civ. Proc. § 335.1; *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) ("The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the personal injury statute of limitations of the state in which the cause of action arose.").

Applying the two-year statute of limitations applicable to Plaintiff's Section 1983 and personal injury claims against the newly added defendants, Plaintiff's claims arising from events occurring in early 2018 would ordinarily be untimely, now over three years later. However, an amendment may relate back to the time of the original pleading in certain circumstances. Under Rule 15(c)(1)(A), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1). Whether an amendment relates back in an action under 42 U.S.C. § 1983 requires a court to "consider both federal and state law and employ whichever affords the more permissive relation back standard." *Klamut v. Cal. Highway Patrol*, No. 15-CV-02132-MEJ, 2015 WL 9024479, at *4 (N.D. Cal. Dec. 16, 2015) (citing *Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014)).

California courts have held that California Code of Civil Procedure Section 473(a)(1), which governs amendments to pleadings, "does not authorize the addition of a party for the first time whom the plaintiff failed to name in the first instance." *Kerr-McGee Chem. Corp. v. Superior Ct.*, 160 Cal. App. 3d 594, 598 (1984). However, "where an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 124 Cal. App. 4th 1497, 1503 (2004) (citations omitted). Section 474 of the California Code of Civil Procedure, which pertains to fictitiously named defendants, thus permits a plaintiff to substitute a new defendant for a Doe defendant named in the original complaint. *Woo v. Superior Court*, 75 Cal. App. 4th 169, 176 (1999). But in order to come under that exception, the plaintiff must have been "genuinely ignorant" of the new defendant's identity at the time the plaintiff filed the original complaint. *Id.* at 177.

Here, Defendants primarily argue that Plaintiff was not "genuinely ignorant" of the identities of the newly named defendants because Plaintiff could have sought access to records including their names prior to filing suit. But "the plaintiff is 'ignorant' within the meaning of the statute if [plaintiff] lacks knowledge of that person's connection with the case or with [plaintiff's] injuries. The fact that the plaintiff had the means to obtain knowledge is irrelevant." *Fuller v. Tucker*, 84 Cal. App. 4th 1163, 1170 (2000) (internal citation omitted). Therefore, even if the Court accepts Defendants' dubious proposition that Plaintiff should have made a Public Records Request to attempt to ascertain the identity of those involved and that such a request would actually have revealed the names of all defendants Plaintiff now seeks to add,[1] Plaintiff's failure to do so does not affect the relation back doctrine under California law. Defendants do not show that Plaintiff in

---

[1] Plaintiff's counsel notes that the names of several of the newly added defendants do not appear in Plaintiff's records. ECF No. 56-1 ¶ 12.

fact did know the identities of the newly added defendants at the time of the original complaint, and therefore Plaintiff's claims relate back under California law.

Thus, the Court finds that amendment would not be futile because of the statute of limitations.

**2. Causes of Action Against Newly Named Defendants**

Defendants also contend that the amendments in the proposed SAC would be futile because they do not state a claim against newly added defendants, in particular, for a violation of the Fourteenth Amendment or for negligence. The Court considers each cause of action in turn.

A. <u>First Cause of Action: Violation of Fourteenth Amendment</u>

To his cause of action under Section 1983 for violation of the Fourteenth Amendment, Plaintiff seeks to add claims against Nurse Germono, Dr. Martinez, Deputy Bravo, Deputy Simms, Deputy Brown, Deputy Campos, and CCMG. Defendants argue that Plaintiff's proposed amendments would be futile because Plaintiff does not allege the newly added defendants were personally involved in the provision or denial of medical care to plaintiff or that they were subjectively deliberately indifferent to Plaintiff's medical needs.

Conditions of confinement claims brought by pretrial detainees arise under the Due Process clause of the Fourteenth Amendment, rather than the Eighth Amendment's cruel and unusual punishment clause, which is applicable only to convicted prisoners. *See Sandoval v. Cty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021). The Ninth Circuit has held that an objective deliberate indifference standard applies to Fourteenth Amendment claims arising from the denial of adequate medical care. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citation omitted). "The elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant

did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125. As to the third factor, "the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (citation omitted). Unlike the deliberate indifference standard under the Eight Amendment, the defendant need not "*subjectively* have a sufficiently culpable state of mind." *Id.* at 1125 n.4 (citation omitted) (emphasis in original); *see also Sandoval*, 985 F.3d at 667–68 (explaining difference between Eight Amendment and Fourteenth Amendment standards).

Given that well-established Ninth Circuit law obviates the need for Plaintiff to plead the defendants' actual mental state, most of Defendants' objections are meritless.[2] In the proposed SAC, Plaintiff plausibly alleges that newly added defendants were personally involved in causing Plaintiff's unconstitutional conditions of confinement, and that the newly added defendants' actions were objectively unreasonable under the circumstances, at least with respect to most defendants. Plaintiff alleges that Nurse Germono was aware Plaintiff had a seizure disorder and did not follow the Sheriff's Department's Standardized Nursing Protocol ("SNP") for seizure disorders and policy on disabled inmates, which required her to contact the "on-call" physician to order his medication, enter a seizure disorder alert and lower bunk assignment into the computer system, and notify housing deputies. PSAC ¶¶ 34, 39, 172–77. A jury could conclude that a reasonable nurse at an institution with a nursing protocol related to seizure disorders, who was aware that a pretrial detainee suffered from a seizure disorder for which he took medication, would have known that he would be at "substantial risk of

---

[2] The Court shares Plaintiff's concern that Defendants failed to cite controlling legal authority by making no reference to the objective deliberate indifference standard established by the Ninth Circuit in *Gordon*, but notes that *Sandoval* was published several days after Defendants filed their opposition.

suffering serious harm" if he did not receive his medication and was not ensured a lower bunk assignment. *Cf. Sandoval*, 985 F.3d 657. Plaintiff has also alleged in detail the reasonable measures Nurse Germono could have taken to abate that risk, including notifying anyone of Plaintiff's need for a lower bunk or medication.

Plaintiff similarly has adequately alleged Dr. Martinez was aware Plaintiff had a seizure disorder, knew or should have known that he had missed two doses of his medication, and failed to order that Plaintiff be given his medication immediately. PSAC ¶ 179. Plaintiff's allegations suggest that a reasonable physician would have known the danger in delaying or missing doses of the seizure medication. *Id.* ¶ 43. These allegations plausibly indicate Dr. Martinez's actions were "medically unacceptable under the circumstances." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

Likewise, Plaintiff also alleges that Deputy Bravo knew or should have known that Plaintiff suffered from a seizure disorder because Plaintiff informed all jail staff of this information and Deputy Bravo interviewed him before making the housing assignment. PSAC ¶ 178. Plaintiff also alleges that Deputy Simms and/or Deputy Brown ordered Plaintiff to get on the top bunk despite knowing he had a seizure disorder and took no action to seek a lower bunk placement for Plaintiff. Id. ¶ 180, 181. Plaintiff plausibly alleges that a reasonable official at the jail would understand the high degree of risk involved in requiring a detainee with a seizure disorder to sleep on the top bunk, even if Nurse Germono did not input the lower bunk assignment in the system, due to Sheriff's Department policy that recognizes lower bunks are necessary for the safety of some disabled inmates. *Id.* ¶¶ 39, 46, 54.

Although the allegations against Deputy Campo relate to actions or omissions occurring after he suffered a seizure, Plaintiff also plausibly alleges that Deputy Campo exhibited deliberate indifference to his serious medical need. Plaintiff alleges Deputy Campo either intentionally muted or reduced the volume of the emergency intercom device or failed to ensure the device was working at the beginning of his shift, despite policy requiring deputies manning the control tower to immediately respond to

emergency calls, a "practice of lowering the volume of the call buttons or of turning the sound off completely," and past instances in which the failure of such devices during previous medical emergencies had led to serious consequences. *Id.* ¶¶ 59–62, 183–88, 198. Although Deputy Campos would not have known Plaintiff was suffering from a medical emergency, his allegedly willful ignorance cannot shield him from a claim under *Gordon*. A reasonable official responsible for monitoring incoming emergency calls to the control tower would likely recognize there was a significant risk that jail staff would not able to timely respond to medical emergency if the emergency intercom was turned off or not functioning. Plaintiff also alleges that the delay in response after he fell from the top bunk caused his condition to worsen as he stopped breathing and continued to bleed out. *Id.* ¶ 191. These allegations plausibly state a Fourteenth Amendment claim under the *Gordon* framework.

Accordingly, the Court GRANTS Plaintiff leave to amend his Fourteenth Amendment claim for denial of medical care to add as defendants Nurse Germono, Dr. Martinez, Deputy Bravo, Deputy Simms, Deputy Brown, and Deputy Campo.

### B. Sixth Cause of Action: Negligence

Plaintiff seeks to add a negligence claim against Nurse Germono, Dr. Martinez, and Deputy Campos, as well as a claim under respondeat superior against the County and CCMG. PSAC ¶¶ 305–08, 310. Defendant argues that Plaintiff attempts to add claims previously dismissed and that Plaintiff does not allege facts to support a claim of negligence against Deputy Campos. Defendant also contends that the respondeat superior theory of liability is conclusory and therefore legally insufficient.

As this Court previously noted in its order on Defendants' motion to dismiss the FAC, ECF No. 28, California law authorizes a negligence claim against a public employee for their "failure to summon immediate medical care only, not for certain employee's malpractice in providing that care." *Scalia v. County of Kern*, 308 F.Supp.3d 1064, 1085 (E.D. Cal. 2018) (citation omitted). The Court determined that the failure to provide Plaintiff with his seizure medication and a lower bunk placement fell within the

1  immunity conferred by California Government Code § 845.6.  ECF No. 28. at 13–14.
2  Accordingly, the Court finds that amendment to add the proposed negligence claim
3  against Nurse Germono arising from her failure to ensure Plaintiff received his
4  medication and a lower bunk placement would be futile.

5    Against Dr. Martinez, Plaintiff likewise alleges conduct involving the provision of
6  medical care that could be considered to fall within the immunity conferred by Section
7  845.6.  However, Plaintiff alleges that Dr. Martinez's direct employer was CCMG, not
8  the County.  PSAC ¶ 23.  Under California law, a public employee is an employee of a
9  public entity, and "does not include an independent contractor."  Cal. Gov. Code § 810.2.
10  Governmental immunity would therefore not bar a negligence claim against Dr.
11  Martinez.  Defendants therefore have not shown that amendment in this respect would be
12  futile.

13    Regarding Deputy Campos, the Court finds Plaintiff has adequately alleged a
14  negligence claim for his failure to respond to Plaintiff's immediate medical need in the
15  aftermath of Plaintiff's seizure.  As this Court previously explained, pretrial detainees are
16  almost entirely dependent on jail staff for their basic needs, and jail staff therefore
17  plausibly owe a duty of care to those detained.   ECF No. 16 at 19; *see also Lawson v.*
18  *Superior Court*, 180 Cal. App. 4th 1372, 1389 (2010).  For jail staff tasked with
19  responding to emergency calls, complying with that duty of care logically entails taking
20  reasonable steps to ensure that such emergency calls can be heard.  Plaintiff therefore
21  plausibly alleges that Deputy Campo failed to act with reasonable care in either
22  purposefully silencing the emergency intercom device, or in neglecting to check if the
23  intercom was working, which delayed the arrival of help and necessary medical care.  In
24  its previous order, the Court also noted that the failure to respond to a touchscreen alert
25  plausibly suggests that jail staff had "reason to know" that medical attention was
26  required, such that governmental immunity would not apply.  ECF No. 16 at 21.  Thus,
27  the Court finds that amendment to add a negligence claim against Deputy Campos would
28  not be futile.

Defendants also object that the newly added respondeat superior theory, stated against the County and CCMG, is conclusory.  As to CCMG, no more is needed to state a claim against an employer under such a theory than an allegation that its employee committed a tort within the scope of his or her employment.  *Sunderland v. Lockheed Martin Aeronautical Sys. Support Co.*, 130 Cal. App. 4th 1, 8 (2005).  Plaintiff here has alleged that Dr. Martinez's negligent conduct occurred while he was working as the on-call doctor at the jail pursuant to the County's contract with his employer, CCMG.  With respect to the County, California Government Code § 815.2 provides that public entities can be liable under a respondeat superior theory unless the employee is immune from liability.  Cal. Gov. Code § 815.2; *Martin v. Cty. of San Diego*, 650 F. Supp. 2d 1094, 1109 (S.D. Cal. 2009), *on reconsideration in part*, No. 03CV1788-IEG(WMC), 2009 WL 10709150 (S.D. Cal. Oct. 23, 2009).  The Court notes that the Proposed SAC is somewhat unclear in that it does not specify which employee's conduct Plaintiff alleges the County is vicariously liable for.  PSAC ¶ 310.  However, because Plaintiff adequately states a claim for negligence against County employees arising from their failure to summon immediate medical care, the Court finds that it would not be futile for Plaintiff to add this theory of liability against the County.

The Court therefore DENIES Plaintiff leave to amend to add a negligence claim against Nurse Germono but otherwise GRANTS Plaintiff's motion with respect to the negligence cause of action.

**3. Fifth Cause of Action: Denial of Access to Courts**

Plaintiff seeks to add an entirely new claim against the County; supervisory defendants Gore, Lee, Joshua; Does; and newly added defendants Nurse Germono, Deputy Simms, Deputy Brown, and Deputy Campos arising from the County's alleged failure to preserve surveillance video evidence that would reveal which deputy ordered Plaintiff to get on the top bunk and establish the length of time that Deputy Campos ignored the emergency intercom calls from Plaintiff's cell.  PSAC ¶¶ 159–66, 294–300. Defendants argue the claim fails because he has not alleged he was prevented from filing

a lawsuit and has not alleged the personal involvement of any of the individual plaintiffs. ECF No. 53 at 13. Plaintiff argues that the claim, which arises out of the County's failure to preserve surveillance video that would reveal whether it was Deputy Brown or Deputy Simms that ordered Plaintiff to the top bunk, is properly stated in the alternative under Rule 8 should the claims against Deputy Brown and Deputy Simms fail due to a lack of evidence. ECF No. 56 at 11.

The Supreme Court has identified two varieties of denial of access to courts claims: a forward-looking claim, for the hindrance of "a litigating opportunity yet to be gained," or a backward-looking claim, for official acts causing the loss of "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Christopher v. Harbury*, 536 U.S. 403, 413–14, (2002). To have standing to bring a denial of access to courts claim, a plaintiff must identify a non-frivolous, arguable claim for relief that has been frustrated by official action. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Further, Plaintiff must "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Christopher*, 536 U.S. at 415 (2002). Courts have recognized that evidence destruction by government entities or officials can amount to a constitutional violation. *See Delew v. Wagner*, 143 F.3d 1219, 1222–23 (9th Cir. 1998) (finding that a cognizable claim for denial access to the courts could be premised on police officer's cover-up of evidence that inhibited state court wrongful death action); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1988) (noting that allegation of obstruction of evidence may state a claim under Section 1983 if the actions could be connected to a failure to succeed in the underlying lawsuit).

Here, Plaintiff attempts to alleges that official action—the failure to preserve evidence of the events leading up to Plaintiff's injuries—may hinder his ability to bring successful suit against either Deputy Brown or Deputy Simms because no other evidence confirms which deputy ordered Plaintiff to get on the top bunk, as well as against other defendants because no video confirms the amount of time that elapsed before Plaintiff

received assistance.  However, Plaintiff is still proceeding against these defendants, and "if plaintiff were to succeed in this suit, then his [destruction of evidence] allegations would be mooted." *Karim-Panahi*, 839 F.2d at 625.  The Ninth Circuit has held that backward-looking denial of access to courts claims are not ripe until the plaintiff actually fails to receive adequate redress as a result of the official action.  *Id.*; *see also Delew*, 143 F.3d at 1223 (dismissing denial of access claim without prejudice because plaintiff was still pursuing underlying claim); *Burns v. City of Concord*, 99 F. Supp. 3d 1007, 1029 (N.D. Cal. 2015) (quoting *Skewel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) (finding that the "underlying claims against Defendants . . . have not been dismissed and are still pending, and [plaintiffs] 'cannot merely guess that a . . . remedy will be ineffective because of a defendant's actions.'"); *cf. Morales v. City of Los Angeles*, 214 F.3d 1151, 1155 (9th Cir. 2000) (finding that backward-looking denial of access to courts claim accrued when judgment on underlying claim was entered against them).  Plaintiff does not face certain injury here, as he may still succeed on his claims despite the lack of surveillance video evidence.  Because his denial of access claim is not ripe, this Court does not have jurisdiction to adjudicate it.  *See In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009) (citations omitted) ("Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy.").

Accordingly, the Court finds that amendment to add a claim for denial of access to the courts would be futile at this stage of proceedings.  The Court therefore DENIES Plaintiff leave to amend to add this claim without prejudice.

**4. Eleventh Cause of Action: Bane Act**

Plaintiff's proposed SAC also includes a new cause of action arising under the Bane Act, California Civil Code § 52.1.  Defendants argue that Plaintiff's attempt to add a claim under California's Bane Act would be futile because Plaintiff fails to allege any threats, intimidation, or coercion made by Defendants.  ECF No. 53 at 14–15.  Plaintiff

counters that the Bane Act does not require coercion separate from that inherent in the constitutional deprivation alleged. ECF No. 56 at 9–10.

The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civ. Code § 52.1(a). The Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998).

However, as one California court noted, "[t]he Bane Act's requirement that interference with rights must be accomplished by threats, intimidation or coercion has been the source of much debate and confusion." *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 801 (2017), as modified (Nov. 17, 2017). The root of much of that confusion was the decision *Shoyoye v. City of Los Angeles*, which the *Cornell* thoroughly examined. *Id.* at 799–800. In *Shoyoye*, the court reversed a jury verdict finding defendants liable under the Bane Act for plaintiff's extended detention that resulted from computer error, a mistake which the court described as "mere negligence." *Id.* at 795–98 (citing *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012)). The court in *Cornell* refused to read *Shoyoye* as standing for a general proposition that a plaintiff is required to show an instance of threat, intimidation, or coercion distinct from the underlying constitutional violation. *Id.* at 798–99. Considering *Venegas v. City of Los Angeles*, which "declined to place 'added restrictions on the scope of section 52.1' beyond its plain language," the court found "the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Id.* at 800 (quoting *Venegas v. Cty. of Los Angeles*, 32 Cal. 4th 820, 843 (2004)). The court ultimately concluded that when "an unlawful arrest is properly pleaded and proved, the egregiousness required by Section

52.1 is tested by whether the circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Id.* at 801–02. A finding of specific intent entails a legal determination that the right at issue be clearly delineated and a factual determination that the defendant acted with the purpose of depriving the plaintiff of enjoyment of that right. *Id.* at 803 (quoting *People v. Lashley*, 1 Cal. App. 4th 938, 948–49 (1991)).

Interpreting *Cornell* in a case involving a claim of excessive force, the Ninth Circuit in *Reese v. County of Sacramento* concluded that (1) "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged," and (2) "the Bane Act requires a 'a specific intent to violate the arrestee's right to freedom from unreasonable seizure.'" *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell*, 17 Cal. App. 5th at 799–801. The court in *Reese* further noted that specific intent to violate a person's constitutional rights may be established by showing the defendant acted with reckless disregard for the person's rights. *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

Several district courts have concluded that an allegation of a defendant's deliberate indifference to a plaintiff's serious medical needs suffices to state a claim under the Bane Act because of the coercion, or specific intent, inherent in the deliberate indifference standard. *E.g.*, *Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1195 (E.D. Cal. 2018) ("Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening, such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations."); *Scalia v. Cty. of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("[A] prison official's deliberate indifference to serious medical needs is a coercive act that rises above mere

negligence."); *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 898 (N.D. Cal. 2013) ("Because deliberate indifference claims necessarily require more than 'mere negligence,' a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights presents a case far more like *Venegas* than *Shoyoye* and adequately states a claim for relief under the Bane Act."); *see also Cornell*, 17 Cal. App. at 802 n.31 (noting that "depending on the right alleged to have been interfered with, physical force is not required at all" to show coercion and citing *M.H.* with approval).

Plaintiff adequately alleges that Defendants acted with reckless disregard in failing to ensure that Plaintiff received his seizure medication, a lower-bunk assignment, or prompt medical care after his seizure and fall of the top bunk. As the Ninth Circuit suggested in *Reese*, a showing of reckless disregard can satisfy the Bane Act's requirement of specific intent to interfere with a person's constitutional rights. *See Reese*, 888 F.3d at 1045. The Court therefore finds that Plaintiff sufficiently alleges the coercion necessary to sustain a claim under the Bane Act. As vicarious liability is also a cognizable basis for a Bane Act claim, the Court likewise finds Plaintiff could state a claim against CCMG, *see M.H.*, 90 F. Supp. 3d at 897, and the County, to the extent the County is not entitled to governmental immunity.[3]

The Court therefore GRANTS Plaintiffs' motion for leave to amend to add claims under the Bane Act.

---

[3] The Court does not rule out that the County may be immune from vicarious liability for some violations of the Bane Act due to California Government Code § 844.6, which provides that "a public entity is not liable for . . . [a]n injury to any prisoner." Cal. Gov. Code § 844.6; *see also Towery v. State of California*, 14 Cal. App. 5th 226, 234 n.8 (2017) (indicating in dicta that "Section 844.6 . . . precludes any theory of vicarious liability against the State under the Bane Act" for claim arising from inmate's contraction of infectious disease); *Luttrell v. Hart*, No. 5:19-CV-07300-EJD, 2020 WL 5642613, at *7 (N.D. Cal. Sept. 22, 2020). However, as Section 845.6 may provide an exception to this immunity, and because the County has not raised the issue, the Court declines to find amendment to add the vicarious liability claim futile at this stage. *See Sanders v. Los Angeles Cty.*, No. CV 15-00907 AG (RAO), 2017 WL 8751693, at *10 n.2 (C.D. Cal. Dec. 27, 2017), *report and recommendation adopted*, No. CV 15-00907 AG (RAO), 2018 WL 1626252 (C.D. Cal. Mar. 30, 2018).

## IV. Conclusion

For the reasons enumerated above in this order, Plaintiff's motion to amend is:

- **DENIED** with respect to the negligence claim against Nurse Germono;
- **DENIED** with respect to the denial of access to the courts claim;
- And otherwise **GRANTED**.

**IT IS SO ORDERED.**

Dated: February 16, 2021

Hon. Gonzalo P. Curiel
United States District Judge