Carrie L. Mitchell, Esq. (SBN 221845)
McDOUGAL LOVE BOEHMER FOLEY
LYON & MITCHELL
8100 La Mesa Blvd., Suite 200
La Mesa, California 91942
Telephone: (619) 440-4444; Fax: (619) 440-4907
Email: cmitchell@mcdougallove.com

Attorneys for Defendants, County of San Diego, Sheriff William Gore, Alfred Joshua, M.D., Barbara Lee, Macy Germono, Francisco Bravo, Christopher Simms, and M. Campos (#3780)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER, | Case No.: 19-cv-00378-GPC-DEB |
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO BIFURCATE AND TO STAY PLAINTIFF'S *MONELL* CLAIMS AND RELATED DISCOVERY |
| v. | |
| COUNTY OF SAN DIEGO, WILLIAM GORE in his individual capacity, ALFRED JOSHUA in his individual capacity, BARBARA LEE, in her individual capacity and DOES 1 to 100, | |
| | Judge: Hon. Gonzalo P. Curiel |
| | Courtroom: 2D (2nd Flr) |
| Defendants. | |
| | Magistrate: Hon. Daniel E. Butcher |
| | Courtroom: 3A (3rd Flr) |
| RELATED CROSS-CLAIM(S) | |

Defendants, County of San Diego (the "County"), Sheriff William Gore ("Sheriff Gore"), Alfred Joshua, M.D., Barbara Lee, Macy Germono, Francisco Bravo, Christopher Simms, and M. Campos (#3780) (individually, "individual Defendants"; collectively, "Defendants") hereby submit the following memorandum of points and authorities in support of the instant motion:

# Table of Contents

I.      INTRODUCTION……………………………..………………………..………1

II.      ARGUMENT ........................................................................................................3

   A.   This Court has Authority to Bifurcate Plaintiff's *Monell* Claims from His
Other Claims Against the Individual Defendants ....................................................3

   B.   Bifurcation is Warranted in This Case ...........................................................4

   1.   Bifurcation is Necessary to Avoid Juror Confusion and Undue Prejudice to
the Individual Defendants ........................................................................................4

   2.   Bifurcation Will Promote Convenience and Economy....................................7

   3.   The Claims to be Bifurcated Involve Separate Issues ..................................10

   C.   A Stay of *Monell* Discovery Until After the Trial of Plaintiff's Claims
Against the Individual Defendants is Appropriate ................................................12

III.      CONCLUSION ............................................................................16

1

Table of Authorities

2

**Cases**

3   *Arnold v. City of Scappoose*, 2001 WL 34039490 (D. Or. 2001) ......................6, 13

4   *Athridge v Aetna Cas. & Sur. Co.*, 604 F.3d 625 (D.C. Cir. 2010)...........................4

5   *Boyd v. City and County of San Francisco*, 2006 WL 680556

6      (N.D. Cal. 2006) ........................................................................................8, 10, 13

7   *Calmar, Inc. v. Emson Research, Inc.*, 850 F. Supp. 861 (C.D. Cal. 1994)..............4

8   *Carlstrom v. United States*, 275 F.2d 802 (9th Cir. 1960) .......................................4

9   *Christie v. Iopa*, 176 F.3d 1231 (9th Cir. 1999) .....................................................11

10  *City of Canton v. Harris*, 489 U.S. 378 (1989) .....................................................11

11  *City of Los Angeles v. Heller*, 475 U.S. 796 (1986) ..............................................7, 8

12  *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ................................................12

13  *Computer Assocs. Intern, Inc. v. Simple.com, Inc.*, 247 F.R.D. 63

14     (E.D.N.Y. 2007) ...................................................................................................7

15  *De Anda v. City of Long Beach*, 7 F.3d 1418 (9th Cir. 1993) ..................................4

16  *Deats v. County of Orange*, 2010 WL 11549563 (C.D. Cal. 2010).......................10

17  *Doyle v. OneWest Bank*, N.A., 2015 WL 4605776 (C.D. Cal. 2015) ....................12

18  *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497 (9th Cir. 1970) .............13

19  *Estate of Gonzalez v. Hickman*, 2007 WL 3237635 (C.D. Ca. 2007)......................5

20  *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002) ....................................................8

21  *Farris v. International Paper Inc.*, 2014 WL 6473273 (C.D. Cal. 2014)................3

22  *Fernandez v. Obesity Research Inst.*, LLC, 2013 WL 4587005 (E.D. Cal. 2013) .13

23  *Figueroa v. Gates*, 207 F.Supp.2d 1085 (CD. Cal. 2002).....................................12

24  *Gillette v. Delmore*, 979 F.2d 1342 (9th Cir. 1992) ..............................................11

25  *Gomez v. Toledo*, 446 U.S. 635 (1980) ..................................................................10

26  *Hirst v. Gertzen*, 676 F.2d 1252 (9th Cir. 1982) ...................................................10

27  *Hwang v. City & Cnty. of San Francisco*, 2008 WL 4447708 (N.D. Cal. 2008)......5

28  *J.W. v. City of Oxnard*, 2008 WL 4810298 (C.D. Cal. 2008) ..................................9

    *Jones v. City of Chicago*, 1999 WL 160228 (N.D. Ill. 1999) .................................13

ii

*Lemus v. County of Merced*, 2017 WL 2671021 (E.D. Cal. 2017) ........................ 13

*McDade v. West*, 223 F.3d 1135 (9th Cir. 2000) ........................................... 11

*Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978) ..................................... 10, 11

*Morales v. Irizarry*, 1996 WL 609416 (S.D.N.Y. 1996) ...................................... 14

*Myatt v. City of Chicago*, 816 F. Supp. 1259 (N.D. Ill. 1992) ............................ 6, 9

*N.P. v. Torrance Unified School Dist.*, 2009 WL 10700183 (C.D. Cal. 2009) ..9, 13

*Ojeda-Beltran v. Lucio*, 2008 WL 2782815 (N.D. Ill. 2008) ................................ 13

*Osborne v. City of Upland*, 2015 WL 1608602 (C.D. Cal. 2015) ................ 7, 10, 12

*Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996) ..................... 4, 5, 6, 11

*Reyna v. County of Los Angeles*, 2019 WL 6357251 (C.D. Cal. 2019) ............ 10, 13

*Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553 (6th Cir. 1996) ................................. 4

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) .............................................. 8

*Stringer v. City of San Pablo*, 2009 WL 5215396 (N.D. Cal. 2009) ................. 6, 10

*Washburn v. Fagan*, 2006 WL 1072057 (N.D. Cal. 2006) .................................. 10

*Wilkins v. City of Oakland*, 2006 WL 305972 (N.D. Cal. 2006) .......................... 10

*Wilson v. Morgan*, 477 F.3d 326 (6th Cir. 2007) ........................................... 8

**Statutes**

Fed. R. Civ. P. 26(c) ......................................................................... 14

Fed. R. Civ. P. 42(b) .......................................................................... 3

Fed. R. Evid. 404(a) ........................................................................... 7

1

## I.

## INTRODUCTION

This case involves a head injury sustained by plaintiff, Frankie Greer ("Plaintiff") after he fell from the top bunk of his jail cell on February 1, 2018, while in custody at the San Diego Central Jail (the "County Jail"). On January 31, 2018, San Diego Police Department ("SDPD") officers arrested Plaintiff for assaulting a woman with a deadly weapon earlier that day. The SDPD officers took Plaintiff to the County Jail, located at 1173 Front Street in downtown San Diego, for booking. Plaintiff, who suffers from a seizure disorder, informed the County Jail intake nurse of his seizure disorder. The intake nurse noted the seizure disorder and provided a lower bunk instruction in the County Jail computer system. The doctor at the County Jail ordered a seizure medication to be administered. Defendant, Christopher Simms, a deputy with the San Diego Sheriff's Department, assigned Plaintiff to a cell within the County Jail. On February 1, 2018, at approximately 7:00 p.m., Plaintiff fell from the top bunk of his jail cell and hit his head (the "Incident"). Plaintiff claims that he suffered a seizure before the fall. (Decl. Mitchell, ¶3).

Plaintiff brought the underlying action against the County and the individual Defendants alleging civil rights violations and negligence, among others. In the operative, Second Amended Complaint ("SAC"), Plaintiff alleges causes of action for (1) deliberate indifference to serious medical needs (42 U.S.C. §1983), (2) failure to properly train (42 U.S.C. §1983), (3) failure to properly supervise (42 U.S.C. §1983), (4) *Monell* (42 U.S.C. §1983), (5) negligence, (6) violation of 42 U.S.C. §12101 et seq. (ADA), (7) violation of 29 U.S.C. §794(a) (Rehabilitation Act), and (8) violation of Cal. Civ. Code §52.1 (Bane Act). (Dkt. No. 59, SAC, ¶¶166-334).

On September 17, 2020, Plaintiff propounded Request for Production of Documents, Set Two, on the County ("RFP Set Two"). In pertinent part, RFP Set

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO BIFURCATE AND STAY

Two seeks all reports and emails from the National Commission on Correctional Healthcare ("NCCHC") and Barbara Lee regarding any audit, review, or investigation conducted by the NCCHC of San Diego County jails, of which there are six. The time period for the request is from January 1, 2013, to February 28, 2018. (Decl. Mitchell, ¶4, Ex. A).

On August 12, 2021, Plaintiff's attorney deposed Alfred Joshua, M.D., the Chief Medical Officer for the Sheriff's Department at the time of the Incident. Plaintiff's attorney questioned Dr. Joshua at great length regarding inmate deaths and other issues unrelated to the Incident. (Decl. Mitchell, ¶5, Ex. B).

On August 19, 2021, Plaintiff propounded Request for Production of Documents, Set Four, on the County ("RFP Set Four"). RFP Set Four consists of 22 requests that seek all documents and electronically stored information, including the entire homicide investigations, Internal Affairs files and records and all Critical Incident Review Board ("CIRB") reports or memoranda, related to the following inmates:

1) Daniel Sisson, who purportedly died on 6/25/2011;
2) Bernard Victorianne, who purportedly died on 9/19/2012;
3) Kristopher NeSmith, who purportedly died on 3/1/2013;
4) Ronnie Sandoval, who purportedly died on 2/23/2014;
5) Jerry Lee Chochran, who purportedly died on /16/2014;
6) Ruben Nunez, who purportedly died on 8/13/2015;
7) Jason Nishimoto, who purportedly died on 9/27/2015;
8) Richard Boulanger, who purportedly died on 2/14/2016;
9) Adrian Sanchez, who purportedly died on 5/3/2016;
10) Heron Moriarty, who purportedly died on 5/31/2016;
11) Bruce Madsen Stucki, who purportedly died on 3/18/2017; and
12) Wellington Robert Kemplin, who purportedly died on 8/15/2017.

(Decl. Mitchell, ¶6, Ex. C at pp. 6-11). RFP Set Four also seeks a list of all attendees present at any CIRB meetings regarding the inmates who purportedly died while in custody. (Decl. Mitchell, ¶6, Ex. C at p. 9). None of the requests relate to the Incident. (Decl. Mitchell, ¶6).

1    That same day, Plaintiff's attorney deposed defendant, Barbara Lee, the

2  medical administrator at the County Jail. As with Dr. Joshua, Plaintiff's attorney

3  questioned Ms. Lee at great length regarding inmate deaths and other issues

4  unrelated to the Incident. (Decl. Mitchell, ¶7, Ex. D).

5    On November 17, 2021, Plaintiff propounded Special Interrogatories, Set

6  One, on Sheriff William Gore ("ROG Set One"). In pertinent part, ROG Set One

7  asks for the names of all decedents, detainees, arrestees, suspects, and Citizens'

8  Law Enforcement Review Board ("CLERB") complainants who are the subject of

9  a CLERB investigation for the time period from March 1, 2014, to March 1, 2018.

10  None of the requests relate to the Incident. (Decl. Mitchell, ¶8, Ex. E).

11    Plaintiff has taken the position that the foregoing discovery requests are

12  relevant to the *Monell* claims. The County disputes this.[1] Assuming Plaintiff is

13  correct, the foregoing discovery requests are nonetheless irrelevant to the

14  individual Defendants' liability for the Incident. Without bifurcation and a

15  discovery stay, the already protracted discovery phase will be further complicated

16  and delayed by the ongoing and foreseeable further discovery disputes.

17  II.

18  ARGUMENT

19  A.  <u>This Court has Authority to Bifurcate Plaintiff's *Monell* Claims from</u>
20      <u>His Claims Against the Individual Defendants</u>

21    Courts may order separate trials of one or more separate issues, claims,

22  counterclaims, crossclaims of third party claims for convenience, to avoid

23  prejudice, or to expedite and economize. Fed. R. Civ. P. 42(b); *see Farris v.*

24  *International Paper Inc.*, 2014 WL 6473273, \*24 (C.D. Cal. 2014); *see also*

25  *Athridge v Aetna Cas. & Sur. Co.*, 604 F.3d 625, 635 (D.C. Cir. 2010) (bifurcation

26  appropriate "where the evidence offered on two different issues will be wholly

27
28

[1] It is the County's position that most of Plaintiff's discovery requests are not relevant or reasonably calculated to lead to relevant evidence. The County's response to ROG Set One is not yet due. The requests in RFP Set Four are the subject of a pending discovery motion.

3

distinct, or where litigation of one issue may obviate the need to try another issue"). Ordering separate trials is the procedure whereby the court may "split" a single lawsuit and order a separate trial of particular claims. *De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993). Under Rule 42(b), the district court has broad discretion to order separate trials; the exercise of that discretion will be set aside only if clearly abused. *See Carlstrom v. United States*, 275 F.2d 802 (9th Cir. 1960); *accord* Charles A. Wright, et al., 9A Fed. Prac. & Proc. (Trials) § 2387 (3rd ed. rev. 2015) (Rule 42(b) "giv[es] the district court virtually unlimited freedom to try the issues in whatever way trial convenience requires."). A separate trial may be ordered on motion of any party or the court's own motion. *Saxion v. Titan-C-Mfg., Inc*., 86 F.3d 553, 556 (6th Cir. 1996).

   B.   <u>Bifurcation is Warranted in This Case</u>

   The factors that courts consider when determining whether to bifurcate a trial include: "avoiding prejudice, separability of the issues, convenience, judicial economy, and reducing risk of confusion." *See Quintanilla v. City of Downey*, 84 F.3d 353, 356 (9th Cir. 1996); *see also Calmar, Inc. v. Emson Research, Inc*., 850 F. Supp. 861, 866 (C.D. Cal. 1994) ("Factors to be considered… include complexity of issues, factual proof, risk of jury confusion, difference between the separated issues, the chance that separation will lead to economy in discovery and, the possibility that the first trial may be dispositive of the case."). As discussed in detail below, all these factors weigh in favor of bifurcation.

   1.   <u>Bifurcation is Necessary to Avoid Juror Confusion and Undue Prejudice to the Individual Defendants</u>

   Bifurcation of Plaintiff's *Monell* claims will avoid unfair prejudice to the individual Defendants and will not prejudice Plaintiff. Plaintiff will likely attempt to prove his *Monell* claims by introducing evidence concerning alleged misconduct of non-party Sheriff's deputies and medical staff that stem from prior unrelated incidents. In fact, this is a main focus of Plaintiff's RFP Set Two to the County,

4

RFP Set Four to the County, and ROG Set One to the Sheriff, which seek years of unrelated complaints, investigations, reports, and disciplinary information concerning not only the County Jail where Plaintiff fell, but all six San Diego County jails on issues entirely unrelated to this case. (*See* Decl. Mitchell, ¶¶4, 6, 8, Exs. A, C, E). The simultaneous presentation of this *Monell* evidence and evidence related to Plaintiff's individual claims will unfairly prejudice the individual Defendants by tainting them with unrelated claims of alleged wrongdoing that have nothing to do with their conduct during the Incident. *See Quintanilla*, 84 F.3d 353, 356 ("The district court, under Fed. R. Civ. P. 42(b), in the interest not only of convenience and judicial economy but also the avoidance of potential prejudice and confusion, bifurcated the trial of the individual police officers from the Chief and city."); *see also Estate of Gonzalez v. Hickman*, 2007 WL 3237635, at *10 n. 19 (C.D. Ca. 2007) (granting bifurcation where evidence would otherwise cause unfair prejudice, which "means undue tendency to suggest decision on an improper basis, commonly…an emotional one") (citation and quotation marks omitted); *see also Hwang v. City & Cnty. of San Francisco*, 2008 WL 4447708, *2 (N.D. Cal. 2008) (Where "the great majority of evidence relevant to [a *Monell* claim] will not be relevant to the claims against the individual defendants, submission of such evidence is likely to be unfairly prejudicial to such individual defendants.").

The issue of *Monell* bifurcation was addressed by the Ninth Circuit in *Quintanilla v. City of Downey*, 84 F.3d 353. In *Quintanilla*, the Court affirmed the trial court's decision to bifurcate the *Monell* claim from the claims against the individual officers. *Id*. at 354-357. The plaintiff in *Quintanilla* alleged that the use of a police dog against him amounted to excessive force. *Id*. at 354. The plaintiff sought to introduce evidence concerning various unrelated dog bites and expert police practices' testimony as to the training of police dogs and the severity of injuries caused by police dogs. *Id*. at 354-355. The district court bifurcated the trial and excluded the *Monell* evidence during the individual-liability phase of the trial.

*Id*. The Ninth Circuit affirmed on the ground that the individual officers' liability was the initial issue:

> [T]he evidence was premature. The Chief and city's liability under *Monell* was not yet at issue. Admitting evidence pertaining to the *Monell* issue could well have unfairly prejudiced the Chief and city and confused the jury as it considered the individual officers' actions

*Id*. at 356; *see also Stringer v. City of San Pablo*, 2009 WL 5215396, at *6-7 (N.D. Cal. 2009) (bifurcating *Monell* claims because of potential prejudice to individual officers and to promote judicial economy); *Arnold v. City of Scappoose*, 2001 WL 34039490 (D. Or. 2001) (granting motion to bifurcate claims against officers from *Monell* claims); *Myatt v. City of Chicago*, 816 F. Supp. 1259, 1264 n.8 (N.D. Ill. 1992) ("Bifurcation [of *Monell*] would also avoid prejudicing the defendants."). Here, bifurcation is proper to prevent prejudice to any of the individual Defendants in this case.

The simultaneous introduction of *Monell*-related evidence will also lead to juror confusion. *See Quintanilla*, 84 F.3d at 356 ("Admitting evidence pertaining to the *Monell* issue could well…confused the jury as it considered the individual officers' actions."). Here, the vast majority of evidence supporting Plaintiff's *Monell* claims is separate and distinct from the evidence supporting his underlying claims of Fourteenth Amendment violations against the individual Defendants. Introducing voluminous evidence of unrelated complaints, personnel investigations, and departmental action to establish Plaintiff's *Monell* claims will likely confuse the jury of the facts relevant to the issue in determining the individual Defendants' individual liability. Such evidence will likely distract the jury from the issues of what happened during the Incident involving Plaintiff and whether a constitutional violation actually occurred. The jury might well conclude that because other non-party individuals engaged in past misconduct, that the individual Defendants acted unconstitutionally on this occasion. Thus, the possibility of evidentiary spillover unnecessarily risks confusing the jury and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO BIFURCATE AND STAY

prejudicing the individual Defendants. *See Osborne v. City of Upland*, 2015 WL 1608602 (C.D. Cal. 2015); *see, e.g., Computer Assocs. Intern, Inc. v. Simple.com, Inc*., 247 F.R.D. 63, 67 (E.D.N.Y. 2007) (courts ought to consider whether "bifurcation will increase juror comprehension.").

Even with a limiting instruction, the introduction of *Monell*-related evidence will inflame the jury's passion and likely cause the jury to infer that the individual Defendants are probably liable to the extent there may have been other similar complaints made against them or other nonparty Sheriff's deputies or medical staff in the past. Thus, Plaintiff would be using this evidence as improper and inadmissible character evidence. See Fed. R. Evid. 404(a) (which prohibits the use of character evidence to prove conduct in conformity with a character trait on a specified occasion). Accordingly, Plaintiff's *Monell* claims should be bifurcated due to the likelihood that *Monell*-related evidence will unduly prejudice the individual Defendants and cause juror confusion.

Similarly, bifurcation will not prejudice Plaintiff. If a constitutional violation is found to have occurred, or if the individual Defendants are granted qualified immunity, Plaintiff will be afforded the opportunity to proceed with his *Monell* claims in a second phase. Moreover, if there is a judgment for the individual Defendants on the question of a constitutional violation, then the County is not liable. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Thus, the trial on the *Monell* claims is only likely if there is a judgment in Plaintiff's favor, or in favor of the individual Defendants on some ground other than the absence of a constitutional violation, such as qualified immunity.

### 2. Bifurcation Will Promote Convenience and Economy

Bifurcation will prevent unnecessary consumption of judicial and litigant time and resources. If the individual Defendants are found not to have violated Plaintiff's constitutional rights, Plaintiff will be precluded from pursuing his *Monell* claim against the County. *Heller*, *supra*, 475 U.S. at 799. In *City of Los*

7

*Angeles v. Heller*, the Supreme Court held that a public entity is not liable for section 1983 damages under a policy that can cause constitutional deprivations, when the factfinder concludes that an individual defendant, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff. 475 U.S. at 799. In so holding, the Court stated:

> [if] a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

*Id.* (emphasis in original); *see also Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007) ("The magistrate judge's decision to bifurcate the trial was eminently reasonable in the interests of judicial economy and avoiding possible juror confusion. It was not an abuse of discretion to bifurcate individual liability from municipal liability, and it would be illogical to try the municipality first since its liability under §1983 could not be determined without a determination of the lawfulness of the individuals' actions."). Here, any liability on the County's part is therefore derivative of, and flows from, any underlying constitutional injury. *See Id.* Accordingly, bifurcation is conducive to expedition and economy because a finding that the individual Defendants did not deprive Plaintiff of his constitutional rights is dispositive of Plaintiff's claim against the County. *Id.*; *see Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) ("Exoneration of [the individual officer] of the charge of excessive force precludes municipal liability for the alleged unconstitutional use of such force."); *see also Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (holding, where individual officers were entitled to judgment on ground they did not use excessive force, public entity was entitled to judgment on claim public entity failed to adequately train officers); *see also Boyd v. City and County of San Francisco*, 2006 WL 680556, *2 (N.D. Cal. 2006).

Additionally, the time it will take to present evidence relevant to Plaintiff's claims against the individual Defendants will be relatively limited, given the brief

8

nature of the Incident and the limited number of percipient witnesses. However, with respect to Plaintiff's *Monell* claims, it appears Plaintiff intends to introduce a large body of evidence and testimony concerning other alleged Sheriff deputy misconduct, inmate mistreatment and deaths, internal investigations, NCCHC audits, CLERB reviews, CIRB reports, other lawsuits, and outcomes that are wholly unrelated to evidence supporting Plaintiff's claims against the individual Defendants, and the presentation of such evidence will significantly extend the trial time. *Myatt*, *supra*, 816 F. Supp. at 1264, (proving a *Monell* violation requires substantially more time and evidence - and resulting judicial and litigant resources - than trial of the underlying constitutional violation). For example, it appears that the key documentary evidence Plaintiff intends to support his *Monell* claims include, among other things, unrelated prior deaths regardless of cause and regardless of whether there was a complaint or finding of misconduct for all six of the County jails and all documentation related to the deaths. (Decl. Mitchell, ¶9).

The anticipated *Monell* testimony is also substantial. In his RFP Set Four to the County, Plaintiff identifies fifteen other inmates who were purportedly mistreated and/or died at a San Diego County jail. The other, unrelated incidents involve various other Sheriff's deputies, nurses, doctors, mental health professionals, and other County staff. In calling these *Monell* witnesses, the County would then have to respond by calling its own witnesses to rebut or respond to the testimony of those witnesses. Consequently, the presentation of this *Monell* testimony would – in effect – result in numerous mini-trials relating to incidents entirely unrelated to the subject Incident.

In sum, if bifurcation is granted, "the Court will save a great deal of time and resources," and any potential prejudice and confusion will be avoided. *See J.W. v. City of Oxnard*, 2008 WL 4810298, *15 (C.D. Cal. 2008). For these reasons, district courts have repeatedly granted similar motions to bifurcate. *See, e.g., N.P. v. Torrance Unified School Dist.*, 2009 WL 10700183 (C.D. Cal. 2009); *Osborne*,

*supra*, 2015 WL 1608602 (C.D. Cal. 2015); *Deats v. County of Orange*, 2010 WL 11549563 (C.D. Cal. 2010); *Reyna v. County of Los Angeles*, 2019 WL 6357251 (C.D. Cal. 2019); *Washburn v. Fagan*, 2006 WL 1072057 (N.D. Cal. 2006); *Boyd*, *supra*, 2006 WL 680556; *Wilkins v. City of Oakland*, 2006 WL 305972 (N.D. Cal. 2006); *Stringer*, *supra*, 2009 WL 5215396. Resolution of Plaintiff's claims against the individual Defendants may obviate the need for a trial on the *Monell* claims, which economizes the Court's and parties' time. Thus, in the interest of potentially shortening the overall litigation, bifurcation is appropriate under these circumstances.

3.   The Claims to be Bifurcated Involve Separate Issues

In deciding whether to order separate trials, the Court may also consider whether the issues are clearly separable. *Hirst v. Gertzen*, 676 F.2d 1252, 1261 (9th Cir. 1982). Here, bifurcation will divide claims that involve different issues as well as different facts, witnesses, and documentary evidence.

In general, to prevail on a section 1983 claim, Plaintiff must prove the deprivation of a constitutional right and that the person who deprived him of that right acted under color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980). On the other hand, a public entity, such as the County of San Diego, cannot be held liable under section 1983 on a respondeat superior theory "solely because it employs a tortfeasor" *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Rather, the public entity can only be sued under section 1983 if the alleged violation of a constitutional right was caused by its policy or custom. *Id*. at 691.

In general, a plaintiff can establish such liability in one of three ways: First, a plaintiff can show that a person with decision-making authority within the public entity expressly authorized an unconstitutional policy or order. *See id*. at 694. Second, a plaintiff can demonstrate that a public entity failed to adequately train its employees and that such failure constitutes deliberate indifference to the rights of individuals who may come into contact with those employees. *See City of Canton*

10

*v. Harris*, 489 U.S. 378, 388–89 (1989). Finally, a plaintiff can establish that his constitutional rights were violated by a practice "so permanent and well settled as to constitute a 'custom or usage'" of the public entity. *Monell*, *supra*, 436 U.S. at 694. Plaintiff alleges that the County may be held liable under the second and last of these theories. (Dkt. No. 59, SAC, ¶269.)

To prevail under these theories of liability, Plaintiff will be required to establish that there existed a well-established custom or practice of the County, which cannot be proven with a single occurrence. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000). To establish a custom, "a plaintiff must prove the existence of a practice that is so permanent and well settled as to constitute a custom or usage with the force of law." *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

Accordingly, for Plaintiff to establish the existence of a custom, practice or policy, Plaintiff will necessarily have to introduce evidence of prior allegations of other constitutional violations and alleged County misconduct. However, such evidence is entirely irrelevant to the issue of whether the individual Defendants violated Plaintiff's constitutional rights. More importantly, bifurcation will avoid prejudice to the individual Defendants, as the evidence relevant to the claims against the individual Defendants does not overlap in any meaningful way with the evidence relevant to the claims against the County. *See, e.g., Quintanilla*, *supra*, 84 F.3d at 356 ("[a]dmitting evidence pertaining to the *Monell* issue could well have unfairly prejudiced the Chief and city and confused the jury as it considered the individual officers' actions."). Moreover, bifurcation will simplify the causes of action at trial and allow a smoother presentation of evidence, e.g. fewer objections

1  and evidentiary restrictions will serve judicial efficiency. *See, e.g., Osborne*, *supra*,

2  2015 WL 1608602, at *9.

3      To the extent that Plaintiff contends that alleged prior misconduct is relevant

4  to his punitive damages' claim, the County also requests bifurcation of Plaintiff's

5  claim for punitive damages from trial against the individual Defendants. Plaintiff

6  should be allowed to present evidence of malicious conduct warranting punitive

7  damages only if liability is first found for any claim warranting punitive damages.

8  Proceeding first with the issue of liability for Plaintiff's causes of action for civil

9  rights violations may forestall the necessity of proceeding with an extended trial

10 with disputed testimony on the issue of punitive damages. *See Figueroa v. Gates*,

11 207 F.Supp.2d 1085, 1101-1102 (CD. Cal. 2002) (If the officers are found to be

12 not liable, then there would be no need to proceed to the *Monell* and punitive

13 damages questions, as they are premised on a finding of unconstitutional action by

14 the officers; bifurcation of punitive damages claim, in addition to *Monell* claim,

15 will promote convenience and efficiency). This request will further prevent undue

16 prejudice to Defendants by preventing the introduction of excessively large

17 damage figures before liability is ascertained. Consequently, bifurcation of

18 Plaintiff's punitive damages claim is warranted in this instance.

19      C.  A Stay of *Monell* Discovery Until After the Trial of Plaintiff's Claims
20          Against the Individual Defendants is Appropriate

21      The same reasons that support bifurcation also provide good cause for a stay

22 of discovery with respect to the claims against the County until Plaintiff's claims

23 against the individual Defendants are adjudicated. *See CMAX, Inc. v. Hall*, 300

24 F.2d 265, 268 (9th Cir. 1962) (in determining the propriety of a stay, courts look to

25 issues of judicial economy and the prejudice to either party that may result if the

26 stay is granted or denied); *see also Doyle v. OneWest Bank*, N.A., 2015 WL

27 4605776, at *3 (C.D. Cal. 2015) (a stay can be indicated where resolution of

28 another case "may have a substantial impact" on the pending matter).

1    The Court has broad discretion under Rule 26(c) of the Federal Rules of
2    Civil Procedure to control the scope and sequence of discovery. *See Fernandez v.*
3    *Obesity Research Inst.*, LLC, 2013 WL 4587005, at *6 (E.D. Cal. 2013) (The
4    court's power to stay proceedings stems from the court's inherent ability to control
5    the disposition of cases on its docket). Here, under the circumstances of this case, a
6    stay of *Monell* discovery until after the trial on the liability of the individual
7    Defendants is appropriate.

8    "One of the purposes of Rule 42(b) is to permit deferral of costly and
9    possibly unnecessary discovery proceedings pending resolution of potentially
10   dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424
11   F.2d 497, 499 (9th Cir. 1970). Courts have stayed *Monell* discovery "to conserve
12   the resources of the parties and the court." *See, e.g., Jones v. City of Chicago*, 1999
13   WL 160228 (N.D. Ill. 1999); *Reyna*, *supra*, 2019 WL 6357251, at *2 (C.D. Cal.
14   2019) (staying *Monell* discovery since municipal liability claim is only likely if
15   there is a constitutional violation or defendants are were entitled to qualified
16   immunity); *Lemus v. County of Merced*, 2017 WL 2671021, at *3 (E.D. Cal. 2017)
17   (staying *Monell* discovery since claim against County is derivative of an
18   underlying constitutional injury); *Boyd*, *supra*, 2006 WL 680556 (staying *Monell*
19   discovery in light of bifurcation order); *N.P.*, *supra*, 2009 WL 10700183, at *3)
20   (staying *Monell* discovery following bifurcation order); *Arnold*, *supra*, 2001 WL
21   34039490, at *2 ("There is significant judicial economy in separating the question
22   of the constitutionality of the actions of the individual officers from the question of
23   municipal liability under *Monell*…"); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815,
24   at *3-4 (N.D. Ill. 2008) (bifurcating and staying *Monell*, because "litigation of the
25   *Monell* claim is likely to require a considerable investment of resources on the part
26   of the parties and the Court outside of those required for the resolution of the
27   claims against Defendant Officers.").
28   ///

Because "the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established." *Morales v. Irizarry*, 1996 WL 609416 (S.D.N.Y. 1996). As Plaintiff will likely concede, in order to prove the unlawful County policies alleged, Plaintiff will require discovery with respect to, among other things, incidents involving non-party Sheriff's deputies, medical staff, and other personnel. Because such discovery has no apparent relevance to the claims against the individual Defendants, a stay will conserve the resources of the parties and the Court by deferring such discovery until such time as one or more of the individual Defendants have been found liable or entitled to qualified immunity. *See* Fed. R. Civ. P. 26(c) (providing courts may issue protective order to effect that discovery "may be had only on specified terms and conditions" in order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.").

Such a stay is appropriate in this case. As discussed above, Plaintiff has propounded numerous discovery requests concerning Plaintiff's *Monell* claims. It has and will require the expenditure of substantial County time and resources to answer this discovery. (Decl. Mitchell, ¶10). Plaintiff's highly burdensome discovery requests include, among other things, the following: communications between CLERB and the Sheriff's Department in prior inmate death cases; homicide investigation files; Internal Affairs investigation files; CIRB reports; medical records for each inmate who died; interviews with medical and correctional staff at all of the County jails; interviews with percipient witnesses; and for the time period March 1, 2014, to March 1, 2018: dates of all CIRB meetings and names of all decedents, detainees, arrestees, suspects, and CLERB complainants who are the subject of a CLERB investigation; descriptions of each incident where Sheriff Gore or CLERB disciplined a Sheriff's employee or agent;

14

each incident where CLERB found misconduct by a Sheriff's deputy; each incident where Sheriff Gore adopted CLERB's recommendation for imposing discipline for a Sheriff's deputy or making a policy change; who Sheriff Gore met with regarding inmate medical care in all six of the County jails, how often he met, and all documents related to the meetings. (*Id*., Ex. D).

Defendants anticipate that this is only the beginning of Plaintiff's discovery on these *Monell* issues, and that Defendants will soon face even broader requests regarding the County's policies, practices, or customs, unrelated incidents beyond the scope of this case, and the County disciplinary process. Plaintiff will likely seek depositions on these topics as well in addition to the recently concluded depositions of Dr. Joshua and Ms. Lee. In fact, despite there only being no actual percipient witnesses to the Incident, Plaintiff's attorneys have deposed in excess of 10 witnesses of the individual Defendants and other non-party witnesses associated with the County. (Decl. Mitchell, ¶11). Currently, Plaintiff's attorney is seeking to exceed the limit of allowable depositions in order to depose the person most knowledgeable for the County. (*Id*). All future depositions will likely focus on gathering *Monell*-related testimony. (*Id*). By postponing *Monell*, further burdensome discovery in this regard can be avoided until it is necessary after trial of the claims against the individual Defendants. Accordingly, the Court should order a stay of *Monell* and related discovery under Rule 26(c), because the stay will greatly reduce the expense, length, and burden of this litigation on the Court and the parties.

///
///
///
///
///
///

III.

CONCLUSION

For the reasons set forth above, the County respectfully requests that the Court grant the instant motion in its entirety, bifurcating Plaintiff's *Monell* claims and staying discovery relating thereto.

Dated:  December 10, 2021       MCDOUGAL LOVE BOEHMER FOLEY
                                 LYON & MITCHELL


By: *s/Carrie L. Mitchell*
     Carrie L. Mitchell
     Attorneys for Defendants, County of San
     Diego, Sheriff William Gore, Alfred Joshua,
     M.D., Barbara Lee, Macy Germono, Francisco
     Bravo, Christopher Simms, and M. Campos
     (#3780)