UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>                        Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                      Defendants. | Case No.: 19-cv-378-GPC-DEB<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE REGARDING PLAINTIFF'S REQUESTS FOR PRODUCTION (SET FOUR) NOS. 42-54**<br><br>**DKT. NO. 113** |

## I.  INTRODUCTION

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute. Dkt. No. 113.[1] Plaintiff seeks documents responsive to Plaintiff's Request for Production (Set Four) ("RFP") Nos. 42-54. Defendant County of San Diego ("the County") raises relevancy, proportionality, and privacy based objections to the RFPs. *Id.* For the reasons set forth below, the Court overrules the County's objections.

---

[1] When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

## II.   LEGAL STANDARD

"[B]road discretion is vested in the trial court to permit or deny discovery . . . ." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Even after the 2015 amendments to Rule 26, "discovery relevance remains a broad concept." *Fed. Nat'l Mortg. Ass'n v. SFR Invs. Pool 1, LLC*, No. 14-cv-02046-JAD-PAL, 2016 WL 778368, at *2 n.16 (D. Nev. Feb. 25, 2016); *see also Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, No. 15-cv-01735-H-RBB, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016) ("Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case.") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978)).

## III.   DISCUSSION

Plaintiff's Second Amended Complaint ("SAC") alleges when Plaintiff was booked into San Diego Central Jail on January 31, 2018, he gave medical staff his prescribed seizure disorder medication and informed them that he would suffer chronic seizures without his medication. Dkt. No. 59 ¶¶ 29-31. Medical staff did not administer Plaintiff's medication, and did not enter either a seizure disorder alert or lower bunk assignment order in the Jail Information Management System ("JIMS") or otherwise communicate Plaintiff's medical condition and needs to jail staff. *Id.* ¶¶ 36, 38, 41, 43.

On February 1, 2018, after Plaintiff missed two doses of seizure medication, jail staff assigned him to a top bunk, despite Plaintiff informing them of his medical condition and requesting a lower bunk assignment. *Id.* ¶¶ 42, 44, 45-53. Shortly thereafter, Plaintiff suffered a seizure and fell from his top bunk to the concrete cell floor, which rendered him unconscious. *Id.* ¶¶ 55-57. Jail staff failed to respond to Plaintiff's cellmates' intercom calls and shouts for help, which delayed medical treatment. *Id.* ¶¶ 57-66, 69-71, 73. Plaintiff continued to suffer "numerous clinical seizures" without receiving immediate emergency medical care, which exacerbated his injuries. *Id.* ¶¶ 72-73. Plaintiff remained unconscious

...

for weeks and has a significant brain injury, which continues to impair his cognitive functioning, memory, and speech. *Id.* ¶¶ 78-79, 81. Hospital records indicate Plaintiff sustained facial fractures, a brain bleed, and respiratory failure. *Id.* ¶ 74.

Plaintiff's SAC alleges the County and supervisory officials are liable for his injuries because they acted with deliberate indifference by failing to train, monitor, supervise, and discipline Sheriff's Department personnel despite a known history of failures to: (1) communicate, share critical medical information, and coordinate the care of seriously ill inmates; (2) provide seriously ill inmates emergency medical care; and (3) properly monitor seriously ill inmates. *Id.* ¶¶ 119, 120, 129-132, 264-268, 278-285.[2] Plaintiff also asserts individual claims against the supervisory officials, alleging they failed to adequately train and supervise jail staff to properly: (1) administer medication; (2) input medical information in JIMS; (3) communicate serious medical needs to other jail personnel; and (4) monitor seriously ill inmates, including timely responding to emergency calls for aid. *Id.* ¶¶ 218-244.

Plaintiff seeks discovery on these claims, which have survived a Motion to Dismiss. Dkt. No. 28. Plaintiff's RFP Nos. 42-54 request the following documents related to thirteen County jail inmate deaths preceding Plaintiff's February 1, 2018 seizure and fall: (1) Citizens' Law Enforcement Review Board ("CLERB") records, including communications with the County (RFP Nos. 42-47) and internal records and reports (RFP Nos. 48-49); (2) homicide investigation files (RFP No. 50); (3) Internal Affairs investigation records (RFP No. 51); and (4) Sheriff's Department Critical Incident Review

---

[2] Municipalities may be sued for monetary, declaratory, or injunctive relief where official policy or custom violates a Constitutional right, including an unwritten practice or policy that reflects "persistent and widespread discriminatory practices of state officials" that are "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

Board ("CIRB") reports and records (RFP Nos. 52-54). Dkt. No. 113 at 2-13.[3] Plaintiff argues this discovery is relevant to establish the County and supervisory officials were on notice of a pattern of jail personnel failing to properly address inmates' serious medical needs, and acquiesced in this practice by failing to take any remedial action. *Id*. at 14-23. The County objects to producing any responsive documents, contending the discovery at issue is "clearly not relevant to demonstrate a known pattern of similar constitutional violations in that they do not in any matter implicate constitutional violations relating to standard nursing protocol for seizures, the low/bunk/low tier policy, classification policy relating to low bunks, or the intercom policy in effect at the time of [Plaintiff's] fall." *Id*. at 29-30. The County also objects that the discovery violates the privacy rights of third parties. *Id*. at 32-33.

### A. Relevancy and Proportionality

The Court finds the discovery at issue relevant and proportional to the needs of this case. Discovery of the circumstances surrounding the identified inmate deaths reasonably relates to whether there exists a pattern of jail staff failing to communicate and share critical medical information and/or failing to provide necessary medical care and monitoring, and whether the County and the supervisory defendants were on notice of any such failures. *See Mollica v. County of Sacramento*, No. 19-cv-2017-KJM-DB, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021) (rejecting defendants' argument that plaintiff's discovery

---

[3] Plaintiff's SAC identifies nine inmate deaths for which Plaintiff seeks discovery: Daniel Sisson (died 06/25/2011); Bernard Victorianne (died 09/19/2012); Kristopher NeSmith (died 03/01/2013); Ronnie Sandoval (died 02/23/2014); Jerry Lee Cochran (died 09/16/2014); Ruben Nunez (died 08/13/2015); Jason Nishimoto (died 09/27/2015); Richard Boulanger (died 02/14/2016); and Heron Moriarty (died 05/31/2016). Dkt. No. 59 ¶¶ 64, 119, 120, 121, 127, 128, 129, 132, 163, 207, 219, 220, 221, 222, 234, 239. Plaintiff's RFPs also seek discovery regarding four inmate deaths not specifically listed in the SAC: Adrian Sanchez (died 5/3/2016); Bruce Madsen Stucki (died 3/18/2017); Wellington Robert Kemplin (died 8/15/2017); and Chadwick James Moore (died 12/16/2017). Dkt. No. 113 at 5-12.

requests were irrelevant because plaintiff did not limit them to complaints related to foot/ankle injuries, and permitting discovery of all complaints of denial of medical care at the jail for a two-year period: "Plaintiff's *Monell* claim. . . is not limited to only the treatment of foot/ankle injuries. . . . [It is] 'based on an alleged failure to provide necessary medical treatment to inmates housed at jail facilities and alleged failure to transfer inmates to . . . medical facilities where necessary medical treatment is available.'"); *Burrell v. City of Vallejo*, No. 19-cv-1898-WBS-KJN, 2021 WL 2661807, at *4 (E.D. Cal. June 29, 2021) (in § 1983 excessive force action with *Monell* claim, plaintiff's request for documents regarding twenty-one prior excessive force incidents alleged in his third amended complaint were "relevant and proportional to the needs of this case").

The County raises a proportionality objection and invites the Court to limit any discovery "to complaints that have been received relating to failure to provide timely seizure medication or a failure to assign a bottom bunk for a limited period of two to five years and intercom complaints after the 2017 policy." Dkt. No. 113 at 32. The County asserts requiring a more fulsome response will "most likely involve a considerable outlay of money and time" by Sheriff's Department employees." *Id.* The County's proposal is unduly narrow. Plaintiff's *Monell* claims are predicated on broader, systemic failures. By their nature, *Monell* claims typically require broader and more substantial discovery than claims brought only against the individuals directly involved in the alleged deprivation of a plaintiff's rights. *Awalt v. Marketti, et al.*, No. 11-c-6142, 2021 WL 6568242, at *7 (N.D. Ill. Dec. 17, 2012). ("Due to the fact *Monell* claims implicate a potentially large number of events taking place in an organization over a period of time, they naturally, and necessarily require extensive, and often burdensome, discovery."). Furthermore, this discovery Plaintiff seeks is central to his *Monell* and supervisory liability claims; thus the burden on the County in responding to the discovery is proportionate to the needs of this case. *See N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc., 325 F.R.D. 36, 49 (E.D.N.Y. 2018)* ("Proportionality and relevance are 'conjoined' concepts; the greater the relevance

of the information in issue, the less likely its discovery will be found to be disproportionate.").

B. Privacy

The County further objects that RFP Nos. 42-54 implicate the privacy rights of individuals not involved in this litigation including "private citizens, families of decedents and . . . officials within investigating units." Dkt. No. 113 at 33. Plaintiff's need for the information, however, outweighs any privacy interests in the documents, which are adequately protected by the Court's Protective Order.[4] *See Macias v. City of Clovis*, 13-cv-01819-BAM, 2015 WL 7282841, at *8 (E.D. Cal. Nov. 18, 2015). ("[T]he weight of precedent demonstrates that police officer files and related documents in civil rights cases are disclosed to Plaintiffs pursuant to a protective order."). The County's privacy objection, therefore, is overruled.

IV. CONCLUSION

Based on the foregoing, the County's objections to Plaintiff's RFP Nos. 42-54 are overruled. The County must produce all non-privileged responsive documents and produce a privilege log for all privilege asserted documents on or before **January 17, 2022**.

**IT IS SO ORDERED.**

Dated: December 17, 2021

Honorable Daniel E. Butcher
United States Magistrate Judge

---

[4] The parties' stipulated Protective Order applies to "medical and mental health records, law enforcement records, personnel records, Internal Affairs records, records from the CLERB, and other materials containing confidential sensitive information, including information maintained for law enforcement purposes" by limiting the dissemination of any such documents and requiring the return of all such materials to Defendants' counsel at the conclusion of the case. Dkt. No. 82 ¶¶ 1.2, 12.