EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
GRACE JUN: SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>             Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO *et al.*<br><br>             Defendants. | CASE NO. 19-cv-00378-JO-DEB<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO COMPEL THE DEPOSITION OF DEFENDANT WILLIAM GORE**<br><br>Hon. Daniel E. Butcher |

# Table of Contents

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT..............................................................................1

  A. Gore's Personal Knowledge and Awareness Are Directly at Issue. ...............3

  B. Gore Has Provided Contradictory and Inconsistent Responses to Written

      Discovery that Frustrates Plaintiff's Pursuit of Relevant Evidence Regarding

      Gore's State of Mind.............................................................7

III.   CONCLUSION ........................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Authorities

**Cases**

*Alves v. Riverside Cty.*, No. 519CV02083JGBSHK, 2021 WL 3598728, at **5-6 (C.D. Cal. Apr. 9, 2021).................................................................19

*e.g., Ahlman v. Barnes*, No. 820CV00835JGBSHK, 2021 WL 1570838, at *7 (C.D. Cal. Mar. 9, 2021)...............................................................19

*Est. of Heath v. Pierce Cty.*, No. 3:19-CV-06119-RJB, 2021 WL 1386988, at *2 (W.D. Wash. Apr. 13, 2021) ........................................................3

*Est. of Levingston v. Cty. of Kern*, 320 F.R.D. 520, 526 (E.D. Cal. 2017)...............1

*Est. of Silva by & through Allen v. City of San Diego*, No. 18CV2282-L (MSB) ....2

*Est. of Silva*, 2021 WL 211613 at *4 .................................................................5

*Garcia v. County of Riverside*, case no. ED CV 13-616-JGB (SPx), ECF no. 94 (C.D. Cal. March 21, 2017)...........................................................8

*Givens v. Newsom*, No. 2:20-CV-0852-JAM-CKD, 2021 WL 65878, at *6 (E.D. Cal. Jan. 7, 2021)...............................................................................2

*Givens*, *supra*., 2021 WL 65878, at *6 .............................................................7

*K.C.R. v. Cty. of Los Angeles*, No. CV 13-3806 PSG SSX, 2014 WL 3434257, at *6 (C.D. Cal. July 11, 2014).........................................................2

*Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)) .....9

*Myles v. Cty. of San Diego*, No. 15CV1985-BEN (BLM), 2016 WL 4366543, at *4 (S.D. Cal. Aug. 15, 2016)..........................................................10

*Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993).............................................9

*Starr v. Baca*, 652 F.3d 1202, 1207-09 (9th Cir. 2011).......................................4, 5

## I.      INTRODUCTION

Plaintiff moves to compel the deposition of now-retired Sheriff William Gore.   Plaintiff noticed Sheriff Gore's deposition on February 3, 2022, the effective date of his retirement.   Gore opposes, contending the apex doctrine prohibits his deposition.

Having retired months before the expiration of his term, on the very date the California State Auditor issued a scathing report regarding the grossly deficient care of inmates in Sheriff Gore's custody leading to a disproportionately high rate of death, Gore now invokes the apex doctrine to avoid answering questions regarding his state of mind and personal conduct.   Gore's actions and inactions in the training, control, oversight, and discipline of his subordinates, which caused the injuries suffered by Frankie Greer in this case, are central to his personal liability.   The invocation of the apex doctrine, when Gore is no longer required to attend daily to his duties, is unwarranted.

In this case, Gore has engaged in questionable tactics to avoid clear responses to written discovery. Thus, his attempt to evade providing evidence through deposition may plausibly be construed as an effort to avoid transparency and accountability and in derogation of his obligation to provide relevant evidence.   In order to elicit relevant and admissible evidence regarding Sheriff Gore's personal knowledge and awareness to sustain Plaintiff's claims of individual supervisory liability under 42 U.S.C. § 1983, Plaintiff Frankie Greer respectfully moves this Court to compel the deposition of William Gore.

## II.      ARGUMENT

As Sheriff Gore correctly notes, district courts in the Ninth Circuit have determined the apex doctrine applies to the position of sheriff. *Est. of Levingston v. Cty. of Kern*, 320 F.R.D. 520, 526 (E.D. Cal. 2017)("Notably, courts throughout the Ninth Circuit have determined that the position of sheriff is a high-ranking official to whom the apex doctrine may apply."); *K.C.R. v. Cty. of Los Angeles*,

- 1

No. CV 13-3806 PSG SSX, 2014 WL 3434257, at *6 (C.D. Cal. July 11, 2014) (collecting cases in which district courts have found a sheriff is a high-ranking government official entitled to protection under the apex doctrine).  Courts in this district have specifically found that the apex doctrine applies to Sheriff Gore.  *See*, *e.g.*, *Est. of Silva by & through Allen v. City of San Diego*, No. 18CV2282-L (MSB), 2021 WL 211613, at *3 (S.D. Cal. Jan. 21, 2021) ("Based on the foregoing, the Court finds Gore is sufficiently high-ranking to warrant application of the apex doctrine."); *Myles v. Cty. of San Diego*, No. 15CV1985-BEN (BLM), 2016 WL 4366543, at *4 (S.D. Cal. Aug. 15, 2016) (finding Sheriff Gore to be a high-ranking government official).

"Two reasons underlie the reluctance of courts to allow discovery of high-ranking officials. The first is to protect the officials from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits. The second is to protect the officials from unwarranted inquiries into their decision-making process." *Coleman v. Schwarzenegger*, No. CIV S-90-0520LKKJFMP, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008) (internal citations omitted).

But the public policy concerns underlying the apex doctrine are not implicated when the official is retired.  *See Givens v. Newsom*, No. 2:20-CV-0852-JAM-CKD, 2021 WL 65878, at *6 (E.D. Cal. Jan. 7, 2021) ("several of the doctrine's rationales apply with less force when the proposed deponent is not currently serving in office. For instance, there is no longer a concern that requiring the person to sit for a deposition will pull them away from other duties of public service.").  While courts have recognized the need to protect "highly visible public servants" from unnecessary or harassing discovery requests, *id*. at *7, in this case, Sheriff Gore has not sought a protective order under Fed. R. Civ. P. 26(c) or otherwise articulated any specific concern regarding undue burden, annoyance, or harassment.   Instead, he has broadly asserted the apex doctrine prohibits his

deposition, even as a retired official. *But see Est. of Heath v. Pierce Cty.*, No. 3:19-CV-06119-RJB, 2021 WL 1386988, at *2 (W.D. Wash. Apr. 13, 2021) (permitting deposition of retired sheriff).

### A. Gore's Personal Knowledge and Awareness Are Directly at Issue.

Even if the apex doctrine applies, Plaintiff should be permitted to depose Gore for two reasons: (1) Plaintiff must show Gore was personally aware of unconstitutional conditions of confinement causing a high number of inmate deaths; and (2) Plaintiff has already exhausted less intrusive discovery methods by propounding written discovery to Gore who has responded with vague, contradictory, and evasive answers, frustrating Plaintiff's pursuant of relevant information. *See In re Google Litig.*, No. C 08-03172 RMW PSG, 2011 WL 4985279, at *2 (N.D. Cal. Oct. 19, 2011)("In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods. Absent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition.")(internal footnotes and citations omitted).

Plaintiff Frankie Greer's theory of individual supervisory liability against Gore is premised on culpable inaction under *Starr v. Baca*, 652 F.3d 1202, 1207-09 (9th Cir. 2011) (Sheriff Baca may be found "'liable in his individual capacity for his own culpable action *or inaction* in training, supervision, or control of his subordinates.'") (emphasis in original). In *Starr*, plaintiff Starr alleged "Sheriff Baca's knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his subordinates, coupled with his inaction, amounted to acquiescence in the unconstitutional conduct of his subordinates." *Id*. at 1208. Starr made extensive allegations of specific incidences of death and violence at the Los Angeles County jails and referenced reports documenting the high rate of death and serious injury. *Id*. 1209-1212.

- 3 -

Plaintiff alleged these incidences gave Baca notice of "systemic problems in the county jails under his supervision that have resulted in deaths and injuries." *Id*. at 1216. Yet, Baca failed to "take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware." *Id*. The Ninth Circuit found Starr's allegations "plausibly suggest that Sheriff Baca acquiesced in the unconstitutional conduct of his subordinates, and was thereby deliberately indifferent to the danger posed to Starr" because there was "no 'obvious alternative explanation'" why "Sheriff Baca took no action to stop his subordinates' repeated violations of prisoners' constitutional rights despite being repeatedly confronted with those violations[.]" *Id*. For these reasons, the Ninth Circuit held Starr had properly stated a claim of supervisory liability for deliberate indifference. *Id*. at 1208.

In its order denying the motion to dismiss the complaint by Gore and other supervisory defendants, the district court made clear the following § 1983 causes of actions against Gore and the other individual supervisory defendants remained viable: (1) failing to properly report and respond to serious medical needs; (2) failing to properly train staff; and (3) failing to properly supervise and discipline staff. Order, ECF no. 9, at pp. 7-15. The district court noted supervising defendants, including Gore, "knew or should have known that jail staff did not properly enter information into the JIMS system and did not properly communicate critical medical information to other jail staff as to violate the constitutional rights of inmates. . . . Plaintiff has alleged that jail staff repeatedly failed to input and communicate medical needs of inmates, that the Supervising Defendants were aware of the problem and did nothing, and that the failure to take corrective action led to the denial of adequate medical care to the Plaintiff. These allegations plausibly show a causal connection between the Individual Defendants' inaction and Plaintiff's injuries." *Id*. at p. 11.

As the district court's order makes clear, Sheriff Gore's knowledge and awareness of prior incidences of harm to inmates is directly implicated in Plaintiff's claims: "Here, Plaintiff has identified repeated failures to properly communicate medical information and emergencies which harmed other inmates. These deficiencies were known or should have been known by the Individual Defendants and the failure to remedy the constitutional violations by providing adequate training plausibly led to Plaintiff's injuries." *Id*. at 13.  *See also Est. of Silva*, 2021 WL 211613 at *4 ("Accordingly, Gore's lack of direct knowledge of the events that directly caused Paul Silva's death does not immunize him from deposition, because he has knowledge of other directly relevant facts, namely those that relate to his individual liability in this case based on his awareness and disregard of unconstitutional dangers to Paul Silva. Whether he claims or disclaims such awareness, Gore undoubtedly has personal knowledge of his own state of mind and actions, which are directly relevant to Plaintiffs' case against him.").

Additionally, Gore's public statements indicate he has unique, personal knowledge of the circumstances regarding the deaths of inmates in custody.  On February 3, 2022, the same date as Sheriff Gore's retirement, the California State Auditor issued a report regarding its audit of in-custody deaths at the San Diego County jails.  Michael Tilden, the Acting California State Auditor, noted in his public letter to the Governor and State Legislature that the report "details our conclusion that the Sheriff's Department has failed to adequately prevent and respond to the deaths of individuals in its custody.  From 2006 through 2020, 185 people died in San Diego County jails – one of the highest totals among counties in the State."  Michael Tilden, public letter dated February 3, 2022, available at: https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf.[1]  Gore personally signed

---

[1] The PDF of the State Auditor's report contains an outline or index on the left column for ease of reference and navigation.  All page numbers referenced are to

the San Diego County Sheriff's Department response to the State Auditor's report. *See* San Diego County Sheriff's Department's response to the State Auditor's report, dated January 14, 2022, signed by Sheriff Gore at p. 83, https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf.[2]  Gore's letter evidences his personal awareness of details regarding in-custody deaths because he states "[n]atural deaths comprise nearly half, the highest percentage, of in-custody deaths identified by the auditors . . . [s]imilarly, while accidental deaths account for 31 of the total in-custody deaths during the audited period, the draft report does not identify any medical care that was "inadequate" resulting in an individual's death.  As the auditors are aware, most of the accidental deaths were the result of individuals overdosing on drugs, not due to 'inadequate' medical care." *Id.* at p. 96.

The State Auditor's report underscores the gravity of Plaintiff's § 1983 claims against Gore in his individual capacity.  While some district courts have extended the apex doctrine to retired officials to protect them from unnecessary and harassing discovery requests, *see Givens*, *supra*., 2021 WL 65878, at *6, the State Auditor's report demonstrates Plaintiff's claims are neither "unnecessary" or intended to simply harass Sheriff Gore.  The public letter written by the California State Auditor urges the Legislature to intervene to protect inmate safety: "In light of the ongoing risk to inmate safety, the Sheriff's Department's inadequate response to deaths, and the lack of independent oversight, we believe that the Legislature must take action to ensure that the Sheriff's Department implements meaningful changes."  Michael Tilden, public letter dated February 3, 2022,

---

the page numbers appearing on the top left or top right corner of the State Auditor's Report.

[2] As discussed below, Plaintiff propounded Requests for Admission (Set Two) no. 14 to Gore asking him to admit the letter he signed to the California State Auditor was genuine.  Gore objected on the basis of relevancy and provided no response.

https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf.  In its comments regarding the Sheriff's Department's response to the State Auditor's report, the State Auditor notes:

> Even though the Sheriff's Department was reviewed by external entities, we found it has failed to implement key recommendations from external entities, including recommendations from the San Diego County Grand Jury, CLERB, Disability Rights California, and a suicide prevention consultant, as we describe on page 38.

> Some of the recommendations that the Sheriff's Department failed to implement are related to weaknesses in its policies and procedures that we identify in this report. **Accordingly, we are concerned about whether the Sheriff's Department will make meaningful changes to address these systemic weaknesses.**

California State Auditors Report 2021-109, https://www.auditor.ca.gov/pdfs/reports/2021-109.pdf, at p. 119-120 (emphasis added).

While the apex doctrine may be applied to protect public officials, 42 U.S.C. § 1983 embodies the countervailing policy objective of holding public officials accountable for legitimate constitutional harms.  Retired officials who no longer hold public office should not be permitted to invoke the apex doctrine to avoid depositions when plaintiffs have stated viable, genuine claims of constitutional injury.

## B. Gore Has Provided Contradictory and Inconsistent Responses to Written Discovery that Frustrates Plaintiff's Pursuit of Relevant Evidence Regarding Gore's State of Mind.

To ascertain Sheriff Gore's personal awareness and knowledge of prior incidences of harm to inmates related to the denial of medical care, Plaintiff has propounded written discovery including Special Interrogatories and two sets of

Requests for Admissions.  But written discovery responses are a poor substitute for a deposition because they can be crafted by an attorney without any opportunity for follow-up questions.  *See Garcia v. County of Riverside*, case no. ED CV 13-616-JGB (SPx), ECF no. 94 (C.D. Cal. March 21, 2017)[3] ("The court recognizes that answers to interrogatories may generally be an inadequate substitute for deposition testimony . . . . Plaintiff reasons serving interrogatories would be inadequate because it would amount to a delay (which is of particular concern in this case, as discussed below), and would be answered by Baca's attorney without opportunity for follow-up questions.  The court agrees interrogatories are not a reasonable substitute for a deposition of Baca.") (*citing Shoen v. Shoen*, 5 F.3d 1289, 1297 (9th Cir. 1993) ("Written interrogatories are rarely, if ever, an adequate substitute for adeposition."); and *Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989)).  In this case, Gore's responses to written discovery requests demonstrate how answers to interrogatories and requests for admissions are an inadequate substitute for deposition testimony because there is no opportunity for Plaintiff to ask follow-up questions, or to confront a witness regarding inconsistent responses.

For example, Sheriff Gore's responses on the scope of his responsibilities and duties as sheriff are vague and evasive.  On one hand, Sheriff Gore appears to contend that he is not responsible for establishing policy and procedures at the San Diego County Sheriff's Department:

**REQUEST NO. 9:**

ADMIT you are responsible for establishing policy and procedures at the San Diego County Sheriff's Department.

**RESPONSE TO REQUEST NO. 9:**

---

[3] Because Plaintiff's counsel has been unable to find a Westlaw electronic citation for this opinion, a copy of the Central District of California's order is submitted concurrently with this motion as Exhibit 8.

1
2
3
4
5
6
7

    Responding party objects to this request for admission because it calls for a legal conclusion, compound, vague and ambiguous as to "establishing policy and procedures." Without waiving said objection, admit that I am the elected Sheriff of San Diego County Sheriff's Department that oversees the San Diego County Sheriff's Department; staff oversee the day-to-day operations and the development and implementing of policies and procedures at the San Diego County Sheriff's Department.

8

(Exhibit 3)

9
10
11
12
13
14
15

  Yet, Gore invokes the apex doctrine to protect him as a high ranking official, which requires the factual predicate that he is the chief policy maker. *See Myles v. Cty. of San Diego*, No. 15CV1985-BEN (BLM), 2016 WL 4366543, at *4 (S.D. Cal. Aug. 15, 2016) ("Plaintiff acknowledges that Sheriff Gore is the San Diego Sheriff's Department's chief policy maker and highest ranking government officer. As such, the Court finds that Sheriff Gore is a high-ranking government official.") (internal citation omitted).

16
17
18
19
20
21

  Furthermore, while apparently denying that he is responsible for the development and implementation of policies and procedures at the San Diego County Sheriff's Department in response to Plaintiff's Request for Admission No. 9, Gore then goes on to state that he approves changes that are made to the Sheriff's Department Policy and Procedure Manual in response to interrogatory no. 6:

22
23
24
25
26
27
28

    **INTERROGATORY NO. 6**:

    For the period of March 1, 2014 to March 1, 2018, identify each incident in which YOU adopted CLERB's recommendation for a policy change. "Identify" in this interrogatory means to provide the first and last name of the decedent/ detainee/ arrestee/ suspect/ CLERB complainant whose interaction with Sheriff's Department sworn staff led to the incident that was the subject of CLERB's investigation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUPPLEMENTAL   RESPONSE   TO   SPECIAL INTERROGATORY NO. 6:**

Responding party objects to the request on the grounds that it is beyond the scope of permissible discovery because the request is not reasonably related to any party's claim or defense, is overbroad as to time and unduly burdensome, and is not proportional to the needs of the case in light of the factors set forth in Federal Rules of Civil Procedure, Rule 26(b )( 1).

Responding party further objects that this interrogatory seeks information protected from disclosure in that they contain information pertaining to remedial measures and disciplinary recommendations, materials protected from disclosure by the deliberative process, self-critical analysis, required reports, and official information privileges, and privileged information subject to disclosure under California Penal Code section 832.7(a) and Evidence Code section 1043.  Responding party further objects that the request violates the right of privacy of third parties under the United States and California constitutions.

**Without waiving said objection, I do not adopt CLERB's policy recommendations. I approve official changes that are made to the Sheriffs Department Policy and Procedure Manual**.

Exhibit 5 (emphasis added).

Plaintiff has no opportunity to confront the witness regarding this contradiction – according to Gore, he is not responsible for establishing policy and procedure at the Sheriff's Department yet, simultaneously, he has to approve changes to the Sheriff's Department Policy and Procedure Manual.

Moreover, Gore's responses to Plaintiff's written discovery requests are internally inconsistent.  On one hand, Gore denies reviewing findings from the Citizen's Law Enforcement Review Board (CLERB) that a Sheriff's Department deputy violated policy or committed misconduct, and denies reviewing CLERB recommendations for policy changes:

**REQUEST NO. 4:**

- 10

ADMIT you review sustained findings from the Citizen's Law Enforcement Review Board (CLERB) concluding a Sheriffs Department deputy violated policy or committed misconduct.

**RESPONSE TO REQUEST NO. 4:**
Deny.
**REQUEST NO. 5:**
ADMIT you review recommendations from CLERB for policy changes.
**RESPONSE TO REQUEST NO. 5:**
Deny.

Exhibit 3.

But when asked if he has adopted any of CLERB's recommendations for policy changes in interrogatory no. 6, Gore gives a vague supplemental response that leaves open the possibility that he has adopted CLERB's recommendations for policy changes: "I do not adopt CLERB's policy recommendations. I approve official changes that are made to the Sheriff's Department Policy and Procedure Manual." (Exhibit 5).

The purpose of Plaintiff's special interrogatory no. 6 is to determine whether Gore was aware of CLERB investigations of injury or harm to inmates; whether he was aware of CLERB's recommendations of policy changes; and whether he implemented those policy changes. Plaintiff specifically inquired about CLERB's communications to the Sheriff's Department because the district court found information from CLERB as persuasive evidence of notice of the Sheriff's Department's deficiencies. *See* Order, ECF no. 16, at p. 11. During a deposition, Gore's supplemental response to Interrogatory No. 6 would prompt a follow-up question – did Gore approve changes to the Sheriff's Department Policy and Procedure Manual that were prompted by CLERB recommendations? Yet, by responding to written discovery requests, Gore is able to give an ambiguous answer that deprives Plaintiff of the ability to ask follow-up questions to establish evidence of Gore's notice of deficiencies identified by CLERB.

- 11

Gore's responses to written discovery indicate his responses were drafted in an artful manner by a lawyer to deprive Plaintiff of evidence of Gore's personal knowledge.  For example, Gore denies being personally responsible for training employees of the San Diego County Sheriff's Department, and appears to deny responsibility for disciplining employees:

**REQUEST NO. 10:**
ADMIT you are responsible for training employees of the San Diego County Sheriff's Department.
**RESPONSE TO REQUEST NO. 10:**
Responding party objects to this request for admission because it calls for a legal conclusion, vague and ambiguous as to "training employees." Without waiving said objection, admit that I am the elected Sheriff of the San Diego County Sheriff's Department that oversees the San Diego County Sheriff's Department; I do not personally train employees at the San Diego Sheriff's Department; training is provided by training units.

**REQUEST NO. 11:**
ADMIT you are responsible for disciplining employees of the San Diego County Sheriff's Department.
**RESPONSE TO REQUEST NO. 11:**
Responding party objects to this request for admission because it calls for a legal conclusion, vague and ambiguous as to "responsible for disciplining employees." Without waiving said objection, admit that I am the elected Sheriff of the San Diego County Sheriff's Department that oversees the San Diego County Sheriff's Department; I do not personally discipline employees at the San Diego Sheriff's Department, but approve discipline of employees.

Exhibit 3.

Gore's supplemental response to special interrogatory no. 14 demonstrates the use of evasive language in an attempt to deflect responsibility: he denies causing Sheriff's Department employees to be disciplined, although he does approve recommendations for discipline – which would then, of course, causes them to be disciplined.

> **SPECIAL INTERROGATORY NO. 14:**
> For the time period of March 1, 2013 to March 1, 2018, what was the total number of Sheriffs Department employed medical personnel, working at the Jails, whom you caused to be disciplined, sanctioned, and/or reprimanded?
> **SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 14:**
> Responding party objects to the request on the grounds that it is beyond the scope of permissible discovery because the request is not reasonably related to any party's claim or defense, is overbroad as to time and unduly burdensome, and is not proportional to the needs of the case in light of the factors set forth in Federal Rules of Civil Procedure, Rule 26(b )(1 ). Responding Party further objects to the interrogatory on the grounds it seeks privileged information protected from disclosure by the deliberative process, self-critical analysis, and official information privileges and privileged material subject to disclosure under California Penal Code section 832.7(a) and Evidence Code section 1043. Responding party further objects that the request violates the right of privacy of third parties under the United States and California constitutions.
>
> Without waiving said objection, **I do not cause Sheriff's Department employed medical personnel, working at the Jails, to be disciplined, sanctioned, and/or reprimanded. I approve recommendations for discipline**. I am personally unaware of the total number of Sheriff's Department employed medical personnel, working at the Jails, that have been disciplined from the

- 13

time period of March 1, 2013 to March 1, 2018. **Further, not all records of discipline still exist for that time period which would enable me to answer this interrogatory**.

Exhibit 5 (emphasis added).

This supplemental response also demonstrates the limited utility of interrogatories because Plaintiff is unable to ask a series of follow-up questions on a material subject – why there are no records of personnel discipline for a 5-year time period, from March 2013 to March 2018.  This is particularly concerning because the Sheriff's Department had been advised in June 2007 to create a comprehensive database of employee performance issues to facilitate institutional oversight of staff.  In a June 25, 2007 audit of use of force incidences at the San Diego County Sheriff's Department, the audit, conducted by the OIR Group, recommended the Sheriff's Department implement an "Early Intervention System" to better monitor, supervise, and discipline its employees:

> Collecting information about deputy activity and behavior in a central repository and updating it continuously on a flexible and accessible database has proven utility at many law enforcement agencies. Agency managers can evaluate what a specific officer is doing in the field over time and can place that officer's actions or history in context with other similarly situated employees. They can track what types of force are used with what frequency by employee or by station or region. They can access disciplinary histories as well as the fuller picture of commendations and complaints garnered by an employee. This type of database adds consistency and longevity to the collective institutional knowledge about individual employees as well as trends and patterns in behavior. It can improve the fairness of disciplinary processes and can provide the Department with a way to identify employees in need of training, mentoring or corrective action outside of the disciplinary system.

Michael Gennaco, Stephen Connolly, Robert Miller, OIR Group, *Use of Force Audit of the San Diego County Sheriff's Department, June 25, 2007*, at pp. 151-152.[4]

Gore's response indicates that discipline records of medical personnel are not maintained, stored, organized, or accessible in any way – making it difficult to identify employees who may need training, oversight, or other corrective action.

Moreover, Gore's responses to Plaintiff's written discovery indicate the need for follow-up questions to parse through issues of knowledge and awareness. For example, in response to Plaintiff's Requests for Admission nos. 9 – 11, Gore appears to deny that he is responsible for establishing policy and procedures at the Sheriff's Department because "staff oversees the day-to-day operations and the development and implementing of policies and procedures"; appears to deny that he is responsible for training Sheriff's Department employees because "training is provided by training units"; and appears to deny that he is responsible for disciplining employees because "I do not personally discipline employees at the San Diego County Sheriff's Department, but approve discipline of employees." (Exhibit 3). Yet, Gore's supplemental response to special interrogatory no. 8 states he meets regularly with Sheriff's Department staff members, including monthly meetings with leadership, biweekly meetings with command staff, and various meetings with the Detentions Services Bureau Assistant Sheriff – possibly indicating Gore may be regularly apprised of issues of training, policy, and

---

[4] The OIR Group's audit was previously available on the Sheriff's Department's website at https://www.sdsheriff.net/documents/oir_full.pdf as it formed the basis of plaintiffs' *Monell* claim against the County of San Diego in a separate action. *See* Declaration of Grace Jun in Estate of Paul Silva v. County of San Diego, case no. 18-cv-2282-L-MSB, ECF no. 136-2, at ¶ 8; *see also* plaintiffs' Exhibit 6 at ECF no. 136-8 in 18-cv-2282 (containing the table of contents and excerpts from the OIR report). The OIR report is no longer publicly available on the Sheriff's Department's website, although the undersigned Plaintiff's counsel retains a complete PDF.

discipline at these meetings.  (Exhibit 5).  Because Plaintiff is not able to ask additional questions in a deposition, he must then propound more written discovery, which can become mired in time-consuming discovery disputes.

Gore's responses to Plaintiff's Requests for Admissions (Set Two) demonstrate the ability of a party to use written discovery to avoid providing substantive responses – generating further litigation and discovery disputes.  *See* Exhibit 7.  Gore's responses also illustrate disadvantage of written discovery to effectively confront the witness to elicit information regarding his personal knowledge.  At issue in this case is whether Sheriff's Department employees adequately input the order for a lower bunk due to Mr. Greer's seizure disorder in the Jail Information Management System (JIMS), and whether other employees failed to access or review the lower bunk order in JIMS.  To demonstrate Gore was aware of deficiencies in the JIMS system, and aware that jail staff had trouble sorting and retrieving that information, Plaintiff's Second Amended Complaint (SAC) references a Grand Jury report on JIMS.  (SAC, ECF no. 59, ¶ 118).  That Grand Jury report was issued on June 1, 2016:
https://www.sandiegocounty.gov/content/dam/sdc/grandjury/reports/2015-2016/DetentionFacilitiesReport.pdf.  The Sheriff's Department responded to that Grand Jury report in a August 1, 2016 letter, addressed to the Honorable Jeffrey B. Barton, signed by Gore entitled *Response to San Diego County Grand Jury Report: "Detention Facilities-San Diego County" dated June 1, 2016*:
https://www.sandiegocounty.gov/content/dam/sdc/grandjury/reports/2015-2016/DetentionFacilitiesReport_response1.pdf.  Plaintiff propounded Request for Admission no. 18 to ask Gore to admit the genuineness of his letter dated August 1, 2016, which would establish that Gore had read the June 2016 Grand Jury report that referenced deficiencies of JIMS.  Gore refused to admit his letter dated August 1, 2016, maintained on a San Diego County website, was genuine:

- 16

**REQUEST NO. 18:**

ADMIT Exhibit 5 attached hereto, a letter signed by YOU dated August 1, 2016, to the Honorable Jeffrey B. Barton, is genuine.

**RESPONSE TO REQUEST NO. 18:**

Objection. This request is not within the permissible scope of discovery under Fed. R. Civ. Pro., Rule 26(b)(1) because the request is not relevant to any claim or defense in this action.

(Exhibit 7).

The purpose of Plaintiff's Request for Admissions (Set Two) nos. 14 – 18 is to establish that Gore: (1) was aware of external reports critical of the provision of medical services in the County jails, including Grand Jury reports and the State Auditor's report, and (2) personally reviewed these reports because he signed letters responding to these external reports. Instead of admitting the genuineness of his responses maintained on County or State websites, Gore asserts that these Requests for Admissions are not relevant or within the permissible scope of discovery. That assertion is not in good-faith in light of the district court's rejection of Defendants' own argument that only reports can place a supervisory official on notice regarding constitutional deficiencies:

Defendants seek to distinguish *Starr* by noting that the Los Angeles jail received several reports, including one from the Department of Justice in 1996, about the assaults that had occurred in the jail, but did nothing to rectify them. *Id.* at 1209. To be placed on notice, Defendants assert they had to receive and ignore official reports. Under this view, media reports, statistics, and Citizen Law Enforcement Review Board ("CLERB") reports cited by Plaintiff are not enough to provide adequate notice. ECF No. 14 at 3.

The Court rejects the view that only official internal and external reports can provide notice to supervisory officials to support a constitutional violation under

- 17 -

> supervisory liability. What is important is whether supervisory officials are made aware of problems that require attention by supervisory officials in order to protect the lives of inmates.

Order, ECF no. 16, at 10.

The factual inconsistencies in Gore's responses to written discovery, and his evasiveness in responding to written discovery, demonstrates Plaintiff cannot gather information regarding Gore's personal knowledge and awareness through less intrusive methods. *See, e.g., Ahlman v. Barnes*, No. 820CV00835JGBSHK, 2021 WL 1570838, at *7 (C.D. Cal. Mar. 9, 2021) (permitting deposition of Orange County Sheriff Barnes because Sheriff had unique personal knowledge and plaintiff had exhausted other less intrusive methods by deposing other FRCP 30(b)(6) witnesses who provided factually inconsistent responses); *Alves v. Riverside Cty.*, No. 519CV02083JGBSHK, 2021 WL 3598728, at **5-6 (C.D. Cal. Apr. 9, 2021) (permitting deposition of Riverside County Sheriff Bianco because Sheriff had unique personal knowledge and depositions of other witnesses produced contradictory information).

Moreover, Gore has issued responses to written discovery to defeat Plaintiff's claims on summary judgment. Now, using his written discovery responses, Gore will claim that he is not responsible for training or disciplining Sheriff's Department personnel; that he does not review CLERB reports or recommendations; and that he is not responsible for developing or revising policy at the Sheriff's Department. Gore has refused to admit the genuineness of letters he has signed responding to the external reports of jail conditions issued by the State Auditor or San Diego County Grand Jury. Gore has weaponized his purported lack of knowledge by depriving Plaintiff of the ability to cross-examine and confront him.

III.     CONCLUSION

Because the apex doctrine is not intended to facilitate a party's abuse of legitimate discovery inquiries, Plaintiff respectfully  this Court compel the deposition of retired Sheriff William Gore.

Respectfully Submitted,

Dated March 25, 2022              **IREDALE AND YOO, APC**

s/ Grace Jun
EUGENE IREDALE
JULIA YOO
GRACE JUN
Attorneys for Plaintiff FRANKIE GREER

- 19