# EXHIBIT C

Transcript of the Testimony of:

# SERINA ROGNLIEN-HOOD

GREER

vs.

COUNTY OF SAN DIEGO, et al.

January 6, 2022

Volume 1



IMAGINE REPORTING

Serina Rognlien-Hood

30(b)(6)
January 6, 2022

```
 1                  UNITED STATES DISTRICT COURT
 2                 SOUTHERN DISTRICT OF CALIFORNIA
 3
 4   _____
                                  )
 5   FRANKIE GREER,               )
                                  )
 6                                )
                 Plaintiff,       )
 7                                )     Case No.
         vs.                      )     19-cv-0378-GPC-DEB
 8                                )
     COUNTY OF SAN DIEGO, ET      )
 9   AL.,                         )
                                  )
10                                )
                 Defendants.      )
11   _____)
12
13         VIDEO-RECORDED/VIDEOCONFERENCE DEPOSITION OF
14   SERINA ROGNLIEN-HOOD, commencing at the hour of
15   1:01 P.M., Pacific Daylight Time, Thursday,
16   January 6, 2022, at La Mesa, California, before Cynthia
17   Denise Stires, Certified Shorthand Reporter in and for
18   the State of California.
19
20
21
22
23
24
25
```

Serina Rognlien-Hood

30(b)(6)
January 6, 2022

```
 1   APPEARANCES

 2   FOR THE PLAINTIFF:

 3              Iredale and Yoo, APC
                BY:  Eugene Iredale, Esq.
 4                   Grace Jun, Esq.
                105 West F Street, Fourth Floor
 5              San Diego, California 92101
                619.233.1525
 6              egiredale@iredalelaw.com.
                gjun@iredalelaw.com
 7

 8   FOR THE DEFENDANT COUNTY OF SAN DIEGO:

 9              McDougal Love Boehmer Foley Lyon
                BY:  Carrie Mitchell, Esq.
10              8100 La Mesa Boulevard, Suite 200
                La Mesa, California 91942
11              619.440.4444
                cmitchell@mcdougallove.com
12

13   FOR THE DEFENDANT MAURICIO MARTINEZ AND COAST
     CORRECTIONAL MEDICAL GROUP:
14
                Lotz Doggett & Rawers
15              BY:  Brian Bloodworth, Esq.
                101 West Broadway, Suite 1110
16              San Diego, California  92101
                619.233.5565
17              bbloodworth@ldrlaw.com

18   ALSO PRESENT:

19              Shayne Davidson, Video Technician

20

21

22

23

24

25
```

```
 1   they add is lower bunk, how is that entered into the
 2   computer system?
 3        A.   So if the nurse would pick lower bunk, that's
 4   the instruction she picks.  It pre-populates.  It says,
 5   lower bunk.  The start date is the time that she puts
 6   there.
 7             And then at the bottom of the page -- I can't
 8   remember what it's called or whatever at the bottom,
 9   but it's added.  That is now added into that patient's
10   medical instruction.
11        Q.   And who has access to the medical
12   instructions, if you know?
13        A.   When you say "access," only nursing staff can
14   go into a medical instruction and add a medical
15   instruction.  But to review medical instructions,
16   anybody with access to JIMS can view medical
17   instructions -- view medical instructions.
18        Q.   Very good.
19             Now, in that regard, let me ask you if I
20   could refer you to Exhibit 4, if you have that before
21   you.
22        A.   Yeah.
23        Q.   Now, let me just ask you, if you would, to
24   look at the first page, Page 4.1.  At the top it says,
25   San Diego Sheriff's Department Medical Chart, and the
```

```
 1   in there for something -- say you're in a motor vehicle
 2   accident, and I need to put a duration in there for
 3   seven days because you have a crutch, you have crutches
 4   for seven days, I can put a seven-day time frame in
 5   there.
 6              So in seven days, that medical instruction is
 7   complete, so it would switch to completed.  But it's
 8   going to keep a historical thing saying -- the
 9   instructions are going to be historical, because that
10   instruction was put in there.  So the instruction is
11   never going to go away.
12              It will also will say complete when a patient
13   is released from custody.  So it doesn't disappear.  So
14   if you come into custody and are released from custody,
15   that instruction is now complete because we feel we
16   completed that instruction because you are now released
17   from custody even though that instruction wasn't active
18   when you were released from custody, but now that
19   you're out of custody.  It is complete.
20       Q.   All right.  But if the person then comes back
21   into custody, the nursing staff would be able to access
22   the old instructions even though they were complete?
23       A.   Yes, but she would have to re-enter -- a
24   nurse would have to re-enter them.  They do not
25   automatically restart.
```

```
 1        A.   So from my understanding -- I can only speak
 2   from a nurse's standpoint.  Once we put it in the
 3   instructions, there's a way -- and under the medical
 4   instructions, there is a way that JPMU can access that
 5   information.
 6             I can't speak upon which -- how they access
 7   it, but what we put in as a medical instruction does
 8   communicate with JIMS or JPMU, and other sworn staff
 9   can access it, yes.
10        Q.   How do you know that?
11        A.   Because there's a way to see it where
12   everybody can see it.  Like I said, I don't know how
13   JPMU looks at it specifically, but I know there's a
14   place where everybody can see it that has access to
15   JIMS.
16        Q.   Is there any special place on the computer
17   programs that are available to the nursing staff where
18   if you want to make sure that information is conveyed
19   and not kept private, not kept in confidence because
20   it's medical information, but conveyed out, where you
21   go to that particular part or section of the computer
22   program?
23        A.   Well, I apologize if I'm using the wrong
24   name.  But there's a -- we call it the face sheet.  So
25   in JIMS, if you right-click, it gives you a face sheet,
```

1   nursing staff does, so...
2           But I do know there's a list that can be
3   generated, yes.
4        Q.   And do you know how that list is generated,
5   understanding that the nursing staff doesn't itself
6   generate that list?
7        A.   Yes, I know how that list is generated.
8        Q.   Tell me how it's generated.
9        A.   You go to JIMS report.  It pulls up a whole
10  list of -- it pulls up a nice website.  Then there's
11  instructions.  You pull up active instructions.  You
12  can pull up the facility you're looking at and which
13  instructions you want.  So that way you can pull up a
14  specific floor, a specific facility, our specific
15  instructions.  And then you run that list, whatever
16  you're pulling up.
17       Q.   And so you would be able, if you had access
18  to the JIMS computer, to determine all the persons on
19  the floor for whom a lower tier or lower bunk
20  recommendation had been made?
21       A.   As long as it was active, yes.
22           MR. IREDALE:  All right.  Well, thank you so
23  much.  That's all I have.  I appreciate your coming,
24  and I want to wish you a happy new year.
25           THE WITNESS:  You too.  Thank you.

1    A.   Yes.

2    Q.   And does that specifically need to be input
3 into this in a particular way so that it will be made
4 available -- the information made available -- to the
5 corrections staff?

6    A.   They're put in through the -- they're put in
7 through the medical encounter through the instructions,
8 and they have to be active.  Once they're no longer
9 active, they will not be seen under medical
10 instructions.

11    Q.   But you told me that even though they're no
12 longer seen, they're not deleted.  They're not --

13    A.   Under -- they're no longer deleted under the
14 medical chart, but they're not active, so you're not
15 going to see them on this screen.  They -- sworn will
16 only see active medical instructions.

17       But in our medical chart, we keep historical
18 data, but sworn will not see historical data.

19    Q.   Now, let me ask you:  Are you aware that
20 there is every shift -- at the beginning of every
21 shift, there is a list generated which contains the
22 names of inmates on each floor who are to be housed in
23 lower bunks or lower tiers?

24    A.   That's a sworn task.  I've heard they do
25 that, but that's not a task that I as a nurse or my

1          CERTIFICATE OF COURT REPORTER

2

3          I, CYNTHIA DENISE STIRES, Certified Shorthand
    Reporter, in and for the State of California,
4   Certificate Number 4472, do hereby certify:

5          That the witness in the foregoing deposition
    was by me first duly sworn to testify to the truth, the
6   whole truth, and nothing but the truth; that said
    deposition was taken before me at the time and place
7   therein set forth, and reported by me in shorthand and
    transcribed, through computer-aided transcription,
8   under my direction; and that the above and foregoing
    pages are a true record of the testimony elicited and
9   proceedings had at said deposition.

10         ()   Reading and signing was requested.

11         ()   Reading and signing was waived.

12         (X)  Reading and signing was not requested.

13         Should the signature of the witness not be
    affixed to the deposition, the witness shall not have
14  availed himself/herself of the opportunity to sign or
    signature was waived.
15
           I do further certify that I am a
16  disinterested person and am in no way interested in the
    outcome of this action or connected with or related to
17  any of the parties in this action or to their
    respective counsel.
18

19         In witness whereof, I have hereunto set my
    hand this 10th day of January, 2021.
20
                    _____
21                  CYNTHIA DENISE STIRES, CSR NO. 4472

22

23

24

25