# EXHIBIT K

# EXHIBIT "J"

**Kathryn J. Wild, RN, MPA, CCHP-RN**
**10580 N. McCarran Blvd, #115, Suite 504, Reno, NV 89503**
**Phone: 909-720-0961**

---

# Expert Report

## I.  INTRODUCTION

My name is Kathryn J. Wild. My business address is 10580 N. McCarran Blvd, #115, Suite 504, Reno, NV 89503. I was retained by McDougal Love Boehmer Foley Lyon & Canlas to consult in the case of <u>Frankie Greer, Plaintiff, v County of San Diego, et al.</u>

I am a licensed Registered Nurse with a master's degree in Public Administration and Certified as a Corrections Healthcare Professional - RN by the National Commission on Correctional Healthcare (NCCHC) concerning the delivery of specialized nursing care in correctional facilities. I have worked in the field of Corrections Healthcare for over 35 years as a Registered Nurse, and Health Services Administrator responsible for the administration of healthcare, training and supervision of healthcare employees, as well as the formation and implementation of policy applicable to staff who provide healthcare to persons housed in corrections facilities. My Curriculum Vitae and fee schedule are attached. I am retained as an expert witness who is knowledgeable and experienced in the training, supervision and monitoring of healthcare administered to prisoners housed in the setting of a correctional facility, including but not limited to the areas of corrections nursing care, corrections healthcare, corrections healthcare administration, corrections healthcare policy formation and implementation, and the implementation and maintenance of policies and procedures that comply with national corrections standards, including but not limited to those by the NCCHC, the American Corrections Association (ACA), and the Prison Rape Elimination Act (PREA).

## II.  MATERIALS REVIEWED

In preparation for forming the opinions expressed below, in addition to my experience in the correctional healthcare field, I have reviewed the following materials:

1. <u>Second Amended Complaint,</u>
2. <u>County of San Diego's Response to Cross-Defendant Mauricio Martinez's Interrogatories, Set One,</u>
3. <u>County of San Diego's Response to Cross-Defendant Mauricio Martinez's Request for Admissions, Set One,</u>
4. <u>County of San Diego's Response to Cross-Defendant Mauricio Martinez's Request for Production of Documents, Set One,</u>
5. <u>Documents Produced:</u>
    a. <u>Response 1,</u>
    b. <u>Response 3,</u>
    c. <u>Response 5,</u>
    d. <u>Response 6,</u>
    e. <u>Response 7,</u>
    f. <u>Response 10,</u>
    g. <u>Response 11,</u>

*Greer v CSD*

    6. County Records, Incident Reports & Policies,
        a. Incident Reports – CSD0001-5,
        b. JIMS Records – CSD0006-19,
        c. Housing Placement – CSD00020,
        d. Medical & Psychiatric Intake – CSD0021-37,
        e. Medical Chart – CSD0038-66,
        f. Bunk Policy – CSD0094,
        g. Disabled Inmates Policy – CSD0095-97,
        h. Formulary – CSD00100,
        i. Medical Screening Policy – 00101-103,
        j. Pharmaceutical Policy – CSD00104-118,
        k. Seizure Policy – CSD00119-121,
    7. UCSD Records (Produced by Greer),
    8. Depositions,
        a. Frankie Greer with exhibits,
        b. Macy Germono, RN with exhibits,
        c. Serina Rognlien-Hood, Part I (10/13/20), Nursing Supervisor with exhibits,
        d. Serina Rognlien-Hood, Part II (January 6, 2022),
        e. Mauricio Augusto Martinez, MD with exhibits,
        f. Gabriel Castro 30(b)(6), 1
    9. California Code of Regulations, Title 15, Minimum Standards for Local Detention Facilities,
    10. National Commission on Correctional Health Care (NCCHC) – Standards for Health Services in Jails (2014 Edition)

### III. SUMMARY OF DOCUMENT REVIEW

| Time | Provider/Service | Comments |
|---|---|---|
| **Wednesday, January 31, 2018** | | |
| @ 1530 | Arrest Report CSD0011 | The officer noted that he responded to a report of someone brandishing a weapon (knife). A witness provided a statement that she saw Mr. Greer attack a woman with a metal object then kick her. The woman was found bleeding from the face and was transported to Mercy Hospital. He was arrested for assault with a deadly weapon. |
| @ 1737 | Medical Intake June Cuaresma CSD0021 | Mr. Greer was medically screening at booking and reported a seizure history and taking Keppra. He was noted to be alert and oriented. BP 138/80, P 73, R 17, T 98.2. He was expedited to medical screening. |
| @ 1738 | Intake Triage Note June Cuaresma CSD0038 | S: "I have seizures". I/P claims taking Levetiracetam twice daily for seizures and has been compliant with meds. Last seizure was a few months ago, last dose this morning. Denied suicide intent.<br>O: I/P seen at intake triage. Is ambulatory with steady gait. Is alert, oriented, clam and cooperative. Is verbally responsive |

*Greer v CSD*

| | | |
|---|---|---|
| | | with clear speech. Vital signs taken, afebrile, skin is warm, dry, and non-diaphoretic. In no acute distress.<br>A: Alteration in health maintenance. Risk for injury<br>P: Fit for jail. I/P to proceed to medical screening for further evaluation. Advised I/P to report to staff for any change in condition. I/P verbalized understanding. Intake control deputy and medical screening RN made aware. |
| @ 1959 | Booking Intake Property Inventory<br>CSD0009 | It is noted on the inventory sheet that Mr. Greer did not bring any medications with him into the facility. |
| @ 2055 | Medical Questions<br>Macy Germono, RN<br>CSD0025 | BP 141/89, P 67, R 18, T 96.8, weight 170 pounds. Mr. Greer reported his provider was the VA Hospital at La Jolla. He reported taking Levetiracetam (Keppra) and was noted to be alert and oriented x 4, clean, ambulatory with normal speech and thought process and was cooperative. There were no visible signs of illness. He denied drug and alcohol use. |
| @ 2055 | Psychiatric Questions<br>Macy Germono, RN<br>CSD0035 | Mr. Greer was screened for psychiatric conditions and denied any current psychiatric/mental health problems or taking any psychiatric medications. |
| @ 2101 | Medical Instructions<br>Macy Germono, RN<br>CSD0039 | Mr. Greer was placed on a medical hold, no EMRF (East Mesa Reentry Facility), no facility 8 (behind George Bailey), no SBDF (South Bay Detention Facility), <u>Lower bunk</u>, seizure disorder. |
| | Macy Germono, RN<br>Deposition | RN Germono testified (**page 32**) that it is a requirement for inmates with a seizure disorder to be given a <u>lower bunk</u>. |
| @ 2102 | SNP Seizure DO<br>Macy Germono, RN<br>CSD0040 | For I/P with a different medication other than Dilantin:<br>a) Verify medication orders as per guideline, with I/P's pharmacy or physician<br>b) Contact the on-site or on-call physician for orders of verified medications<br>c) If the medications cannot be verified, contact the on-site or on-call provider for anticonvulsant orders<br>d) Request lower bunk for patient<br>e) Schedule I/P for MD sick call for a follow up evaluation |
| | Release of Information | Signed by patient to obtain records from VA San Diego Healthcare System. |
| @ 2102 | JIMS Medical<br>CSD0018 | RN Germono entered the information into JIMS that Mr. Greer required a Lower Bunk due to a seizure disorder. |
| | Macy Germono, RN<br>Deposition | RN Germono testified (**page 31**) that when she entered the information into JIMS about the seizure disorder and lower bunk, it was available to everyone who uses JIMS. |
| @ 2103 | Medical Screening Progress Note<br>Macy Germono, RN<br>CSD0041 | S: History of seizure disorder, on levetiracetam 250 mg last dose this morning. Patient claims that his last seizure was "almost a year ago" when they gave him Keppra. Clarified with patient since generic for Keppra is Levetiracetam. Patient stated yes, he understood that one and that he gets the generic |

*Greer v CSD*

| | | one and not the branded since Keppra made him "go to the hospital again". Denied any other medical and psych problems. O: A&O x 3, NAD, VSS, asymptomatic<br>A: potential for injury<br>P: <u>lower bunk and tier</u>, MDSC, ROI signed for VA hospital, patient advised to notify staff of change(s) in condition. |
|---|---|---|
| @ 2107 | Addendum<br>Macy Germono, RN<br>CSD0040 | Patient is on Levetiracetam 250 mg BID, complaint with meds |
| @ 2109 | MDSC Schedule<br>CSD0042 | Mr. Greer was scheduled for Level 1 Priority MD Sick Call |
| | Macy Germono, RN<br>Deposition | RN Germono testified (**page 56**) that she scheduled Mr. Greer for an MD Sick Call, not an MD Chart Check. |
| **Thursday, February 1, 2018** |||
| @ 0246 | CXR Done | Negative for tuberculosis |
| @ 0700 | Pending Medical Appointment List<br>RFP- Exhibit 5 | Mr. Greer is noted to be on the MDSC (MD Sick Call) list as a Level 1 patient. There is a handwritten notation "no housing" in red. |
| @ 1100 | Pending Medical Appointment List<br>RFP- Exhibit 6 | Mr. Greer's name does not appear on the MD Chart Check List |
| @ 1113 | MDCC<br>Dr. Martinez<br>CSD0042 | MD Chart Check done. Meds ordered in Sapphire, F/U PRN Keppra ordered |
| | CSD's Response to Cross-Defendant Mauricio Martinez's Interrogatories, Set One, Response #1 | The records indicate that Dr. Martinez ordered medication for plaintiff at 11:15 a.m. on February 1, 2018, through an MD chart check instead of conducting an MD Sick Call appointment and indicated he would see the patient as needed. Only a physician can convert a MD Sick Call to a MD chart check. Because Dr. Martinez chose not to see Mr. Greer during the morning MD sick call appointment, Greer was still on the MD sick call scheduled for the afternoon. |
| @ 1200 | Pending Medical Appointment List<br>RFP- Exhibit 5 | Mr. Greer is noted to be on the MDSC (MD Sick Call) list as a Level 1 patient. There is a handwritten notation "MDCC" in red. |
| | Dr. Martinez<br>Deposition | Dr. Martinez testified (**pages 36-38**) that Mr. Greer's name was on a task list for a "Chart Check". He simply put in an order and didn't go into the chart because he wasn't seeing the patient. He further testified (**pages 47-48**) that since he did not review the chart, he was unaware of when Mr. Greer's last dose of antiseizure medication had been taken. |
| | CSD's Response to Cross-Defendant Mauricio Martinez's RFA, Set One, Response No. 21 | When a nurse schedules a patient for MDSC, only the physician can make the decision to perform a MDCC instead of MDSC. |

Page 4 of 8

*Greer v CSD*

| @ 1900 | Incident Report Deputy Mendoza CSD0002 | Deputy Mendoza reported that he overheard inmates calling for assistance in Cell #2. He observed Mr. Greer face down on the floor in between the toilet and cell bench. He entered the cell with Deputies Vicencio and Bartee who escorted the other 2 inmates out of the cell. Once Greer's cellmates were escorted away, Deputy Mendoza attempted to gain a response from Greer but was unsuccessful. He was unresponsive with shallow breathing and had blood surrounding his right temple and mouth. Mr. Greer was placed in a recovery position and medical called to respond. |
|---|---|---|
| @ 1930 | Encounter Note Mandown Note recorded on February 2 at 0503 CSD0046 | S/O: Responded to Mandown in 5th floor. Found patient lying in prone position near the toilet commode, unresponsive to verbal and tactile stimuli, with hematoma to his left forehead, no other visible injuries noted, unable to follow commands. Applied C-collar. After approximately 3 minutes, patient had a grand mal seizure for approx. 36 seconds, was turned to his side, O2 via NRB at 15L placed. 911 activated, VSS. Placed patient on back board. Pupil's size 2-3mm noted with sluggish reaction to light. Patient still not responding to verbal and tactile stimuli.<br>A: Alteration in health maintenance<br>P: Paramedics assumed care on their arrival. DHS/Report given. To UCSD via 911, left at approx. **1930 hours**. |
| @ 1948 | UCSD ER Record GREER000476 | 53-year-old male with seizure disorder on Keppra who presented from the jail where he fell out of bed and began having seizures. Was given 8 mg versed in the field for 4 seizures. He was intubated on arrival for a GCS of 3. CT scan showed an acute subarachnoid hemorrhage along the left cerebral sulci and acute subdural hematoma along the left cerebral convexity measuring up to 6 mm in thickness. |
| @ 2305 | Hospital Hold Release Lt. Lovelace CSD0053 CSD0014 | Mr. Greer was released from Sheriff's custody and his property was returned. |

*Greer v CSD*

## IV. DISCUSSION AND OPINIONS

Based on my review of the documents provided to date, my education, training, 35 years of experience in correctional healthcare, and the facts cited above and below, it is my opinion that the care provided to Mr. Frankie Greer by San Diego Sheriff's nursing personnel, while incarcerated in the San Diego County Jail met reasonable and acceptable practices based on all the circumstances presented to them at the time of the care provided, and they were not negligent or indifferent to Mr. Greer's health care needs.

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-02 – "Receiving Screening"** states that receiving screening be performed on all inmates on arrival at the intake facility to ensure that emergent and urgent health needs are met. This standard is intended to fulfill four purposes; 1) to identify and meet any urgent health needs of those admitted, 2) to identify and meet any known or easily identifiable health needs that require medical intervention before the health assessment, 3) to identify and isolate any inmates who appear potentially contagious, and (4) to appropriately obtain a medical clearance when necessary.

**The California Administrative Code, Title 15 – Minimum Standards for Local Detention Facilities, Division 1, Chapter 1, Subchapter 4, § 1207. "Medical Receiving Screening"** states that a screening shall be completed in accordance with written procedures and shall include but not be limited to medical and mental health problems, developmental disabilities, and communicable diseases, including, but not limited to, tuberculosis and other airborne diseases. The screening shall be performed by licensed health personnel or trained facility staff.

**The San Diego County Sheriff's Department Detention Services Bureau – Manual of Policies and Procedures, #M.9 "Intake Medical Screening"**, states that all arrestees presented by arresting agencies shall be medical screened prior to acceptance for booking at a Sheriff's Detention Facility. It further states that all inmates to be housed at a detention facility shall be medically screened. This process will be conducted by a Registered Nurse after the inmate has completed intake processing. The Registered Nurse will complete a comprehensive assessment of the medical and psychiatric needs of the inmate and record the responses on JIMS.

Mr. Greer was expedited to the screening nurse due to his self-report of a seizure disorder and taking prescription medication. He was screened in a timely manner by RN Germono who collected subjective and objective data about his healthcare history and current vital signs. Mr. Greer was noted to be in stable condition and was able to provide information about his medications and current healthcare provider. RN Germono had Mr. Greer sign a release of information form so that his medications could be verified the following morning. She also assigned him to a lower bunk due to his seizure history and scheduled him for MD Sick Call the following morning.

RN Germono, as required by policy, entered the information into the JIMS system to alert correctional staff of Mr. Greer's need for a lower bunk. She also ensured that he was held at the facility so that he would be seen at physician's sick call early the next day.

*Greer v CSD*

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-11 – "Nursing Assessment Protocols"** states that Nursing Assessment Protocol are appropriate to the level of competency and preparation of the nursing personnel who will carry them out and comply with the relevant state practice acts.

**The San Diego County Sheriff's Department – Medical Services Division, Standardized Nursing Procedure for Seizure Disorder, # SNP.S.1**, states that for Inmate/Patients with a different medication regimen other than Dilantin:
   A. Verify medication orders as per guideline, with I/P's pharmacy or physician.
   B. Contact the on-call or on-site physician for orders of verified medications.
   C. If the medication cannot be verified, contact the on-site or on-call MD for anticonvulsant orders.
   D. Request lower bunk and lower tier for patient.
   E. Enter JIMS instruction "Seizure Disorder"
   F. Schedule I/P for MD sick call for a follow up evaluation.

The protocol in place at the San Diego Sheriff's Department was appropriate and met the standard of care. RN Germono followed the protocol precisely as outlined and had Mr. Greer sign a release of information to obtain his specific medication information. RN Germono's assessment of Mr. Greer was conducted after the VA Clinic had been closed for the day and she appropriately arranged for the verification to be done early the next day along with a face-to-face sick call appointment with the physician. RN Germono appropriately entered into the JIMS system an alert that Mr. Greer had a seizure disorder and authorized a lower bunk for him.

Although RN Germono scheduled Mr. Greer for a face-to-face sick call appointment with the physician the following morning, the physician did not see the patient at sick call but instead reviewed the record and ordered Keppra to be started without any indication that a stat dose was required. The patient was then scheduled to receive his next dose at 8pm that evening; after he had been transferred to the hospital.

**The National Commission on Correctional Health Care (NCCHC), Standards for Health Services in Jails, Section J-E-08 – "Emergency Services"** states that the facility provides 24-hour emergency medical, dental, and mental health services.

The **California Administrative Code, Title 15 – Minimum Standards for Local Detention Facilities, Division 1, Chapter 1, Subchapter 4, § 1206. "Health Care Procedures Manual"** states policies and procedures are to be set forth in writing that include, but not limited to summoning and application of proper medical aid, and emergency medical services.

As soon as healthcare staff was alerted that Mr. Greer was found injured on the floor of his cell, they responded swiftly and appropriately. Several nursing personnel and the nurse practitioner responded to his cell and found him prone and unresponsive, with a hematoma to the left forehead. As they were applying a cervical collar to stabilize his neck, he then had a grand mal seizure in their presence lasting approximately 36 seconds. 911 was activated and the staff remained at his side providing care until EMS arrived and had the patient transferred to the hospital for further evaluation.

*Greer v CSD*

**Summary of Opinions**

1. The medical screening of Mr. Greer was appropriately completed by RN Macy Germono at the time of his admission to the jail.

2. RN Germono appropriately scheduled Mr. Greer to see the physician face to face the following morning at MD Sick Call.

3. RN Germono appropriately authorized Mr. Greer to be placed into a lower bunk and entered this information correctly into the JIMS system.

4. RN Germono appropriately followed the San Diego Sheriff's Department Standardized Nursing Protocol to develop a treatment plan for this patient and to have his medications verified.

5. As soon as healthcare staff were alerted that Mr. Greer required emergency assistance, they responded swiftly and appropriately.

6. Based on my education and experience in the correctional health care setting, and review of the records provided, it is my opinion that the San Diego Sheriff's Department nursing personnel provided appropriate care and treatment to Mr. Frankie Greer, based on his presentation and information he provided. They unequivocally did not intentionally or recklessly fail to act with reasonable and appropriate care.

My opinions in this case are based on many years of education and experience in the correctional health field, and upon the documentation provided to me for review to date. I reserve the right to supplement this opinion in the event additional documentation is provided in this matter. My opinions herein are expressed within a reasonable degree of nursing certainty.

Executed on January 18, 2022, in Reno, Nevada.

*[signature: Kath Wild]*

_____
Kathryn J. Wild, RN, MPA, CCHP-RN

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**
10580 N. McCarran Blvd., #115, PMB 504, Reno, NV 89503
(909) 720-0961
kwild@usa.net (e-mail)
www.correctionalhealthconsultant.com

---

## PROFESSIONAL EXPERIENCE

Kathryn J. Wild, Reno, NV                                                                 1993 – Present
*Consultant*

Orange County Health Care Agency                                                         2010 – 2013
Correctional Health Services, Santa Ana, CA
*Deputy Agency Director*

San Bernardino County Sheriff's Department, San Bernardino, CA                          1995 – 2010
*Health Services Administrator*

Orange County Health Care Agency                                                         1985 – 1993
Correctional Medical Services, Santa Ana, CA
*Senior Comprehensive Care Nurse*

Saint Joseph Hospital, Orange, CA                                                        1980 – 1985
*LVN/Registered Nurse – Medical Surgical Unit*

---

## EDUCATION

**Fellow** – California Healthcare Foundation (CHCF) Leadership Fellowship – 2007/2009
**Master's in Public Administration** – National University, San Diego, CA (2005)
**Management Leadership Academy (MLA),** San Bernardino County (1998)
**Bachelor of Science – Health Services Management,** University of La Verne, La Verne, CA (1998)
**Associates Degree in Nursing** – Rancho Santiago College, Santa Ana (1984)

---

## PROFESSIONAL CERTIFICATIONS, AWARDS AND COMMITTEES

- Co-Chair – Medical/Mental Health Workgroup Adult Titles 15 Regulation Revision (Minimum Jail Standards), California Board of State and Community Corrections (January 2016)
- California Healthcare Foundation (CHCF) – Health Care Leadership Program, Cohort VII – 2007/2009 Fellowship
- 2008 Woman of Distinction – Assemblyman Bill Emerson's 4th Annual 63rd District's - Women of Distinction Awards
- 2007 Distinguished Service Award – American Correctional Health Services Association (ACHSA)
- Certified Correctional Healthcare Professional (CCHP) since 1991
- Certified Correctional Healthcare Professional – RN (CCHP-RN) since 2014
- Institute for Medical Quality (IMQ) – Correctional Accreditation Surveyor
- Outstanding Mental Health Advocate Award – The California Coalition for Mental Health - 2003

Revised: January 1, 2020

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**

## PROFESSIONAL AFFILIATIONS

- American Correctional Health Services Association (ACHSA) – Director 2002 - 2004
- California/Nevada Chapter ACHSA – Past President 2003/2004
- Forensic Mental Health Association (FMHA)
- American Correctional Association (ACA)
- American Jail Association (AJA)
- National Commission on Correctional Health Care (NCCHC)
- Academy of Correctional Health Professionals
- Visiting Nurse Association of Inland Counties (VNAIC) – Director 1999 - 2003

## PRESENTATIONS

September 2017  *"Clinical Management for High Risk Patients in this Litigious Setting"*
- California/Nevada Chapter of ACHSA – San Jose, CA

January 2015  *"Correctional Health Care News Round Up"*
- Correctional Nurse.net - Podcast

October 2013  *"Managing Nursing Sick Call to Reduce Risk"*
- National Commission on Correctional Health Care – Nashville, TN

April 2013  *"10 Ways Correctional Nurses Can End Up in Court"*
- National Commission on Correctional Health Care – Denver, CO

April 2013  *"Managing Nursing Sick Call to Reduce Risk"*
- Correctional Health Care Webinar – OmniSure Consulting Group

October 2012  *"How to Create and Implement Safe and Effective Nursing Protocols"*
- National Commission on Correctional Health Care – Las Vegas

March 2009  *"Nursing Forum – Administrative Issues"*
- American Correctional Health Services Association – Orlando, FL

April 2008  *"Medical Issues – Custody and Medical: Working Together"*
- American Jail Association – Denver, CO

May 2007  *"Forming a Partnership – Mental Health Courts"*
- American Jail Association – Nashville, TN

April 2005  *"Case Management in a Large County Jail"*
- National Commission on Correctional Health Care – Las Vegas

November 2003  *"Contemporary Health Care Issues in Corrections"*
- California State Sheriff's Association – Sacramento, CA

September 2003  *"Psychopharmacology – Who Are We Treating"*
- California/Nevada Chapter of ACHSA – San Diego, CA

2

Revised: January 1, 2020

**Kathryn J. Wild, R.N., M.P.A., C.C.H.P.-R.N.**

---

PUBLICATIONS/PUBLICATION REVIEW

Enchanted Mountain Press Publications – Textbook Chapter Review: **"Correctional Healthcare Patient Safety Handbook: Reduce Clinical Error, Manage Risk, and Improve Quality"**, "Recipient of Care", December 2013

Smith, Sue and Wild, Kathy. **"Best Practices in Nursing Sick Call Management (Part 2)"** CorrectCare, The Magazine of the National Commission on Correctional Health Care. Fall 2013: 12-13, 25.

Smith, Sue and Wild, Kathy. **"Understanding Legal Risk with Sick Call Administration."** A Risk Management Bulletin: Omnisure Risk Management Consulting. Fall 2013

Smith, Sue and Wild, Kathy. **"Best Practices in Nursing Sick Call Management (Part 1)"** CorrectCare, The Magazine of the National Commission on Correctional Health Care. Summer 2013: 12-14.

Hurst, Norm and Wild, Kathy. **"Forming a Partnership for Successful Mental Health Courts."** American Jails. November/December 2007: 23-27.

Hurst, Norm and Wild, Kathy. "**Working Together: Health and Security Side by Side**." The State of Corrections: ACA Annual Conference Proceedings. 2006: 189 – 195.

## Kathryn J. Wild, RN, MPA, CCHP-RN
## Legal Cases – Depositions/Trials
## 2017 - 2021

Trials:

1. December 2019 **Patrick Hahn and Erik Redwood, Administrator of the Estate of Janet Louise Hahn, Deceased, v Health Professionals, LTD,** Circuit Court of the Sixth Judicial Circuit Champaign County, Illinois, Case # 2015-L-184 – Attorney Keith Fruehling

2. February 2019 **Conmed LLC f/k/a CONMED Inc. v Pierce County**, Superior Court of the State of Washington in and for the County of Pierce, Case # 17-2-06200-1 – Attorney Craig McIver

Depositions:

1. September 2021 **Tom Montgomery as Personal Representative of the Estate of Michael Travis Clinard, deceased v King County, et al.** Case # 2:20-cv-00855-RAJ, United States District Court for the Western District of Washington – Attorney Ryan Dreveskracht

2. September 2021 **Monique McNeil, as Administratrix of The Estate of Terrance Duncan v Correctional Medical Care, Inc., CBH Medical, P.C., County of Schenectady, et al.** Case # 9:18-CV-894, United States district Court Northern District of New York – Attorney Jonathan Symer

3. August 2021 **Jessica Lynne Preston v County of Macomb (CCS),** United States District Court for the Eastern District of Michigan, Southern Division, Case # 5:18-cv-12158, Attorney David Mammel

4. June 2021 **Russell H. Dawson (Damaris Rodriquez, Deceased) v Naphcare, INC., et al.**, United States District Court Western District of Washington at Seattle, Case # 2:19-cv-01987-RSM – Attorney Heidi Mandt

5. June 2021 **Patricia Thompson, as PR of the Estate of Marconia Lynn Kesee v Norman Regional Hospital, et al**. United States District Court for the Western District of Oklahoma, Case # CIV-19-113-SLP, Attorney Austin Young

6. May 2021 **Zuniga v County of San Bernardino, et al.**, Superior Court of California for the County of San Bernardino, Case #: CIVDS1620852, - Attorney Jonathon Bond

7. March 2021 **Donna Malone, et al. (Thomas Gosier) v Wicomico County, et al. (CCS),** US District Court for the District of Maryland, Case # 1:19-cv-02412-SAG – Attorney Daniel Griffith

8. February 2021 **Maria Clara Rodado, as the personal representative and on behalf of the heirs and estate of George Marinay, deceased, and Norma Marinay v Corizon Health, INC.** Fourth Judicial District Court in and for ADA County, State of Idaho, Case # CV01-17-19343 – Attorney Dylan Eaton

Kathryn J. Wild
Legal Cases – Deposition/Trials
2017 - 2021

9. January 2021        **Keith Crumley, by Next Friend Shirley Crumley v Kerry J. Forestal in his official capacity as Sheriff of Marion County, et. al.** U.S. District Court Southern District of Indiana Indianapolis Division, Case # 1:19-cv-04110-TWP-DM – Attorney Drew Farringdon

10. August 2020        **Alyson Nale v Nurse Finley, Union Parish Detention Center, and Travelers Insurance.** U.S. District Court, Wester District of Louisiana, Monroe Division, Case # 3:19-CV-00473 – Attorney Joe Long

11. June 2020          **Tammy Shidler and Gary Shidler, individually and as successors in interest to Joshua Pitts, deceased v County of San Bernardino**. U.S. District Court for the Central District of California, Case #5:19-cv-00503-AB (SHKx) – Attorney Christopher P. Wesierski

12. April 2020         **The Estate of Kyra Warner v Wellpath, f/k/a Correct Care Solutions, et al.** US District Court Southern District of Indiana, Indianapolis Division, Case # 1:19:cv-00774-RLY-MJD – Attorney Carol Dillon

13. December 2019      **Donzell Lowe, Plaintiff v Tarry Williams (Wexford), et.al.** U.S. District Court for the Northern District of Illinois, Case # 1:16-cv-8274 – Attorney Edward Khatskin

14. September 2019     **Leon Lippett v Corizon Health, Inc. et al.** U.S. District Court Eastern District of Michigan Southern Division, Case # 2:18-cv-11175, Attorney James Farrell

15. August 2019        **Christina Marziale v Correct Care Solutions,** U.S. District Court Eastern District of Arkansas Western Division, Case #5:18-cv-86DPM, Attorney Katherine Dzik

16. May 2019           **Brenda Davis, et. Al. v Buchanan County, Missouri, et.al.,** U.S. District Court for the Western District of Missouri Western Division, Case # 17-cv-06058-NKL – Attorney Richard Acosta

17. May 2019           **John Scalia, individually and as successor-in-interest of Decedent Kimberly Morrissey-Scalia v County of Kern, et al.,** US District Court Eastern District of California, Case # 1:17-CV-01097-LJO-SKO – Attorney Sanjay Schmidt

18. April 2019         **Mary Gordon, successor-in-interest for decedent, Mathew Shawn Gordon, individually v County of Orange, et al.** in the U.S. District Court Central District of California, Case # SACV13-01050 CJC (DFMx), Attorney Pancy Lin

19. March 2019         **Pamela Barrier as Guardian of the Person and Property of the Ward, Chad A. Barrier v JFK Medical Center, et al.** In the Circuit Court of the Fifteenth Judical Circuit, in and for Palm Beach County, Florida, Circuit Civil Division AH, Case #502012CA0228XXXXMBAN – Attorney Jami Gurksy

Kathryn J. Wild
Legal Cases – Deposition/Trials
2017 - 2021

20. November 2018 **Vilma Germaine-McIver v County of Orange**. U.S. District Court Central District of California, Case #3:16-cv-01201-CJC-GJS – Attorney David Lawrence

21. September 2018 **Mark Pfeifer, Administrator of The Estate of James Kenneth Embry, deceased v Correctcare-Integrated Health, et. al.,** U.S. District Western District of Kentucky Paduch Division, Case #5:15-CV-007-TBR – Attorney Jim Mooney

22. August 2018 **Shaun David Brooks, et al., v Wilkinson County, Georgia, et al.,** Case No. 5-17-cv-00033-TES, U.S. District Court, Middle District of Georgia Macon Division – Attorney Timothy J. Buckley III

23. July 2018 **ConMed LLC f/k/a CONMED, Inc. v Pierce County,** Case #17-2-06200-1, Superior Court of the State of Washington in and for the County of Pierce – Attorney Greg Turner

24. May 2018 **Kenneth Darnell Smith v The GEO Group, Inc.,** Case #5:16-cv-00186-MTT, U.S. District Court for the Middle District of Georgia – Attorney Kim Ruder

25. April 2018 **Estate of David Stojcevski v County of Macomb (CCS)**, Case #15-cv-11019, U.S. District Court Eastern District of Michigan, Southern Division – Attorney Ron Chapman

26. March 2018 **Estate of Patrick Russell v County of Orange**, Case #17-CV-00125-JLS (DFM), U.S. District Court Central District of California – Attorney Chariese Solorio

27. March 2018 **James Neuroth v Mendocino County**, Case #3:15-cv-03226-RS, U.S. District Court Northern District of California – Attorney Pete Bertling

28. March 2018 **Richard Gentsch, as representative of the Estate of Rachel Baynard, et al., v Correct Care Solutions, et al.** Case #N15C-04-143-CEB, Superior Court of the State of Delaware – Attorney Dan Griffith

29. February 2018 **Tina Drake, as PR for Estate of Reggie Scott v Salvatore Bianco, M.D.,** Case #17-CP-42-01307, State of South Carolina, Court of Common Pleas – Attorney Stan Case

30. February 2018 **Estate of Matthew S. Smith et al. v Pierce County et al.** Case #3:16-cv-05667 BHS – U.S. District Court, Western District of Washington at Tacoma – Attorney Heidi Mandt

31. December 2017 **Estate of Esteban Mosqueda-Romero v Georgia Department of Corrections, et al.,** United States District Court for the Northern District of Georgia Atlanta Division, Case #4:16-CV-1-HLM – Attorney Elissa Haynes

32. December 2017 **Estate of Scott Meirs v Ottawa County, et al.,** United States District Court, Western District of Michigan, Case # 1:15-cv-00866-PLM-RSK – Attorney Brian Richtarick

Kathryn J. Wild
Legal Cases – Deposition/Trials
2017 - 2021

33. October 2017        **Aaron David Persin v State of Hawaii, et al.,** Circuit Court of the First Circuit, State of Hawaii, Case #13-1-1571-05 (BIA) – Attorney Ken Robbins

**Kathryn J. Wild, RN, MPA, CCHP-RN**
**10580 N. McCarran Blvd, #115, Suite 504, Reno, NV 89503**
**Phone: 909-720-0961**
**kwild@usa.net**

# Fee Schedule 2021

## Professional Services – Kathryn J. Wild, RN, MPA, CCHP-RN

| Service | Fee | |
|---|---|---|
| Retainer – Initial Review of Discovery | $ 4,500.00 | Base Retainer |
| Conference calls, meetings, site visits, report development, document review | $ 350.00 | Per hour |
| Deposition | $ 450.00 | Per hour (Minimum of 2 hours) |
| Trial Daily Rate | $ 3,500.00 | Daily Rate |
| Travel Time | $ 200.00 | Per hour of travel |
| Travel Expenses (airfare, transportation, lodging, meals) | | Actual cost |
| Travel Expenses (mileage) | $.56 per mile | As applicable |
| Incidental Expenses (postage, etc.) | | Actual cost |