UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>                    Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                    Defendants. | Case No.: 19-cv-378-JO-DEB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL INFORMATION AND MATERIAL REGARDING THE SAN DIEGO COUNTY SHERIFF'S DEPARTMENT'S CRITICAL INCIDENT REVIEW BOARD**<br><br>**[DKT. NO. 148]** |

I.    INTRODUCTION

Before the Court is Plaintiff Frankie Greer's ("Plaintiff") Motion to Compel further responses to Plaintiff's Requests for Production ("RFP") 52–54 for twelve Sheriff's Department's Critical Incident Review Board reports and related documents. Dkt. No. 148. Plaintiff's Motion challenges Defendant the County of San Diego's ("the County") assertion of attorney-client privilege, work product protection, and other privileges for these documents. *Id*. The County opposes the Motion and Plaintiff has filed a Reply. Dkt. Nos. 152, 153.

//

Because the County's privilege log lacked sufficient detail to determine the applicability of attorney-client privilege and work product protection, the Court ordered supplemental briefing and for the County to file an amended privilege log. Dkt. No. 166. The County then filed its supplemental brief and amended privilege log and Plaintiff filed a sur-reply. Dkt. Nos. 168, 169.

For the reasons discussed below, the Court GRANTS Plaintiff's Motion.

## II. BACKGROUND

### A. Plaintiff's Claims

Plaintiff's Second Amended Complaint ("SAC") alleges when Plaintiff was booked into the San Diego Central Jail, he gave medical staff his prescribed seizure disorder medication and informed them he would suffer chronic seizures without it. Dkt. No. 59 ¶¶ 29–31. Medical staff did not administer Plaintiff's medication, enter a seizure disorder alert, enter lower bunk assignment order in the Jail Information Management System ("JIMS"), or otherwise communicate Plaintiff's medical condition and needs to jail staff. *Id.* ¶¶ 36, 38, 41, 43.

Despite Plaintiff missing two doses of seizure medication and requesting a bottom bunk due to his medical condition, jail staff assigned him to a top bunk. *Id.* ¶¶ 42, 44, 45–53. Shortly thereafter, Plaintiff had a seizure and fell from his top bunk onto the concrete cell floor, which rendered him unconscious. *Id.* ¶¶ 55–57. Jail staff did not respond to Plaintiff's cellmates' intercom calls and shouts for help, which delayed medical treatment. *Id.* ¶¶ 57–66, 69–71, 73. Plaintiff suffered "numerous clinical seizures" without receiving immediate emergency medical care, which exacerbated his injuries. *Id.* ¶¶ 72–73. Plaintiff sustained facial fractures, a brain bleed, and respiratory failure. *Id.* ¶ 74. Plaintiff remained unconscious for weeks and has a significant brain injury, which continues to impair his cognitive functioning, memory, and speech. *Id.* ¶¶ 78–79, 81.

Plaintiff alleges the County and supervisory officials are liable for his injuries because they failed to train, monitor, supervise, and discipline Sheriff's Department personnel despite a known history of failures to: (1) communicate, share critical medical

information, and coordinate the care of seriously ill inmates; (2) provide seriously ill inmates emergency medical care; and (3) properly monitor seriously ill inmates. *Id*. ¶¶ 119, 120, 129–32, 264–68, 278–85.[1] Plaintiff also asserts individual claims against the supervisory officials, alleging they failed to adequately train and supervise jail staff to properly: (1) administer medication; (2) input medical information in JIMS; (3) communicate serious medical needs to other jail personnel; and (4) monitor seriously ill inmates, including timely responding to emergency calls for aid. *Id*. ¶¶ 218–44.

### B. The Critical Incident Review Board

The Critical Incident Review Board ("CIRB") consists of three "voting" members (one commander each from Law Enforcement, Court Services, and Detention Services divisions), and two "non-voting" members (the Chief Legal Advisor and Human Resources division commander). Dkt. No. 148-4 at 6.[2] In addition to CIRB members, meeting attendees include the assigned investigator and representatives from the subject employee's chain of command, the Division of Inspectional Services ("DIS"), Internal Affairs, and Training. *Id*. The CIRB can request additional personnel attend the meeting. *Id*.

> [A] CIRB meeting occurs in three stages. First, Department personnel present factual information regarding the underlying incident, including, in some instances, PowerPoints, to the CIRB members, including the Department's legal counsel. Department employees whose attendance was requested because of their relevant subject-matter expertise (e.g., weapons training unit, in-service training, K-9 unit, etc.) also attend. Next, the Department employees who present the factual information are dismissed from the room and CIRB members, including legal counsel, discuss and address issues with the Department's subject-matter experts. Lastly, the subject-matter experts are

---

[1] Municipalities are liable for monetary, declaratory, or injunctive relief where official policy or custom violates a Constitutional right, including an unwritten practice or policy that reflects "persistent and widespread discriminatory practices of state officials" that are "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 691 (1978).

[2] When referencing page numbers for documents filed with the Court, the Court's citation refers to the page numbers assigned by the Court's CM-ECF system.

> dismissed from the room and the CIRB members, including legal counsel, engage in further discussions. The DIS Lieutenant is also present to facilitate these communications and to document key issues, comments, and matters for inclusion in the CIRB confidential report.

Dkt. No. 152-1 ¶ 8.

At the conclusion of the CIRB's review, the voting members determine whether a policy violation may exist. Dkt. No. 148-4 at 7. If so, the matter is forwarded to Internal Affairs for further investigation. *Id.* The CIRB is also authorized to recommend policy changes and training. *Id.* at 8.

Following the CIRB meeting, the DIS Lieutenant writes a report that must "contain specific findings with regard to whether the review board found any policy violations, and training or policy issues, as well as what actions were taken by the department." *Id.* The employee under review is "debriefed" regarding the CIRB's findings. *Id.*

The Sheriff's Department requires the CIRB to review all "critical incidents." *Id.* at 6.[3] The CIRB is the only mandatory internal review of deputy conduct related to in-custody deaths to determine, for example, whether the deputy's tactics were proper and consistent with training. *Id.* at 46–47.

The Sheriff's Department Policy and Procedures Manual describes the CIRB's multiple purposes: (1) "assess the department's civil exposure as a result of a given incident" (described as the "focus of the CIRB"); (2) "determine as to whether or not a policy violation may exist"; (3) make "recommendations for training based upon the analysis of critical incidents"; (4) identify any "policy issues of concern"; and (5) "debrief [the employee] as to the results of the CIRB." *Id.* at 6–8.

Consistent with the CIRB's multiple purposes unrelated to obtaining legal advice, the Sheriff's Department holds the CIRB out to the public as an internal body dedicated to

---

[3] Critical incidents include in-custody deaths; uses of deadly force; events where death or serious injury result; and incidences involving discharge of a firearm, major property damage, or major vehicle damage. Dkt. No. 148-4 at 7.

police accountability and oversight. *Id.* at 9. For example, the Sheriff's Department describes the CIRB as an internal oversight board that supports the Sheriff's Department's "dedicat[ion] to building a culture of trust with our communities . . . . ; [efforts to be] proactive in the identification of possible opportunities for change in our policies, procedure, and training to affect consistent positive outcomes . . . ; [and] commit[ment] to [the] impartial and compassionate enforcement of the law." *Id.* And on June 9, 2020, shortly after the eruption of nationwide protests in response to the death of George Floyd, the Sheriff's Department identified the CIRB as an internal oversight board that represents the Department's "commit[ment] to impartial and compassionate enforcement of the law" and efforts to be "proactive in the identification of possible opportunities for change in our policies, procedure, and training to affect consistent positive outcomes." *Id.* at 11. The Sheriff's Department also said that, to honor this commitment, its "leadership team reviews all critical incidents to ensure proper and just responses were administered . . . . [and its] CIRB carefully reviews the incidents from multiple perspectives – including training, tactics, policies, and procedures – with the goal of identifying problem areas and recommending remedial actions." *Id*. at 11, 12.

In June 2011, Robert Faigin, the Sheriff's Department Chief Legal Adviser and "primary architect of the CIRB policy and procedure" (Dkt. No. 148-3 at 49) authored an article entitled, "Critical Incident Review Board: Creation and Refinement" (Dkt. No. 148-4 at 14–20). He described the CIRB as a means by which "a law enforcement agency can meet the public's expectation of effective self-policing . . . ." Dkt. No. 148-4 at 15. Mr. Faigin recommended including legal counsel as a CIRB member because it "potentially provides the ability to protect the confidentiality of the discussion under the cloak of the attorney-client privilege." *Id.* at 16.

### C. Plaintiff's Requests For Production of Critical Incident Review Board Reports and Related Information

Plaintiff's RFPs 52–54 seek CIRB "reports or memoranda," CIRB meeting attendees, and "records, materials, and tangible things" provided to the CIRB during its

investigation of twelve County jail deaths that preceded Plaintiff's seizure and fall. Dkt. No. 148-3 at 20–25. Plaintiff seeks these documents in connection with his *Monell* claim (i.e., the County had notice of a pattern of jail personnel failing to properly address inmates' serious medical needs and failed to take remedial action). Dkt. No. 113 at 14–23. The Court previously ruled these document requests are relevant and proportionate to Plaintiff's *Monell* claim. Dkt. No. 117. On July 27, 2022, District Judge Jinsook Ohta overruled the County's objections to that Order. Dkt. No. 173.

The County refused to produce all CIRB-related documents sought by Plaintiff, asserting they are protected from disclosure by the attorney-client privilege, work product doctrine, and other protections. Dkt. No. 148-3 at 28–51. This Motion followed.

### D. Plaintiff's Motion to Compel and the Court's Order Requiring the County to Produce an Amended Privilege Log

Plaintiff's Motion asserts, among other arguments, the County forfeited any attorney-client privilege and work product protection by failing to make a particularized showing of their application to the CIRB documents at issue. Dkt. No. 148-1 at 21–26.

Although the County served a privilege log with its response to Plaintiff's RFPs, the privilege log was incomplete because it lacked sufficient detail to determine the applicability of attorney-client privilege and work product protection. Dkt. No. 166. The Court issued the following Order upon completion of the briefing:

> The County's privilege log lacks sufficient detail to determine the applicability of attorney-client privilege and work product protection. Dkt. No. 148-3. Necessary but missing information includes: (1) the date the document was prepared; (2) the identity of all individuals listed as receiving a copy of the document and their relationship to the County; (3) the identity of any other individuals to whom the document was disseminated and their relationship to the County; and (4) whether the document includes any attachments and, if so, a description of the attachments. The Court, therefore, directs the County to file and serve an amended privilege log . . . .

Dkt. No. 166 at 1–2.

//

The County produced an amended privilege log in response to the Court's Order. Dkt. No. 168-2. The amended privilege log, however, also does not supply the requested information. Specifically, the amended privilege log lacks information regarding "all individuals listed as receiving a copy of the document and their relationship to the County" and "other individuals to whom the document was disseminated and their relationship to the County."

### III. LEGAL STANDARDS

#### A. Attorney-Client Privilege

The attorney-client privilege exists: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf,* 610 F.3d 1148, 1156 (9th Cir. 2010).

"The privilege extends to agencies . . . to the extent the agency is consulting its attorney as would any private party seeking advice to protect personal interest." *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv*., 85 F. Supp. 3d 1074, 1086 (N.D. Cal. 2015) (quotation omitted).

"Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quotation omitted). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," and "applies only when necessary to achieve its purpose" of encouraging complete disclosure by the client. *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Where the communication was made for dual-purposes, courts must determine "whether the primary purpose of the communication is to give or receive legal advice, as

opposed to business . . . advice." *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021), *cert. granted*, No. 21-1397, 2022 WL 4651237 (U.S. Oct. 3, 2022).[4]

"Voluntary disclosure of a privileged communication to a third person destroys confidentiality and constitutes a waiver of the privilege." *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995).

"The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988). This burden includes demonstrating the lack of a waiver. *Martin*, 278 F.3d at 999–1000; *Louen v. Twedt,* 236 F.R.D. 502, 506 (E.D. Cal. 2006) ("A person asserting attorney-client privilege has the burden of persuasion as to all elements of the privilege, including an affirmative showing of non-waiver . . . .").

### B. Work Product Doctrine

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

"The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the ***primary*** motivating purpose behind the creation of the materials must be as an aid in possible future litigation." *Griffith*, 161 F.R.D. at 698 (emphasis in original). Thus, work product protection applies only to material "that would not have been generated but for the pendency or imminence of litigation." *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987).

---

[4] *In re Grand Jury* remains binding Ninth Circuit precedent despite the Supreme Court's grant of certiorari. *Durham v. Prudential Ins. Co. of Am.*, 236 F. Supp. 3d 1140, 1147 (C.D. Cal. 2017) ("[A] stay of proceedings pending Supreme Court review does not normally affect the precedential value of the circuit court's opinion.")

The party asserting work product protection has the burden to demonstrate it applies to the information in question. *Garcia v. City of El Centro,* 214 F.R.D. 587, 591 (S.D. Cal. 2003). Unlike the attorney-client privilege, "the party asserting waiver of work-product protection bears the burden of demonstrating that a waiver of that protection has occurred." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 642 (D. Or. 2019).

## IV. DISCUSSION

Plaintiff challenges the County's withholding of CIRB-related documents based on the attorney-client privilege, work product doctrine, and other protection claims. Dkt. No. 148. The County contends the discovery "at issue involves attorney-client privileged reports written to legal counsel summarizing legal assessments presented during . . . [CIRB] meetings and documents provided to CIRB for analysis by legal counsel." Dkt. No. 152 at 5. In addition to its initial and amended privilege logs, Dkt. Nos. 148-3 at 28-47, 168-2, the County proffers declarations by Lt. Edward Greenawald (Dkt. No. 152-1) and Mr. Faigin (Dkt. Nos. 148-3 at 48-51, 168-1) in support of its protection claims.

Having reviewed the County's privilege logs, briefs, and supporting declarations, the Court finds the County has failed to carry its burden of demonstrating the CIRB documents Plaintiff seeks are protected from disclosure.

### A. <u>Attorney-Client Privilege</u>

"The [attorney-client] privilege typically does not apply to internal police investigations, such as . . . critical incident review proceedings . . . ." *Medina*, 2014 WL 4793026, at *16; *see also Griffith*, 161 F.R.D. at 696 (an officer's statements made during an administrative investigation to determine whether police misconduct occurred were not attorney-client privileged because the interview was not conducted primarily to obtain legal advice). With this general principle as a starting point, the Court analyzes whether the County has carried its burden of demonstrating that the specific CIRB materials at issue here are nonetheless privileged. The Court rules the County has not carried this burden.

The County's blanket assertion that "[a]ll CIRB reports . . . are confidential communications with . . . the department's Chief Legal Advisor and have been prepared at

[his] request and review" (Dkt. No. 148-3 at 51) falls short, as does the County's general contention that the CIRB's "focus . . . will be to assess the department's civil exposure as a result of a given incident" (Dkt. No. 148-4 at 6). *See Martin*, 278 F.3d at 1000 ("A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted. . . . Blanket assertions are 'extremely disfavored.' . . . Further, the communication must be between the client and lawyer for the purpose of obtaining legal advice.") (citations omitted); *Our Children's Earth Found.*, 85 F. Supp. 3d at 1086-87 (A party asserting attorney-client privilege "fails to meet its burden if it uses to boilerplate language and makes no effort . . . to tailor the explanation to the specific document withheld . . . ."); *Myles v. County of San Diego*, No. 15-cv-1985-BEN-BLM, 2016 WL 2343914 *8 (S.D. Cal. May 4, 2016) (rejecting the County's attorney-client privilege claim for CIRB reports based on similar generalized representations; "Such general assertions are insufficient to establish that the communications were made in confidence and for the purpose of seeking legal advice.").

      The County's only claim about the specific CIRB investigations at issue is "the purpose of . . . consult[ing] with the Department's legal counsel when a critical incident occurs that may give rise to litigation" was "carried out for each CIRB matter identified in the County's privilege log . . . ." Dkt. No. 152-1 at 2. This representation, however, is insufficient to carry the County's burden of demonstrating "the primary purpose" of the CIRB meetings at issue was "to give or receive legal advice . . . ." *In re Grand Jury*, 23 F.4th at 1091.

      The CIRB serves multiple purposes unrelated to obtaining legal advice from counsel. For example, the Sheriff's Department relies on the CIRB to:

- "make a determination as to whether or not a policy violation may exist";

- identify any "policy issues of concern";

- identify "possible opportunities for change in . . . policies, procedure, and training to affect consistent positive outcomes";

- further the Sheriff Department's "impartial and compassionate enforcement of the law";

- make "recommendations for training based upon the analysis of critical incidents";

- "debrief [the employee] as to the results of the CIRB"; and

- "recommend remedial action when necessary and ensure that recommended action is actually completed."

Dkt. No. 148-4 at 7–8, 11, 16.[5]

Indeed, statements by Sheriff Gore and Mr. Faigin support the conclusion that obtaining legal advice typically is not the CIRB's primary purpose. Sheriff Gore described the CIRB as an investigative and remedial body: "the CIRB review is focused with an eye towards what changes have already been implemented by the chain of command to remedy any deficiencies before the matter made it to the CIRB for review, as well as any changes the chain of command may not have already identified and/or implemented to minimize the risk of recurrence." *San Diego County Sheriff's Department: It Has Failed to Adequately Prevent and Respond to the Deaths of Individuals in Its Custody,* California State Auditor, 103 (Feb. 2022), http://auditor.ca.gov/pdfs/reports/2021-109.pdf (hereinafter *State Auditor's Report*).

Mr. Faigin, the "primary architect of the CIRB policy and procedure" (Dkt. No. 148-3 at 49), has also stated that the CIRB is designed to investigate critical incidents and recommend remedial measures: "A CIRB is designed to help an agency review a critical incident, assessing both the positive and negative aspects of that incident . . . . A

---

[5] Consistent with these purposes, the first stage of a CIRB meeting generally involves the development and investigation of facts from witnesses. Dkt. No. 152-1 ¶ 8. However, "[t]he [attorney-client] privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. U.S.*, 449 U.S. 383 at 395 (1981).

department's lack of knowledge of issues resulting from a critical incident will certainly cause the department to be slow in taking remedial measures to address the incident or the conduct that caused the incident." Dkt. No. 148-4 at 15. Mr. Faigin has also described the CIRB as a means by which "a law enforcement agency can meet the public's expectation of effective self-policing." *Id.* at 14.[6]

Pertinent to this Motion, Mr. Faigin recommends installing legal counsel as a CIRB member to cloak the CIRB's investigation, findings, and recommendations in privilege: "The department's legal advisor also should be a member of the CIRB board. A legal advisor brings risk/liability perspective to the discussion and **potentially provides the ability to protect the confidentiality of the discussion under the cloak of the attorney-client privilege**." *Id.* at 16 (emphasis added). Courts, however, have rejected attempts to immunize documents from disclosure by simply involving an attorney in the investigation. *See, e.g., United States v. ISS Marine Servs., Inc.,* 905 F. Supp.2d 121, 129–30 (D.D.C. 2012) ("At bottom, the respondent's claim to privilege appears to be premised on a gimmick: exclude counsel from conducting the internal investigation but retain them in a watered-down capacity to 'consult' on the investigation in order to cloak the investigation with privilege. Unfortunately for the respondent, this sort of 'consultation lite' does not qualify the Audit Report for the protections of attorney-client privilege."); *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 13 (D.D.C. 2021) ("Although Clark Hill papered the arrangement using its attorneys, that approach appears to have been designed to help shield material from disclosure and is not sufficient in itself to provide work-product protection.") (quotation and internal edits omitted).

---

[6] The Auditor of the State of California – an outside body familiar with the County's CIRB – also has acknowledged the CIRB's primary purpose is investigative and remedial: the CIRB's "ultimate goal is identifying problem areas and recommending remedial actions – such as posting a training bulletin or changing a policy – so that potential liability can be avoided in the future." *State Auditor's Report* at 36.

The County's privilege log and supporting declarations also fail to establish the existence of an attorney-client relationship between Mr. Faigin, who "serve[s] as the Chief Legal Advisor for the elected Sheriff and his command staff," and the individuals who attended the CIRB meetings at issue. Dkt. No. 148-3 ¶ 2. In addition to command staff, CIRB meetings are attended by personnel from a range of Sheriff Department's non-legal divisions, many of whom are there to present factual information or subject matter expertise. Dkt. Nos. 148-4 at 6, 152-1 ¶ 8. The County, however, offers no information regarding the identity of the individuals who attended the specific CIRB meetings at issue. Nor does it offer any evidence these individuals' communications are protected by Mr. Faigin's attorney-client relationship with the Sheriff and command staff. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (attorney-client privilege not established where defendant did not show attorney-client relationship between agency lawyer and agency employee). The County, therefore, has not shown the communications during the CIRB meetings at issue involved Mr. Faigin's clients and, consequently, has also not shown these communications were made in confidence. *Griffith*, 161 F.R.D. at 698.

Finally, the County has not carried its burden of demonstrating it has not waived any privilege for the CIRB documents at issue by disclosing them to a third party. *Martin*, 278 F.3d at 999–1000. After finding the County's original privilege log lacked "sufficient detail to determine the applicability of the attorney-client privilege and work product protection," the Court gave the County another opportunity to make this showing. Dkt. No. 166. Specifically, the Court ordered the County to provide an amended privilege log identifying "all individuals listed as receiving a copy of the document and their relationship to the County" and "any other individuals to whom the document was disseminated and their relationship to the County." *Id.* at 1-2. The Court explained this information was necessary "to determine the applicability of [the] attorney-client privilege and work product protection." *Id.* The County's amended privilege log, however, does not contain the

requested information. Dkt. No. 168-2.[7] The County, therefore, has failed to carry its burden to establish it has not waived the asserted attorney-client privilege through disclosure to a third party. *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D. Cal. 1992) (a party may sustain its burden of asserting attorney-client privilege by producing an index or list identifying privileged documents that includes, among other things, each document's "primary addressee . . . [and] secondary addressee(s); persons copied and recipient (and the relationship of that person(s) to the client and/or author of the document . . . ."); *U.S. v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1074-75 (N.D. Cal. 2002) (finding defendant improperly claimed attorney-client privilege for e-mail correspondence where it failed to identify a third-party recipient on its privilege log.).

In sum, the objective evidence before the Court establishes the CIRB's primary purpose is investigative and remedial (activities generally not protected by the attorney-client privilege), and the County has not carried its burden of establishing the primary purpose of the twelve CIRB investigations at issue was obtaining legal advice.

### B. Work-Product Protection

The County has also not carried its burden of establishing the CIRB materials at issue are protected attorney work product.

Sheriff's Department policy mandates the CIRB review certain types of incidents involving use of force, regardless of whether litigation is pending or imminent. Dkt. No. 148-4 at 7 (types of incidents that "shall be reviewed by CIRB," include all in-custody deaths; uses of deadly force; events where death or serious injury result; and incidences involving discharge of a firearm, major property damage, or major vehicle damage). If the CIRB investigations at issue here were conducted for a purpose other than preparing for pending or anticipated litigation, then work product protection does not apply. *See Miller*, 141 F.R.D. at 303 (finding police department's internal affairs investigations are not work-

---

[7] This omission is noteworthy because Plaintiff has submitted evidence that the County has disclosed other CIRB materials to third parties. Dkt. No. 169 at 4-5.

product protected because they are performed in the regular course of business); *Kelly*, 114 F.R.D. at 659 ("[S]ince police departments are under an affirmative ***duty***, in the normal course of serving their public function," to generate documents such as internal investigation reports, "the policies that inspire the work product doctrine are wholly inapplicable.") (emphasis in original); *Griffith*, 161 F.R.D. at 698-99 ("The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the ***primary*** motivating purpose behind the creation of the materials must be as an aid in possible future litigation.") (emphasis in original).

The County offers no evidence establishing the specific CIRB investigations at issue here were conducted primarily to aid in pending or anticipated litigation. The County, therefore, has not carried its burden of demonstrating the CIRB documents Plaintiff seeks are protected work product. *Griffith*, 161 F.R.D. at 698-99 ("memorandum [that] would have been generated whether or not litigation was pending, . . . does not qualify as attorney work product."); *Kelly*, 114 F.R.D. at 659 (holding "[s]ince police departments are under an affirmative **duty**, in the normal course of serving their public function," to generate documents such as internal investigation reports, "the policies that inspire the work product doctrine are wholly inapplicable.") (emphasis in original); *Miller*, 141 F.R.D. at 303 (finding police department's internal affairs investigations are not work-product protected because they are performed in the regular course of business).

### C. Other Objections and Protection Claims

Although the County's privilege logs list other bases for refusing to produce the requested documents (i.e., official information privilege, deliberative process, law enforcement purposes, and confidentiality), the County's Opposition makes no argument supporting any of these grounds. These objections, therefore, are moot and/or waived. *See Sherwin-Williams Co. v. Earl Scheib of Cal. Inc.*, No. 12-cv-2646-JAH-JMA, 2013 WL 12073836, at *2 n.1 (S.D. Cal. Mar. 4, 2013) (limiting review to arguments in the parties' briefs and finding other objections not addressed in the discovery motion are moot or waived).

## V. CONCLUSION

Based on the foregoing, Plaintiff's Motion is GRANTED. The County must produce documents responsive to RFPs 52–54 on or before <u>October 21, 2022</u>.

**IT IS SO ORDERED.**

Dated: October 7, 2022

_____
Honorable Daniel E. Butcher
United States Magistrate Judge