UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Greer,<br><br>                        Plaintiff,<br><br>v.<br><br>County of San Diego et al.,<br><br>                        Defendants. | Case No.: 19cv378-JO-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO CERTIFY AS FRIVOLOUS; DENYING DEFENDANTS' MOTION TO STAY** |

    While detained in San Diego Central Jail, Plaintiff Frankie Greer had a seizure, fell from a top bunk bed, and suffered grave injuries after four jail employees failed to provide him with seizure medication, a lower bunk bed, and emergency medical aid. Plaintiff brought a 42 U.S.C. § 1983 action against these four employees ("Officer Defendants"), various high level jail officials ("Supervisory Defendants"), and the County of San Diego ("County") (collectively, "Defendants") alleging claims for deliberate indifference to serious medical needs, among other claims.

    On December 9, 2022, the Court denied Officer Defendants' request for summary judgment on the grounds of qualified immunity. On January 4, 2023, Officer Defendants

filed a notice of appeal seeking interlocutory review of the Court's qualified immunity ruling. On January 12, 2023, Defendants filed an *ex parte* motion to stay the entire action pending resolution of the interlocutory appeal, and on January 17, 2023, Plaintiff filed a motion to certify the interlocutory appeal as frivolous [Dkts. 295, 297]. The Court held oral argument on the above motions on February 8, 2023. For the reasons stated below, the Court grants in part Plaintiff's motion to certify the interlocutory appeals of Defendants Francisco Bravo, Christopher Simms, and Michael Campos as frivolous. The Court denies Defendants' motion to stay.

## I.   BACKGROUND

During his arrest intake procedure, Plaintiff communicated to the medical staff that he had a seizure disorder and required anti-seizure medication. On January 31, 2018, Plaintiff was arrested and booked into San Diego Central Jail. Dkt. 218-4 (Vol. 1 Plaintiff's Appendix ("1 Pl. App.")) at 00043. During the booking process, Plaintiff informed the medical staff that he suffered from a seizure disorder and required medication twice daily to prevent seizures. 1 Pl. App. 00044, 00049, 00060. Defendant Macy Germono, a jail nurse, conducted the medical evaluation of Plaintiff that late afternoon and noted Plaintiff's seizure disorder in the Jail Information Management System ("JIMS"), the system used by the jail to communicate an inmate's information. 1 Pl. App. 00049. Nurse Germono wrote Plaintiff's diagnosis as "Epilepsy" and notated his prescription requirement in the file. 1 Pl. App. 00061, 00063. She also noted in JIMS, pursuant to the standard nursing protocols for seizure disorders, that Plaintiff needed a lower bunk assignment. 1 Pl. App. 00063; Dkt. 245-3 (Vol. 3 Plaintiff's Appendix ("3 Pl. App.")) at 00213, 00217.

The medical staff did not provide Plaintiff the prescription seizure medication that he required. In addition to informing Nurse Germono that he suffered from a seizure disorder, Plaintiff also informed her that he took seizure medication twice a day but had missed his last dose. 1 Pl. App. 00049, 00060, 00063. Despite this information, Nurse Germono did not take the required steps to provide Plaintiff with his anti-seizure

medication that night by calling the on-call doctor.  Dkt. 209-5 (Germono Decl.) at ¶ 12.  Instead, she placed a note in his file to be seen by a doctor the following day.[1]  Germono Decl. at ¶¶ 8, 12.  This failure to call the on-call doctor to obtain the anti-seizure medication violated the County's standard nursing protocols and the nursing standard of care.  3 Pl. 00213, 00374.  As a result of Nurse Germono's failure to take the required steps, Plaintiff did not have access to his twice daily anti-seizure medication.  See 1 Pl. App. 00060.

On February 1, 2018, the day after his arrest and medical screening with Nurse Germono, Plaintiff was assigned to an upper bunk instead of a lower bunk.  Defendant Francisco Bravo, the jail deputy in charge of assigning beds to inmates, was required to house inmates appropriately based on their medical instructions in JIMS.  Dkt. 218-5 (Vol. 2 Plaintiff's Appendix ("2 Pl. App.")) at 00082.  Despite this requirement that he review the medical instructions and bunk notation in JIMS, Deputy Bravo did not assign Plaintiff to a lower bunk in the cell.  See 2 Pl. App. 00082, 00093; 3 Pl. App 00253-00254.  Deputy Bravo was also responsible for making a lower bunk notation on a physical index card that lets the housing staff know medical restrictions.  2 Pl. App. 00199-200.  He did not make a lower bunk notation on Plaintiff's index card.  2 Pl. App. 00087, 00182.  Defendant Christopher Simms, the housing deputy who physically escorted Plaintiff to his cell, also failed to assigned Plaintiff to a lower bunk.  2 Pl. App. 00086.  Deputy Simms was responsible for reviewing the physical index card or the JIMS system to check for medical restrictions before physically assigning an inmate to a bed.  2 Pl. App. 00186, 00199.  Plaintiff told him that he suffered from seizures and should not be assigned a top bunk.  See 3 Pl. App. 00283.  Despite knowing that Plaintiff should not be assigned to a top bunk due to his seizure disorder, Deputy Simms assigned Plaintiff to a top bunk around 1:44 pm that afternoon.  2 Pl. App. 00086.

---

[1] Due to other failures in the jail medical care system, a doctor did not see Plaintiff or provide him with medication the following day.  Dkt. 59 at ¶¶ 43–44; Germono Decl. ¶ 14.

      Later that evening around 6:15 pm, while in the top bunk, Plaintiff suffered a seizure and fell at least six feet onto the concrete cell floor, rendering him unconscious. 3 Pl. App. 00296-297, 308; Pl. Video Ex. 1.  His two cellmates immediately shouted for help and pushed the emergency intercom button, which connects inmates to security control for emergency assistance. 3 Pl. App. 00293-294, 00312, 00319.  Soon, inmates in other cells also started shouting for help. 3 Pl. App. 00306, 00313.  Defendant Michael Campos, the control deputy in the control tower responsible for responding to the intercom calls, did not respond to the emergency intercom calls or the repeated inmate shouts for help.  *See* 3 Pl. App. 00264, 00306.  The intercom system was functioning and not muted at this time.  Dkt. 207-6 (Declaration of Michael Campos) at ¶¶ 7–9.  Deputy Campos routinely checked the intercom system at the start of his shift at 6:00 pm; if he noted any malfunction, he would have immediately reported it.  *Id.* ¶¶ 7, 11; *see* 3 Pl. App. 00271-72, 00319.  Despite the cellmates' intercom calls and shouts for emergency help around 6:15 pm, Deputy Campos failed to respond and obtain emergency medical care for Plaintiff.  2 Pl. App. 00293-00294, 00306.  Around 7:00 pm, approximately forty-five minutes after Plaintiff's fall and the cellmates' calls for help, other floor deputies conducting their routine cell checks found Plaintiff on the floor unconscious and bleeding from his head.  3 Pl. App. 00307; Pl. Video Ex. 1.

      Based on the above events, Plaintiff brought Section 1983 claims against Nurse Germono and Deputies Bravo, Simms, and Campos for deliberate indifference to serious medical needs, among other claims.  Dkt. 59 (SAC).  On September 19, 2022, Officer Defendants moved for summary judgment on the basis that the undisputed material facts showed no constitutional violation.  Dkts. 206, 207, 209, 210.  They further contended that even if there were a triable issue as to the officers' deliberate indifference, they were still entitled to summary judgment on the grounds of qualified immunity.  The Court held oral argument on December 7, 2022, and denied summary judgment on the grounds that the record raised numerous triable issues for the fact-finder and that clearly established Ninth Circuit law precluded qualified immunity.  Because the Court made its rulings on the record

in summary fashion during the oral argument, the Court issues the below written ruling on its qualified immunity denial prior to examining Plaintiff's motion to certify the interlocutory appeal as frivolous and Defendants' motion to stay.

## II.   LEGAL STANDARD

An officer defendant has the right to immediately appeal the purely legal questions in a district court's denial of qualified immunity. *Knox v. Southwest Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997); 28 U.S.C. § 1291. Such an interlocutory appeal ordinarily divests the district court of jurisdiction to proceed with trial on the appealed issues, unless the district court certifies in writing that the appeal is frivolous. *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992). If the district court certifies in writing that the appeal is frivolous, then it retains jurisdiction over the appealed issues and may proceed with trial. *Id.*

## III.   DENIAL OF QUALIFIED IMMUNITY FOR OFFICER DEFENDANTS

The Court previously ruled that qualified immunity did not shield Officer Defendants from Plaintiff's Section 1983 claims for deliberate indifference to medical needs under the Fourteenth Amendment. To win on these claims, Plaintiff must prove that "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

A plaintiff may bring a Section 1983 claim against officers acting under color of state law who caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). However, officers sued in an individual capacity may assert a qualified immunity defense, which precludes liability if "their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

This qualified immunity determination consists of two prongs, the second of which is a purely legal question. To determine whether an officer is entitled to qualified immunity, the court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was "clearly established" at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly established if "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1065 (9th Cir. 2006). This means that the court looks to "whether a reasonable officer would recognize that his or her conduct violates that right under the circumstances faced, and in light of the law that existed at that time." *Kennedy*, 439 F.3d at 1065 (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). As to the law that existed at the time, the court "need not find a prior case with identical, or even materially similar facts"; it is enough that "the preexisting law provided the defendants with fair warning that their conduct was unlawful." *Id.* (internal quotations omitted). If a right is not clearly established, the defendant is entitled to qualified immunity. *Lawrence v. U.S.*, 340 F.3d 952, 956 (9th Cir. 2003). If the right is clearly established, the court determines "whether the defendant's conduct was 'objectively legally reasonable' given the information possessed by the defendant at the time of his or her conduct." *Id.* (quoting *Anderson*, 483 U.S. at 641).

Although a plaintiff has the ultimate burden to show that the constitutional right was clearly established, the court must resolve on summary judgment all disputes of fact and credibility in favor of the plaintiff, and draw all reasonable inferences in his favor. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1110 (9th Cir. 2011). Summary judgment on the basis of qualified immunity "is not proper unless the evidence permits only one reasonable conclusion." *Lawrence*, 340 F.3d at 955. "Where conflicting inferences may be drawn from the facts, the case must go to the jury." *Id.*

**Defendant Macy Germono**

The Court denied summary judgment for Nurse Germono on qualified immunity grounds, finding that clearly established law put Nurse Germono on notice that her conduct was unlawful. Specifically, the Court finds that Ninth Circuit law clearly established that when a medical screening indicates an urgent need for medical treatment to prevent serious injury, a jail's medical staff must follow up to provide medical attention within a reasonable period of time. *Gibson v. County of Washoe,* 290 F.3d 1175, 1194–96 (9th Cir. 2002), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). In *Gibson v. County of Washoe*, an inmate suffered a heart attack and died shortly after he was booked into county jail. *Id.* at 1190. Medical staff had failed to properly screen him in order to identify his medical needs during the booking process, which led to a failure to provide him with the time-sensitive medical attention that he needed. *Id*. The Ninth Circuit held that this failure to medically screen new inmates in order to provide the proper, immediate medical care may be deliberate indifference to medical needs. *Id.* Similarly, the Ninth Circuit established an inmate's right to treatment arising from a diagnosed medical condition. In *Lolli v. County of Orange*, jail officials knew that an inmate booked into county jail had a diabetic condition and needed food to regulate his blood sugar levels. *Lolli v. County of Orange*, 351 F.3d 410, 420–21 (9th Cir. 2003). Despite such knowledge, they failed to provide him with the necessary food to prevent the substantial risk of harm from such blood sugar imbalances and the inmate experienced blurred vision, nausea, increased urination, and physical weakness. *Id.* The Ninth Circuit held that a constitutional violation may take place when a jail official does not respond to the legitimate medical needs of a diabetic detainee. *Id.* at 420. Additionally, in *Wakefield v. Thompson*, the Ninth Circuit found that a prison has a constitutional duty to provide an outgoing inmate with his prescription medications upon release so that he has a sufficient supply of doses until he can obtain the medications himself. *Wakefield v. Thompson*, 177 F.3d 1160, 1165 (9th Cir. 1999).

From this constellation of cases, the Court found that a reasonable officer would be on notice that she must timely follow up to provide required medications for serious medical needs identified during a medical screening. *Gibson* provided notice that prisons must conduct proper medical screenings in order to provide the appropriate medical treatment in a timely manner. *Gibson,* 290 F.3d at 1194–96. *Lolli* further confirmed that when prison officials know an inmate has a diagnosed condition requiring care to prevent injury—there, food to prevent the consequences of physical illness from low blood sugar—that they must provide such care. *Lolli*, 351 F.3d at 420–21. Finally, *Wakefield*, in explaining that an inmate has a right to prescription medications upon release to prevent missed doses, established *a fortiori* that an inmate would have the right not to miss doses of a needed medication while in custody. *Wakefield*, 177 F.3d at 1165. Therefore, in light of the clearly established law, the Court found that a reasonable nurse would know that not providing Plaintiff with his anti-seizure medication that night would violate his constitutional rights.

According to Plaintiff's account of the facts, Nurse Germono knew that Plaintiff had a seizure disorder, required anti-seizure medication twice a day, and needed a dose that evening. *See* 1 Pl. App. 00044, 00060–63. Nurse Germono also should have known that the standard nursing protocol and standard of care required her to call the on-call doctor to get Plaintiff his prescription that night. 3 App. Pl. 00213, 00374. Despite this knowledge, Nurse Germono did not take actions to obtain anti-seizure medication for Plaintiff. Germono Decl. at ¶ 12. Based on these facts taken in the light most favorable to Plaintiff, a jury could infer Nurse Germono intentionally disregarded Plaintiff's need for anti-seizure medication that evening and failed to timely follow up to provide the necessary medication for a serious medical condition identified during her screening process. Given the above triable issues from Plaintiff's evidence, the Court determined that Nurse Germono's conduct was objectively unreasonable in light of the clearly established law. Accordingly, the Court denied summary judgment for Nurse Germono on qualified immunity grounds.

**Defendants Francisco Bravo and Christopher Simms**

The Court also found that qualified immunity does not shield Defendants Bravo and Simms from damages for civil liability because Ninth Circuit law clearly established that a jail deputy must provide a lower bunk bed to an inmate based on his medical need for one. The Ninth Circuit has found that a prison official's failure to comply with an inmate's medical chrono requiring a bottom bunk can constitute deliberate indifference. *Akhtar v. Mesa*, 698 F.3d 1202, 1213–1214 (9th Cir. 2012). In *Akhtar v. Mesa*, an inmate suffered from numerous serious medical conditions and had a medical accommodation chrono showing that he required a bottom bunk. *Id.* He showed his medical chrono to jail officers, but the jail officers ignored the chrono and moved him to a top bunk, from which he fell and broke his wrist. *Id.* at 1206. The Ninth Circuit found that a prison official's failure to comply with an inmate's need for a lower bunk to prevent significant harm from serious medical conditions constituted deliberate indifference. *Id.*

Based on this clearly established law, the Court found that a reasonable housing deputy would know that failing to provide Plaintiff with a lower bunk in the face of a lower bunk designation for his seizure disorder would violate Plaintiff's constitutional rights. Like in *Akhtar*, where the prison officials knew of an inmate's numerous severe medical conditions requiring his placement in a lower bunk, Deputies Bravo and Simms knew that Plaintiff had a seizure disorder and required a lower bunk based on the JIMS designation for his safety. According to Plaintiff's account of the facts, Deputy Bravo did not assign Plaintiff a lower bunk or make a notation on his physical housing index card despite the lower bunk designation in JIMS based on his seizure disorder. 1 Pl. App. 00047, 49; 3 Pl. App. 00253-00254; 2 Pl. App. 00182, 00087. Despite having access to the lower bunk assignment in JIMS and being told Plaintiff had a seizure disorder and required a bottom bunk, Deputy Simms still assigned Plaintiff to the upper most top bunk in the cell. 2 Pl. App. 00185-189, 00199; 3 Pl. App. 00283. In light of the clearly established law in *Akhtar*, the Court determined that a reasonable officer would be on notice that he must provide an inmate with a lower bunk if the inmate's medical condition would otherwise cause injury.

Accordingly, the Court denied summary judgment for these defendants on the grounds that their conduct was objectively unreasonable given the clearly established law.

**Defendant Michael Campos**

Finally, the Court found that qualified immunity does not shield Defendant Campos from damages for civil liability because it is both obvious and clearly established under Ninth Circuit law that a failure to respond to emergency medical requests is a violation of constitutional rights. Ninth Circuit law clearly established that a jail deputy must provide an emergency medical response to an inmate suffering from an acute medical condition. For example, in *Clement v. Gomez,* the Ninth Circuit clearly established that it is unlawful for a prison official to ignore calls for emergencies by inmates or to "intentionally deny or delay access to medical care." *Clement v. Gomez*, 298 F.3d 898, 907 (9th Cir. 2002). There, prison officials failed to provide medical help to several inmates who called out to prison officials for medical attention from the effects of pepper spray. *Id.* Based on the prison officials' refusal to respond to prisoners who "made repeated requests for attention," the Ninth Circuit found that the prison officials may be acting in deliberate indifference to prisoners' serious medical needs. *Id.* at 905. Ninth Circuit law also clearly established that a prison official violates a prisoner's right to medical care when he "is aware than an inmate is suffering from a serious acute medical condition" but "stands idly by rather than responding with reasonable diligence to treat the condition." *Sandoval v. County of San Diego*, 985 F.3d 657 (9th Cir. 2021) (relying on *Hunt v. Dental Dept.*, 865 F.2d 198, 2099 (9th Cir. 1989) for this clearly established law). Even in the absence of prior case law, however, qualified immunity does not protect an officer who commits an "obvious" instance of constitutional misconduct. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (handcuffing inmate to hitching post for seven hours without regular water or bathroom breaks was "obvious" Eighth Amendment violation that there need not be materially similar case for the right to be clearly established). Thus, even if the specific conduct in question "has not previously been held unlawful," the general constitutional rule "may still apply with obvious clarity to the specific conduct in question." *C.B. v. City of Sonora*, 769

F.3d 1005, 1026–27 (9th Cir. 2014) (seizing a schoolchild who has not committed any wrongdoing or posed any threat is an obvious violation "even without on-point case law").

First, the Court found that clearly established Ninth Circuit law put a reasonable cell tower deputy on notice that he must respond to an emergency intercom call to provide medical attention to an inmate in need.  Under Plaintiff's version of the facts, Deputy Campos failed to provide emergency medical help to Plaintiff despite knowing that inmates were shouting for help and the emergency intercom system was going off.  Specifically, Plaintiff's cellmates pressed the emergency intercom button and shouted for help after Plaintiff's fall.  3 Pl. App. 00293, 00319.  The emergency intercom button was working because Deputy Campos checked to make sure the emergency intercom was functioning before each shift.  3 Pl. App. 00271-72.  Despite the functioning emergency intercom button, Deputy Campos did not respond to Plaintiff's medical distress.  Plaintiff did not receive the emergency medical care he needed until other floor deputies found Plaintiff during their routine cell check approximately forty minutes later.  *See* 3 Pl. App. 00264, 00307.  Given the clearly established law under *Clement* and *Hunt* requiring a jail official to provide an emergency medical response to an inmate in acute medical distress, the Court found it was objectively unreasonable for Deputy Campos to not respond to the emergency intercom call.  Moreover, even without clearly established law directly on point, the Court found that a cell tower deputy's failure to respond to an inmate's emergency call was an obvious instance of constitutional misconduct such that qualified immunity did not apply. *Hope*, 536 U.S. at 741.  Under Plaintiff's version of the facts, Deputy Campos, whose duties included responding to the emergency intercom system to provide inmates with emergency medical help, failed to respond to the intercom call.  Even without prior case law, a reasonable official would still be on notice that such conduct violates constitutional law.  Accordingly, the Court denied qualified immunity for Deputy Campos.

Having clarified the Court's rulings denying qualified immunity for Officer Defendants, the Court now turns to examine Plaintiff's motion to certify as frivolous the interlocutory appeal of these rulings.

## IV. MOTION TO CERTIFY AS FRIVOLOUS

In response to Officer Defendants' interlocutory appeal, Plaintiff moves to certify the appeal as frivolous so this Court may proceed with trial on all issues. An appeal is frivolous if it is "wholly without merit" or the "results are obvious." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1003 n.3 (9th Cir. 2002); *In re George*, 322 F.3d 586, 591 (9th Cir. 2003). Stated another way, "[a]n appeal on a matter of law is frivolous where none of the legal points are arguable on their merits." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To determine whether the appeals of Officer Defendants are frivolous, the Court examines whether there is any merit to their qualified immunity argument, under Plaintiff's version of the facts. The Court will first examine the appeal of Defendants Bravo and Simms, then Defendant Campos, and finally, Defendant Germono.

### A. Defendants Bravo and Simms Appeal

The Court certifies the appeal of Defendants Bravo and Simms as frivolous because there is no merit to the argument that a reasonable jail official in charge of inmate housing and bunk bed assignment would believe that it was lawful to ignore a lower bunk assignment for a detainee with epilepsy. The *Akhtar* court clearly established an inmate's right to have a lower bunk when one was required to prevent significant injury resulting from a serious medical condition. *Akhtar*, 698 F.3d at 1213–14. The *Akhtar* court further explained that the failure to comply with that right was deliberate indifference. *Id.*

Defendants Bravo and Simms argue that their appeal is not wholly without merit because factual distinctions in *Akhtar* provide reasonable grounds to challenge the Court's ruling that their conduct was objectively unreasonable. Specifically, Defendants Bravo and Simms point to the differences in the medical conditions at issue and argue that the *Akhtar* plaintiff was denied a lower bunk over a longer period of time before he suffered his injury as a result of the denial. The Court disagrees that these constitute meaningful distinctions that lend credibility to their argument. The *Akhtar* court based its determination that the denial of a lower bunk could violate the Constitution on the fact that the plaintiff had serious medical conditions that could result in further significant injury if

not given a lower bunk. *Id.* at 1213–14. The *Akhtar* court's decision did not hinge on the duration of the denial of a lower bunk or the precise nature of the detainee's malady, but rather on the risk of injury to the inmate based on the serious medical condition. *Id.* The Court finds that *Akhtar* sufficiently put Deputies Bravo and Simms on notice that their denial of a lower bunk, for any period of time sufficient to pose a danger to the inmate, may constitute deliberate indifference. Thus, their arguments based on such distinctions as the duration of the denial and the specific underlying medical condition lack merit.

Defendants Bravo and Simms further rely on *Wheeler v. Marengo*, No. 18-CV-360-AJB-WVG, 2020 WL 1545824 (S.D. Cal. Apr. 1, 2020), to contend that it is not wholly meritless to argue that Deputy Bravo and Deputy Simms did not know their conduct was unlawful based on the duration of time that he was denied a lower bunk. In *Wheeler*, a prisoner plaintiff had a medical chrono for a lower bunk because he was in a cast and crutches. *Wheeler*, 2020 WL 1545824, at *1. He showed a prison official defendant his medical chrono, the defendant told the plaintiff he would provide him a lower bunk, but then his shift ended before he could do so. *Id.* The plaintiff did not get a lower bunk bed and laid on the floor because he could not mount his top bunk. *Id.* Prison employees did not give him a lower bunk until the next evening. *Id.* Despite the fact that the plaintiff was denied a bunk for approximately twenty-nine hours, the court found no denial of a constitutional right because he did not provide any facts showing that the denial of the bunk caused significant injury or pain as a result and because the defendants eventually gave the inmate his bunk after twenty-nine hours. *Id.* at *2-3. The *Wheeler* court's analysis appears to focus on the lack of resulting injury, rather than whether such denial of a bottom bunk could constitute deliberate indifference to a significant risk from a serious medical condition. As applied to the facts of this case, the Court finds that *Wheeler* does not support the meritoriousness of Defendants Bravo's and Simms's argument that their denial of a bunk in light of the serious medical risk posed by his seizure condition was objectively reasonable.

## B. Defendant Campos Appeal

The Court also certifies the appeal of Defendant Campos as frivolous because it is wholly meritless to argue that a reasonable cell tower deputy would believe it was lawful to ignore the emergency intercom system and repeated inmate shouts for help. First, it is beyond debate that a reasonable prison official in charge of responding to emergency intercom calls would know that ignoring an emergency intercom call would violate a detainee's rights to be provided emergency medical care. *See Hope*, 536 U.S. at 739–41 (holding that there does not need to be on point case to overcome qualified immunity if violation was "obvious"). Second, Ninth Circuit law clearly established that a deputy may not ignore inmate shouts for help or delay an emergency medical response. *Clement*, 298 F.3d at 907. It is therefore baseless to argue that a reasonable cell tower deputy, whose job duties include responding to emergency intercom calls, would believe that it was lawful to ignore the emergency intercom and inmates' repeated shouts for emergency help.

Deputy Campos argues that the appeal is not meritless because the facts show that the emergency intercom was broken and there is no clearly established right to have a functional intercom system. In making this argument, Deputy Campos relies only on disputed material evidence, not the facts taken in the light most favorable to Plaintiff as required by law at this stage of the proceedings. *Tuuamalemalo v. Greene*, 946 F.3d 471, 476 (9th Cir. 2019) (resolving all disputes of fact and credibility on summary judgment in favor of the plaintiff and drawing all reasonable inferences in his favor). Deputy Campos's argument that the emergency intercom was broken depends on resolving factual disputes in his own favor, which is prohibited at this procedural juncture. It therefore lacks merit. Under Plaintiff's version of the facts, Deputy Campos was reasonably on notice that his intentional failure to respond to the emergency intercom system, which prevented Plaintiff from receiving emergency medical care, constituted an obvious instance of constitutional misconduct as well as deliberate indifference based under clearly established law. For the above reasons, the Court finds no merit to Deputy Campos's appeal.

### C. Defendant Germono Appeal

The Court declines to certify the appeal of Defendant Germono as frivolous. The Court stands by its decision denying Nurse Germono qualified immunity from Plaintiff's Section 1983 claim, based on the cases explained above. However, the Court recognizes that the state of the case law at the time of the incident may give rise to some colorable argument that a reasonable nurse could make a reasonable mistake under the circumstances she faced.

Accordingly, the Court grants Plaintiff's motion to certify as frivolous with regard to Defendants Francisco Bravo, Christopher Simms, and Michael Campos, and denies the motion with regard to Defendant Macy Germono. The Court therefore retains jurisdiction to proceed with trial over the appealed issues pertaining to Defendants Bravo, Simms, and Campos. The Court does not retain jurisdiction over the appealed issues as to Defendant Germono.

### V. MOTION TO STAY

Defendants request that, while the interlocutory appeal of Officer Defendants remains pending, the Court stay the other claims against Officer Defendants and the claims against Supervisory Defendants and the County. Given its above ruling, the Court weighs the competing interests between proceeding with trial as to all the defendants except for Nurse Germono or staying the entire action.

A district court has the inherent authority to stay proceedings before it. *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir. 2003), *abrogated on other grounds by Ryan v. Gonzales*, 568 U.S. 57 (2013). The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). In considering whether to stay proceedings pending an interlocutory appeal, the court weighs the competing interests affected by the granting or denial of a stay: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly

course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

During oral argument, Plaintiff represented that he would dismiss his claims against Defendant Germono and proceed only against the remaining Defendants. In such a scenario, the Court finds that the competing interests weigh in favor of proceeding with trial. For one, a balance of the hardships and equities weighs against staying the case. Plaintiff filed this action nearly four years ago and would suffer hardship from a years-long delay pending resolution of the interlocutory appeal. Although Defendants Bravo, Simms, and Campos would have to sit for trial while their qualified immunity appeal is pending, this Court has certified their appeal as frivolous and finds they would not face hardship sitting for trial now as compared to later. Second, a stay would not serve the interests of judicial efficiency given Plaintiff's representation that he would dismiss Nurse Germono from the action entirely. Although proceeding with trial piecemeal—that is, first with the defendants except Nurse Germono, and then with Nurse Germono—would potentially have required duplicative evidence regarding damages or other issues, the stipulated dismissal of Nurse Germono resolves this judicial efficiency concern. Because the balance of equities weighs in favor of proceeding with trial, the Court exercises its discretion and DENIES Defendants' motion to stay. The Court ORDERS Plaintiff to file a notice on the record confirming his plans to dismiss Defendant Germono from the action and proceed with trial on the remaining Defendants alone.

//
//
//

## VI. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion to certify the interlocutory appeals of Defendants Francisco Bravo, Christopher Simms, and Michael Campos as frivolous and DENIES Plaintiff's motion as to Defendant Macy Germono. The Court DENIES Defendants' motion to stay.

**IT IS SO ORDERED**.

Dated:  February 21, 2023

_____
Honorable Jinsook Ohta
United States District Judge