EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
GRACE JUN: SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM GORE in his individual capacity, ALFRED JOSHUA, in his individual capacity, BARBARA LEE, in her individual capacity, and DOES 1-100<br><br>　　　　　Defendants. | CASE NO. 19-cv-00378-JO-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO UNSEAL CIRB DOCUMENTS**<br><br>**Date: March 29, 2023**<br>**Time: 9 AM** |

## I.  INTRODUCTION

There is a strong presumption in favor of public access to judicial proceedings and records. This Court has already ruled that the Critical Incident Review Board (CIRB) documents are not attorney-client privileged. However, given this Court's question as to whether any portion of the CIRB documents may be considered sensitive, Plaintiff moves to unseal Plaintiff's Appendix Vol. 4, ECF 307-2 with pages 46 and 47 (CSD 00987 and 00988) redacted in full. Those two pages show Mr. Bernard Victorianne lying on the floor of his cell. While there is no valid assertion of privilege or confidentiality, Mr. Greer understands that there may be some sensitivity related to the photographs. As to all other pages of CIRB reports, no such concerns exist.

Moreover, the County of San Diego has not treated some of these documents as privileged or confidential. Contrary to what the County has asserted over many years in sworn declarations, not all documents were kept in the office of the County's attorney, Robert Faigin. Documents were emailed to members of Division of Inspection Services (DIS), who printed them out and kept them. These members did not treat these documents as confidential, with one of the Sheriff's employees leaving these CIRB documents in an empty office for anyone to access.

The public, the media, the County's own civilian oversight board and the California state auditor have all called for these CIRB documents to be made public. The families of decedents have waited long enough, and they are owed the truth.

## II.  CHRONOLOGY OF EVENTS

The County of San Diego has shielded itself from scrutiny and accountability by asserting attorney-client privilege over every page of the CIRB documents. It filed multiple sworn declarations by Robert Faigin, the attorney representing Sheriff Gore, that these documents were kept confidentially in his office and that the meetings were for the purpose of obtaining legal advice. The County asserted

attorney-client privilege over all CIRB documents in *Silva v. Cnty. of San Diego*, *Bush v. Cnty. of San Diego*, and *Nunez v. Cnty. of San Diego*. Each time, the County submitted a sworn declaration by attorney Robert Faigin that these documents were kept in his office and that they were for the purpose of providing legal advice. *Silva*, 18cv2282-L-MSB, ECF 137-2; *Bush*, 15cv686-L-JMA, ECF 19-1; *Nunez*, 16cv1412-BEN(MDD), ECF 176-6. Based on this representation, courts denied the plaintiffs' motion to compel production. *See Silva*, ECF 144; *Bush*, ECF 22, p. 8; *Nunez*, ECF 186.

For seventeen months, the County resisted production of documents in this case. Attorney Robert Faigin swore in his declaration, "CIRB reports have always been treated as protected attorney-client communications and maintained in my office in the legal affairs section of the office of the sheriff." ECF 148-3, p. 49 ¶4. "In my role on the CIRB board, I provide legal advice, in my official capacity as the chief legal advisor for the sheriff's department, with the expectation that the communications are made in confidence and shall remain so." *Id*. "All CIRB reports, including those listed on the privilege log in the *Greer* matter, are confidential communications with me as a department's Chief Legal Advisor and have been prepared at my request and for my review. The reports include summaries of my own thoughts and impressions as Chief Legal Advisor, as well as the frank and open discussions that occur during the CIRB meetings. The reports are a record of legal advice sought from, and provided by, me. The reports summarize attorney-client privileged communications that occur during the CIRB meetings." *Id.* at p. 50-51, ¶8. "The reports are attorney-client privileged and confidential and are maintained by me as a chief legal advisor in my office in the legal affairs office of the sheriff." *Id*.

Mr. Faigin wrote in his declaration, "All CIRB reports, including those listed on the privilege log and amended privilege log, are confidential communications to me as the department's legal advisor which have been prepared at my request and

1  for my review. After each report is approved by my client, it is sent to me only and
2  is maintained in a confidential file system in the legal affairs unit. The reports are
3  not accessible or disseminated to anyone else in the Department. These reports are
4  confidential and are not shared or distributed inside or outside of the Department,
5  with the exception of the State Auditor." ECF 168-1, para 6.  In his declaration, Mr.
6  Faigin did not state that there were parts of these "reports" that were distributed to
7  others.

8  　　　The CIRB reports that were produced in this case reflected no legal advice
9  sought or given.  In addition to the interdepartmental correspondence addressed to
10 Faigin, the responsive documents also contained PowerPoint presentations, in-
11 custody death matrix, background information on what occurred, and medical
12 records.  On February 22, 2023, retired Commander Dave Myers provided a sworn
13 statement.  From June 2012 to 2017, Commander Myers served as a CIRB Board
14 Member.  Myers declaration at ¶¶7, 19.  He was expected to attend every CIRB
15 meeting. *Id*. at ¶7.  Days before the meetings, Commander Myers would receive an
16 email containing documents which would be used at CIRB, including PowerPoint
17 presentations, photos, and incident reports. *Id* at ¶8.  He printed them out and took
18 them to the meetings. *Id* at ¶10. He was never told these documents were privileged.
19 *Id* at ¶11.  He kept the documents after the meetings. *Id* at ¶12.  In 2014, when he
20 moved offices, Commander Myers found folders upon folders of CIRB documents
21 left by the previous Commander in an unlocked compartment in an unlocked office
22 accessible to staff. *Id* at ¶13-14. These documents contained handwritten notes and
23 observations from CIRB meetings. *Id* at ¶14.

24 　　　Mr. Faigin represented the interest of Sheriff William Gore, not the
25 Department. *Id* at ¶15. Commander Myers can recall no Board member ever asking
26 Mr. Faigin for legal advice during CIRB meetings. *Id* at ¶16. After the meetings,
27 DIS documented the findings and recommendations of the board. *Id* at ¶17. The
28 final reports were findings on training expectations, policy changes and

recommendations on tactics. *Id*. Commander Myers has no recollection of these reports expressing any legal opinions. *Id*. Based on his experience, Commander Myers did not consider CIRB a risk management tool implemented to keep the circumstances surrounding and causes of critical incidents shrouded in secrecy. *Id* at ¶18. Instead, CIRB's focus was on accountability, policy changes and training of personnel on all levels. It is a tool designed to identify how to do things better, if needed, going forward. *Id*.

### III.   LEGAL STANDARD

"A trial is a public event. What transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). In the context of trials, the First Amendment prohibits "government from summarily closing courtroom doors" and "limiting the stock of information from which members of the public may draw." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) (plurality opinion). The First Amendment provides the right of the public to "'receive information and ideas.'" *Id*., quoting *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); *accord Presley v. Georgia*, 558 U.S. 209, 212 (2010) ("public trial right extends beyond the accused and can be invoked under the First Amendment").

The Supreme Court has recognized that open and public trials assure transparency, accountability and build public confidence in the administration of justice. *Richmond Newspapers*, 448 U.S. at 569. Chief Justice Burger, writing for the plurality in *Richmond Newspapers*, noted the common law tradition of public trials: "[b]oth Hale in the 17th century and Blackstone in the 18th saw the importance of openness to the proper functioning of a trial; it gave assurance that the proceedings were conducted fairly to all concerned, and it discouraged perjury, the misconduct of participants, and decisions based on secret bias or partiality." *Id*. Open and public trials enhance public confidence by assuring the public that standards of fairness are being observed, established procedures are being followed and "deviations will become known." *Press-Enter. Co. v. Super. Ct.*, 464 U.S. 501, 508 (1984).

The Supreme Court has acknowledged the common law right of public access to court proceedings and records in civil cases. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). That "general right to inspect and copy public records and documents, including judicial records and documents" is not contingent upon a proprietary interest in that document. *Id*.

Much as public access to trials promotes the free flow of information that is required for our "republican system of self-government," *Globe Newspaper Co.*, 457 U.S. at 604, open access to judicial records provides transparency and inspires public confidence in the judicial branch of government. *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000). Because courts issue public decisions in cases that are of significant public interest, any "step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Id*.

In the Ninth Circuit, there is a strong presumption in favor of the common law right to inspect and copy judicial records. *Valley Broad. Co. v. U.S. Dist. Court*, 798 F.2d 1289, 1294 (9th Cir. 1986). Public access to judicial records is particularly favored for significant public events or to promote public understanding of the judicial process. *Id*. The strong presumption of access to judicial records applies to dispositive pleadings, including motions for summary judgment and related attachments because resolution of a dispute on the merits is "at the heart of the interest in ensuring the 'public's understanding of the judicial process and of significant public events.'" *Kamakana v. Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006), *quoting Valley Broadcasting*, 798 F.2d at 1294.

The strong presumption in favor of public access to judicial records can only be overcome by a "compelling reason" that is supported by articulable facts, which do not rely on hypothesis or conjecture. *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995). Compelling reasons that are sufficient to overcome the interest in public access to records exist when "court files…become a vehicle for improper

1  purposes, such as the use of records to gratify private spite, promote public scandal,
2  circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179
3  (internal citations omitted). Embarrassment to the litigant, incrimination, or
4  exposure to further litigation are not sufficient reasons to seal court records. *Id.*

### IV. ARGUMENT

Courts have routinely denied parties' motion to file exhibits under seal relying on the strong underlying presumption that the public will have access to any document filed with the Court. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir.2002); *see also Martin v. United States*, case no. 13-CV-01386-LAB-BGS, ECF 72; *Gochmanosky v. San Diego*, case no. 12-CV-02944-L-NLS, ECF 98; *Castellanos v. United States*, 18cv2334 JM(AGS), docket no. 44. The standard for sealing documents in support of briefing on a dispositive motion is high, and requires a showing that "compelling reasons" support a need for secrecy. *Kamakana*, 447 F.3d at 1180. *Kamakana* held:

> It is important to emphasize the difference between the "compelling reasons" standard and the "good cause" standard, especially because the City suggests that they essentially collapse in this case. A "good cause" showing will suffice to seal documents produced in discovery. Fed.R.Civ.P. 26(c) (stating that if "good cause" is shown in discovery, a district court may issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Rule 26(c) gives the district court much flexibility in balancing and protecting the interests of private parties. *Id*. A "good cause" showing will not, without more, satisfy a "compelling reasons" test.

*Id*. at 1180. If the request is granted, the Court's sealing order must weigh the competing interests and articulate the factual basis for its ruling without relying on hypothesis or conjecture, and the order must be narrowly tailored. *Id*. at 1179; *see also Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 13–14 (1986). The County of

1. San Diego, as the Designating Party, bears the burden of establishing the confidentiality of all such information, documents, materials, or items. *See Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). Here, the County cannot do so because it failed to treat these documents as confidential.

First, on February 8, 2023, the Court held a hearing on the motions for summary judgment and the plaintiff's motion to certify the appeal frivolous. During this hearing, Mr. Greer's counsel recited allegations and summaries found in a series of CIRB reports in open court. The County did not request that the Court exclude members of the public from the proceedings. The County did not seek to seal the transcript of the hearing which can be made available to the public. The "compelling reasons" standard cannot be met because the County has waived any claim of confidentiality.

Second, the County did not treat portions of these documents as being sensitive or confidential given the way it distributed them and did not communicate an expectation to its employees that they were to be kept confidential or destroyed. Contrary to Mr. Faigin's assertions, much of the underlying materials in the CIRB files were shared with members of DIS, who were not advised to treat them as confidential. A retiring commander left stacks of CIRB-related documents in an unlocked office that could be accessed by staff members, including janitorial and maintenance staff. They had handwritten notes and impressions on them.

Third, the public has a heightened interest in these documents. The deaths in the San Diego jails are tragically national news. The Citizens Law Enforcement Review Board, the civilian oversight board that monitors the San Diego Sheriff's Department, formally recommended that Sheriff Kelly Martinez release CIRB reports, particularly of in-custody deaths. *See* Davis, Kelly and McDonald, Jeff, *San Diego sheriff should release internal reports on jail deaths, civilian oversight board says*, SAN DIEGO UNION TRIB., (Feb. 1, 2023, 5:13 PM),

https://www.sandiegouniontribune.com/news/watchdog/story/2023-02-01/san-diego-sheriff-civilian-oversight-board-public-release-internal-reports.

CLERB's recommendation followed one made by the California state auditor, which released a report last year noting that the 185 deaths in San Diego jails from 2006 to 2020 had made the county's jail system the deadliest among California's large county lockups. *See* McDonald, Jeff and Davis, Kelly, *State auditor: San Diego jails are so bad a new law is needed to force Sheriff's Department fixes*, SAN DIEGO UNION TRIB., (Feb. 3, 2022, 12:08 PM), https://www.sandiegouniontribune.com/news/watchdog/story/2022-02-03/state-auditor-san-diego-jails-are-so-bad-a-new-law-is-needed-to-force-sheriffs-department-fixes. "To increase the transparency of Sheriff's Department reviews of in-custody deaths, the legislature should require the Sheriff's Department to either make public the facts it discusses and recommendations it decides upon in the relevant Critical Incident Review Board meetings," the state audit said. *See* Tildon, Michael, *San Diego County Sheriff's Department - It Has Failed to Adequately Prevent and Respond to the Deaths of Individuals in Its Custody*, AUDITOR OF THE STATE OF CAL., (Feb. 3, 2022) https://www.bsa.ca.gov/reports/2021-109/index.html#section1.

Lastly, the family members who lost their loved ones in the County Jail deserve to know the truth. Lydia Nunez has waited eight years to find out what happened to her son and who made the decision to deny him medical care. (Declaration of Lydia Nunez). The same is true for Ana Sandoval, Chassidy NeSmith and Michelle Moriarty. (Declarations of Ana Sandoval, Chassidy NeSmith and Michelle Moriarty). They want the public to know what happened to their loved ones so that there can be transparency and accountability.

## V.   CONCLUSION

Plaintiff respectfully requests that the CIRB documents, Plaintiff's Appendix Vol. 4, ECF 307-2, be unsealed with the exception of pages 46 and 47 (CSD 00987 and 00988), which will be redacted in full before filing.

Respectfully Submitted,

**IREDALE AND YOO, APC**

Dated:  February 22, 2023

s/ *Julia Yoo*

JULIA YOO
Attorneys for Plaintiff