EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
GRACE JUN: SBN 287973
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKIE GREER, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, WILLIAM GORE in his individual capacity, ALFRED JOSHUA, in his individual capacity, BARBARA LEE, in her individual capacity, and DOES 1-100 <br><br> Defendants. | CASE NO. 19-cv-00378-JO-DEB <br><br> **DECLARATION OF DAVID MYERS IN SUPPORT OF PLAINTIFF'S MOTION TO UNSEAL CIRB DOCUMENTS** <br><br> Date: March 29, 2023 <br> Time: 9:00 A.M. |

I, DAVID MYERS, declare as follows:

1. I am over the age of eighteen and not a party to the above-entitled action. I have personal knowledge of all the matters stated herein, and if called as a witness, I could competently testify thereto.

///

///

2.  I served in law enforcement for over 35 years. In May 1985, I was employed by the County of San Diego as a Sheriff's Deputy. From there, I worked my way up the ranks of the San Diego County Sheriff's Department.

3.  In June 2010, I was promoted to Sheriff's Captain. From June 2010 to July of 2011, I served as the Captain of the Imperial Beach Sheriff Station. As Captain, I was tasked with overseeing the station and all its operations, including, but not limited to, budget, personnel, liaison with the local municipality, training and risk management.

4.  In July 2012, I was promoted to the rank of Sheriff's Commander. As Sheriff's Commander, I was tasked with overseeing 22 Sheriff's stations and each station's operations, including, but not limited to, budget, personnel, liaison with the local municipalities, training and risk management. During that period, I was based at the San Diego County Sheriff's Department Headquarters, located at 9621 Ridgehaven Ct., San Diego, CA 92123. I served as Sheriff's Commander until my retirement from the department in June 2018.

5.  During my tenure as Sheriff's Captain and later as Sheriff's Commander, I was involved with the Critical Incident Review Board (hereinafter "CIRB").

6.  As Sheriff's Captain, if a critical incident occurred within my command area (for example, an incident involving major use of force or a traffic pursuit ending in serious injury), I would attend and participate in CIRB reviews. In my capacity as a Sheriff's Captain, I would participate in the initial presentations to the Board and answer Board questions as the area commander, but was instructed to leave the room when the Board discussed its findings and recommendations.

7.  By virtue of my promotion to Sheriff's Commander in June 2012, I became a CIRB Board Member. Thereafter, I was expected to attend every CIRB meeting. CIRB Board Members are tasked with reviewing the presentations and underlying incident material, discussing and asking questions on the substantive

facts of the underlying incident and ultimately providing recommendations on training and risk management to avoid future incidents.

8. During my time as a CIRB Board Member, approximately four to five days before any given CIRB meeting, I would receive an email from the Division of Inspectional Services (hereinafter "DIS") Sergeant assigned to coordinate the presentation. The emails contained documents and links related to the upcoming meeting and the underlying critical incident. Typical attachments to the email included arrest reports, crime reports, road traffic incident reports, if applicable, copies of the PowerPoint file to be presented at the meeting, photos related to the underlying critical incident and links to audio recordings from dispatch, if applicable.

9. I do not recall whether the emails were marked as confidential but I recall that other recipients were usually copied on the email, including other CIRB Board Members.

10. Upon receiving the emails and related materials, my custom and practice was to maintain the information on my work email server but print key documents in advance of the meeting. I took the printed documents to the meeting to refer to throughout our substantive discussions on the facts and circumstances of the underlying critical incident.

11. I was never given instructions on how to maintain any material I received as part of the CIRB meetings. I was never given warnings not to share the documents or to keep them confidential or secret. I was never told the documents were privileged.

12. After the meetings, my custom and practice was to keep the documents. I treated the documents as reference material in case of similar incidents, and as a tool to help the Department avoid similar mistakes going forward. I kept the documents in my office at the Sheriff's Department Headquarters. The Sheriff's Department Headquarters is a secure building. My

- 2 -

office was almost never locked and other staff had access to my office. In fact, I do not recall any Sheriff Department employee locking their offices, at any time.

13. In approximately 2014, after two years as a Commander, I was moved to the Investigative Division. As a result, my office was relocated. I took the vacant office of a previous Commander who had retired. Numerous other personnel also had offices or workspaces on the same floor, including other Commanders, Lieutenants, and secretarial staff. The door to my new office was not locked when I took it over. Anyone on the floor could have accessed the office because it was not locked, including janitorial and night staff.

14. In the new office, I discovered that the previous Commander occupant had left many folders of CIRB-related documents in an unlocked compartment of her desk. The CIRB documents included material circulated in advance of the meetings. Many pages contained the previous Commander's handwritten notes on her questions and observations from the meetings.

15. Robert Faigin, Chief Legal Counsel to the Office of the Sheriff, attended every CIRB meeting. Though I do not recall the specific year, in approximately 2014 or 2015, Mr. Faigin appointed himself Chair of the Board, a position previously occupied by a Sheriff's Commander. I specifically recall his appointment because I questioned the wisdom of his appointment numerous times, including to Mr. Faigin himself. I was concerned about Mr. Faigin's appointment because my understanding was that legal counsel should only have been present as a resource to Board members if they had a legal question. Mr. Faigin personally told me numerous times that his sole job was to represent the interests of the Sheriff only, not the Department. Given that what was best for the Sheriff is not necessarily best for Department as a whole, I believed Mr. Faigin's appointment as Chair of the Board presented a critical conflict of interest to CIRB's overall purpose: to critically review incidents and implement measures to mitigate the likelihood of repeat occurrences in the future.

16. During the CIRB meetings, I never asked Mr. Faigin for legal advice. I do not recall any Board member asking Mr. Faigin for legal advice. Given that Mr. Faigin would not represent the department or any individual deputies if they were sued, I do not know what legal advice Mr. Faigin could have or would have provided, beyond an opinion on whether individual personnel should be terminated based on the findings of the Board or future training expectations of the Department. For example, while he was Chair, Mr. Faigin sometimes directed the DIS Sergeant to issue an update on a training flyer or bulletin.

17. After the meetings, DIS documented the findings and recommendations of the board. The final reports were findings on training expectations, policy changes and recommendations on tactics. I do not recall the reports expressing any legal opinions.

18. I did not receive any interdepartmental memorandums from DIS to Mr. Faigin, at any time.

19. Based on my experience and understanding as a Board Member, I believe that CIRB is not a risk management tool for keeping the circumstances and causes surrounding critical incidents shrouded in secrecy. Instead, CIRB's focus was on accountability, policy changes and improved training of personnel on all levels. It is a tool designed to identify how to do things better, if needed, going forward.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

20. In 2017, Sheriff William Gore ordered that I not attend, participate or receive documents about CIRB meetings and my participation in CIRB ceased.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 22nd day of February, 2023, in San Diego, California.

_____
DAVID MYERS